**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **ERICSSON INC. and TELEFONAKTIEBOLAGET LM ERICSSON,**<br><br>       Plaintiffs,<br><br>v.<br><br>**TCL COMMUNICATION TECHNOLOGY HOLDINGS, LTD., TCT MOBILE LIMITED, and TCT MOBILE (US), INC.,**<br><br>       Defendants. | Case No. 2:15-cv-00011-RSP |

**DEFENDANTS TCL COMMUNICATION TECHNOLOGY HOLDINGS, LTD., TCT MOBILE LIMITED, AND TCT MOBILE (US), INC.'S MOTION FOR SUMMARY JUDGMENT THAT THE ASSERTED CLAIMS OF THE '510 PATENT ARE INVALID**

**Table of Contents**

I. INTRODUCTION ........................................................................................................... 1
II. STATEMENT OF THE ISSUE .................................................................................... 1
III. STATEMENT OF UNDISPUTED MATERIAL FACTS ........................................... 1
IV. LEGAL STANDARDS ................................................................................................ 4
   1. Summary Judgment Under Rule 56 ............................................................................. 4
   2. Patentable Subject Matter Under 35 U.S.C. § 101 ...................................................... 4
V. ARGUMENT ................................................................................................................. 6
   1. "Controlling Access to a Platform" as Claimed in the '510 Patent Is An Ineligible Abstract Idea ................................................................................................................. 6
   2. The Asserted Claims Do Not Recite An "Inventive Concept" That Transforms the Abstract Idea Into a Patent-Eligible Application ....................................................... 8
VI. CONCLUSION ............................................................................................................ 10

**Table of Authorities**

**Cases**

*Accenture Global Services, GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336 (Fed. Cir. 2013) 6, 9

*Advanced Technology Incubator, Inc. v. Sharp Corp.*, No. 2:07-cv-468, 2009 WL 4723734 (E.D. Tex. Sept. 8, 2009) .................................................................................................. 4

*Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) ........................................... 4, 5, 8, 10

*Bilski v. Kappos*, 130 S. Ct. 3218 (2010) ........................................................................ 5, 7, 10

*C.R. Bard, Inc. v. Advanced Cardiovascular Systems, Inc.*, 911 F.2d 670 (Fed. Cir. 1990) .......... 4

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..................................................................... 4

*Comcast IP Holdings I, LLC v. Sprint Commc'ns Co.*, Case No. 12-205-RGA, 2014 WL 3542055 (D. Del. July 16, 2014) ................................................................................. 7

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343 (Fed. Cir. 2014) .......................................................................................................................... 7, 9

*Cybersource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011) ......................... 8, 10

*Dealertrack, Inc. v. Huber*, 674 F.3d 1315 (Fed. Cir. 2012) .................................................. 6, 10

*Diamond v. Diehr*, 450 U.S. 175 (1981) ............................................................................... 5

*Gottschalk v. Benson*, 93 S. Ct. 253 (1972) .......................................................................... 7

*Intellectual Ventures I LLC v. Capital One Bank (USA), N.A.*, 792 F.3d 1363 (Fed. Cir. 2015) .. 7, 9, 10

*Internet Patents Corp. v. Active Networks, Inc.*, 790 F.3d 1343 (Fed. Cir. 2015) ...................... 6, 9

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012) ................. 4, 5, 8, 9

*OIP Technologies, Inc. v. Amazon.com, Inc.*, 788 F.3d 1359 (Fed. Cir. 2015) ............................. 6

*Protegrity USA, Inc. v. Netskope, Inc.*, No. 15-cv-02515, 2015 WL 6126599 (N.D. Cal. Oct. 19, 2015) ............................................................................................................................. 9

*Ultramercial v. Hulu*, 772 F.3d 709 (Fed. Cir. 2014), *cert. denied*, 135 S. Ct. 2907 (2015) 6, 9, 10

*Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306 (Fed. Cir. 2015) ................................. 10

**Statutes**

35 U.S.C. § 101 .................................................................................................................... 4

**Rules**

Fed. R. Civ. P. 56(c) ............................................................................................................ 4

Defendants TCL Communication Technology Holdings, Ltd., TCT Mobile Limited, and TCT Mobile (US), Inc. (collectively, "TCL") hereby file this Motion for Summary Judgment of Invalidity under 35 U.S.C. § 101 as the patent claims asserted in Plaintiffs' complaint fail to claim patent-eligible subject matter under 35 U.S.C. § 101.

## I.  INTRODUCTION

On January 8, 2015, Ericsson filed a lawsuit against TCL alleging infringement of five patents. (ECF 1). On October 26, 2015, TCL filed a letter brief (ECF 136) seeking leave to file a dispositive motion that the asserted claims of one of Ericsson's five asserted patents, U.S. Pat. No. 7,149,510 ("'510 Patent") (Ex. 1), are invalid under 35 U.S.C. § 101 as directed to ineligible subject matter. On January 14, 2016, this Court issued an order (ECF 198) that, in part, granted TCL leave to file this motion.

## II. STATEMENT OF THE ISSUE

The issue is whether the asserted claims of the '510 Patent are invalid as a matter of law under 35 U.S.C. § 101 because they are directed to ineligible subject matter.

## III. STATEMENT OF UNDISPUTED MATERIAL FACTS

The '510 Patent was filed on September 19, 2003, and is entitled "Security Access Manager in Middleware." (Ex. 1 at 1). On November 10, 2015, in Ericsson's Final Election of Asserted Claims, Ericsson identified five asserted claims of the '510 Patent; namely, claims 1, 3-

5, and 9.[1] (Ex. 2). Of the asserted claims, claim 1 is the only independent claim. (Ex. 1 at 2). The remaining asserted claims, *i.e.*, claims 3-5 and 9, depend ultimately from claim 1. (*Id.*).

>Claim 1 recites:
>
>A system for controlling access to a platform, the system comprising:
>
>a platform having a software services component and an interface component, the interface component having at least one interface for providing access to the software services component for enabling application domain software to be installed, loaded, and run in the platform;
>
>an access controller for controlling access to the software services component by a requesting application domain software via the at least one interface, the access controller comprising:
>
>an interception module for receiving a request from the requesting application domain software to access the software services component;
>
>and a decision entity for determining if the request should be granted wherein the decision entity is a security access manager, the security access manager holding access and permission policies; and
>
>wherein the requesting application domain software is granted access to the software services component via the at least one interface if the request is granted.

(*Id.*). The asserted dependent claims of the '510 Patent can be fairly summarized as follows:

- claim 2 recites the use of "a collection of records of approved request[s]" to determine if the received request should be granted;

- claim 3 recites the use of "an associated permission collection" to determine if the received request should be granted;

- claim 4 recites maintaining "a record of requests…for determining" if "a permission decision" was granted previously to the requestor;

2

---

[1] Claim 3 depends from non-asserted dependent claim 2.

- claim 5 recites having "a record of request[s]" to determine "if the request should be granted based on" a stored identification in the record; and

- claim 9 recites that the system is for a mobile terminal for wireless telecommunications.

(*See id.*).

According to the prosecution history of the '510 Patent, in a July 27, 2005 Office Action, original claim 1, among other claims, was rejected as anticipated under 35 U.S.C. § 102(e) in view of U.S. patent application publication 2004/0216147 to Yanosy. The July 27, 2005 Office Action rejecting original claim 1, however, noted that original dependent claim 2 would be allowable if rewritten in independent form including all of the elements of base claim 1. (Ex. 3 at 8; ERIC_TCL_EDTXIP00003160). Rather than contesting the Examiner's position that all of the subject matter of original claim 1 was known and found in the prior art, in Ericsson's October 18, 2005 Amendment it incorporated all of the elements of original claim 1 and rewrote original claim 2 into independent form. (*Id*. at 4; ERIC_TCL_EDTXIP00003140). In doing so, Ericsson acquiesced to the Examiner's contention that only the additional subject matter present in original claim 2 was not found in the prior art. When the '510 Patent ultimately issued, after being continued for unrelated reasons, Ericsson's amended version of original claim 2 issued as asserted claim 1 of the '510 Patent, which is the subject of this motion. (*Id*. at 2; ERIC_TCL_EDTXIP00003062 (Issue Notification)).

On November 30, 2015, this Court issued its Claim Construction Order construing certain terms of the asserted claims of the '510 Patent. (ECF 174). According to the Claim Construction Order, the term "software services component" in claims 1-5 and 9 means "a software component for providing services." (*Id.* at 16). The remaining elements of the asserted claims of the '510 Patent are subject to their plain and ordinary meaning. (*See Id.* at 11, 20.)

## IV.   LEGAL STANDARDS

### 1.   Summary Judgment Under Rule 56

"Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Advanced Technology Incubator, Inc. v. Sharp Corp.*, No. 2:07-cv-468, 2009 WL 4723734, at *1 (E.D. Tex. Sept. 8, 2009); Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material facts exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party, however, need not produce evidence showing the absence of genuine issue of material fact, but rather may discharge its burden by showing the court that there is an absence of evidence to support the nonmoving party's case. *See id.* As in other cases, the grant of summary judgment is appropriate in a patent case where the standards set forth in Rule 56(c) are satisfied. *See C.R. Bard, Inc. v. Advanced Cardiovascular Systems, Inc.*, 911 F.2d 670, 672 (Fed. Cir. 1990).

### 2.   Patentable Subject Matter Under 35 U.S.C. § 101

The patent statute defines patentable subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The Supreme Court, however, has "long held that this provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). The Supreme Court also has held that claims are not patent-eligible if their elements, separate from the abstract idea or law of nature, are merely "well understood, routine, conventional activity already engaged in by" others in the relevant field. *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1298 (2012).

Determining whether a patent claim is directed to patent-ineligible subject matter involves two steps: First, the court determines "whether the claims at issue are directed to [a] patent-ineligible concept[]." *Alice*, 134 S. Ct. at 2355.  Second, if the claim contains such a patent-ineligible concept, the court evaluates whether the claim includes any meaningful limitations that amount to an "inventive concept, *i.e.,* an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id*.  Courts consider "the elements of each claim both individually and 'as an ordered combination' in determining whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id*. (citation omitted).

Transformation into a patent-eligible application requires "more than simply stat[ing] the [unpatentable law of nature or abstract idea] while adding the words 'apply it.'"  *Mayo*, 132 S. Ct. at 1294.  A patent must limit its reach to a particular, inventive application of the law or idea. *Id*. at 1290.  In addition, a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity, such as identifying a relevant audience, category of use, field of use, or technological environment. *See, e.g.*, *Bilski v. Kappos*, 130 S. Ct. 3218, 3231 (2010) ("[L]imiting an abstract idea to one field of use or adding token postsolution components…[does] not make the concept patentable"); *Mayo*, 132 S. Ct. at 1301 (stating the same); *Diamond v. Diehr*, 450 U.S. 175, 191-92 (1981) (patent ineligibility "cannot be circumvented by attempting to limit the use of the formula to a particular technological environment" or through "insignificant postsolution activity.").  Moreover, "simply appending conventional steps, specified at a high level of generality, to . . . abstract ideas cannot make those . . . idea patentable[.]" *Mayo*, 132 S. Ct. at 1300.

When assessing subject matter eligibility, it is permissible to examine claims in their "simplest form" to identify the "basic concept," to analyze the "relevant limitation," to identify the "essen[ce]" or "heart" of the claims. *See Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012); *OIP Technologies, Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1361 (Fed. Cir. 2015); *Accenture Global Services, GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013); *Ultramercial v. Hulu*, 772 F.3d 709, 714 (Fed. Cir. 2014), *cert. denied*, 135 S. Ct. 2907 (2015) (analyzing abstract idea at the "heart" of computer claims). However, "the *important inquiry* for a § 101 analysis is to look to the *claims*," not the specification. *Accenture*, 728 F.3d at 1345 (emphasis added).

## V. ARGUMENT

The asserted claims of the '510 Patent fail both steps of the two-step inquiry for determining subject-matter eligibility.

### 1. "Controlling Access to a Platform" as Claimed in the '510 Patent Is An Ineligible Abstract Idea

The asserted claims of the '510 Patent are invalid as a matter of law for being directed to the abstract idea of using an interface to determine based on policies whether to provide access to an otherwise restricted area. (Ex. 1 at 1). This claimed abstract idea amounts to the age-old concept of using security to determine whether to grant access, and the recitation in claim 1 of broad, generic elements such as "[a] system," "a platform," "software services component," "interface component," "access controller," "interception module," "decision entity," and "security access manager" only underscores the claims' over-breadth. Generic software/hardware elements cannot transform an otherwise ineligible idea into patent-eligible subject matter. *See, e.g., Internet Patents Corp. v. Active Networks, Inc.*, 790 F.3d 1343, 1348-49 (Fed. Cir. 2015); *Ultramercial*, 772 F.3d at 716-17; *Accenture*, 728 F.3d at 1345 ; *Content*

*Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1346-49 (Fed. Cir. 2014); *Intellectual Ventures I LLC v. Capital One Bank (USA), N.A.*, 792 F.3d 1363, 1366, 1369-70 (Fed. Cir. 2015).

For ages, humans have used a middleman (*e.g.,* a gatekeeper or, as in claim 1, an "interface component") to apply security policies for determining whether something (or someone) should be granted access to an otherwise restricted area or resource. For example, gatekeepers have examined and relied upon written credentials or permissions to determine if a person is reliable or authentic and to screen out the unauthorized. Similarly, in the '510 Patent the "interface component" is nothing more than applying the age-old idea of gatekeeper to examine in a computer environment credentials and permissions to determine if application domain software should be authorized to access a software services component. As such, the subject claims of the '510 Patent are directed to an abstract idea. Moreover, nothing in the subject claims transforms this patent-ineligible abstract idea into eligible subject matter. Ericsson is not entitled to preempt the gatekeeper concept in a generalized software context. *See Alice*, 134 S. Ct. at 2355 ("[a]n idea of itself is not patentable") (*quoting Gottschalk v. Benson*, 93 S. Ct. 253, 255 (1972)); *see, e.g., Comcast IP Holdings I, LLC v. Sprint Commc'ns Co.*, Case No. 12-205-RGA, 2014 WL 3542055, at *3-4 (D. Del. July 16, 2014) (finding the concept of making a conditional determination to be patent-ineligible under § 101). Not only is such an idea "free to all . . . and reserved exclusively to none," *Bilski*, 130 S. Ct. at 3225, but it can be performed manually or in the human mind and is therefore not saved from patent ineligibility when performed on a computer. *See Benson*, 93 S. Ct. at 255 (finding ineligible claims directed to performing a mathematical algorithm on a computer where steps can also be performed mentally, "without a computer"); *Cybersource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366,

1372 (Fed. Cir. 2011) (finding ineligible claims essentially directed to a method of detecting credit card fraud based on past transactions to a particular Internet address as they can be "performed in the human mind, or by a human using a pen and paper").

The asserted claims of the '510 Patent are no less than an improper monopoly over the field of applying security policies for determining whether to grant access and thus implicate preemption, "the concern that drives the exclusionary principle [of abstract ideas]," *Alice*, 134 S. Ct. at 2354. Consequently, the asserted claims are invalid for being directed to an abstract idea. *Id.* ("'[M]onopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it,' thereby thwarting the primary object of the patent laws.") (*quoting Mayo*, 132 S. Ct. at 1293).

### 2. The Asserted Claims Do Not Recite An "Inventive Concept" That Transforms the Abstract Idea Into a Patent-Eligible Application

Neither asserted claim 1 nor any of asserted dependent claims 2-5 and 9 of the '510 Patent recites an "inventive concept." Indeed, the prosecution history as it relates to the asserted claims, and in particular as it pertains to asserted claim 1, proves the absence of any "inventive concept."

As noted above, Ericsson acquiesced to the rejection of original claim 1 as anticipated by Yanosy, and chose to rewrite original claim 2 into independent form and to cancel original claim 1. (Ex. 3 at 4, 5-6; ERIC_TCL_EDTXIP00003140; ERIC_TCL_EDTXIP00003144 - 3145). Thus, the *only element* of asserted claim 1 that was found to be allowable over prior art had been in original claim 2, as shown below:

> The system according to claim 1, wherein the decision entity is a security access manager, the security access manager holding access and permission policies.

(*Id.* at 10; ERIC_TCL_EDTXIP00004163). This putatively allowable element merely requires that the "decision entity is a security access manager," and that "the security access manager hold[s] access and permission policies." (*Id.*). Ericsson did not contest that all of the other elements of asserted claim 1 are disclosed in the applied prior art reference, Yanosy. (*Id.* at 4, 5-6; ERIC_TCL_EDTXIP00003140; ERIC_TCL_EDTXIP00003144 - 3145). The "holding" of "access and permission policies" in a "security access manager," which is the analogue of a gatekeeper accessing or referring to written policies or guidelines when deciding whom to admit and whom to reject, is wholly insufficient as an "inventive concept" to transform generic software/hardware elements embodying an otherwise ineligible idea into patent-eligible subject matter. *See, e.g., Internet Patents Corp.*, 790 F.3d at 1348-49; *Ultramercial*, 772 F.3d at 716-17); *Accenture*, 728 F.3d at 1345-46; *Content Extraction*, 776 F.3d at 1346-49; *Intellectual Ventures*, 792 F.3d at 1366, 1369-70.

Moreover, asserted dependent claims 2-5 and 9 all fail to add any meaningful, transformative limitation or novel hardware/software, which can save the otherwise ineligible abstract idea. Indeed, keeping a record of prior requests, approvals and permissions is hardly novel and has been used by guards for controlling access to government buildings (*e.g.*, the White House, Congress, and Federal Courts) for decades. *See Protegrity USA, Inc. v. Netskope, Inc.*, No. 15-cv-02515, 2015 WL 6126599, at *6 (N.D. Cal. Oct. 19, 2015) (finding that asserted claims are directed to "the abstract concept of limiting access to information based on specified criteria" and that "the same concept… has long been implemented by various individuals and organizations."); *see also Mayo*, 132 S.Ct. at 1300 ("simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable."); *Versata Dev. Grp., Inc. v. SAP*

*Am., Inc.*, 793 F.3d 1306, 1334 (Fed. Cir. 2015) (affirming finding of claims as unpatentable abstract ideas where "the function performed by the computer at each step is purely conventional. … All of these limitations are well-understood, routine, conventional activities previously known to the industry. … The limitations are either inherent in the abstract idea … or conventional and well-known limitations involving a computer[.]"). Nor can the application of the abstract idea of a "security access manager" to an underlying platform (or "device") transform the abstract idea into patent-eligible subject matter. Merely including a field of use limitation in the claims is not enough to transform an abstract idea into a patentable subject matter. *See Intellectual Ventures,* 792 F.3d at 1366 ("An abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment, such as the Internet."); *Alice*, 134 S. Ct. at 2358 (limiting an abstract idea to a technological environment, such as a computer does not confer patent eligibility); *Bilski*, 130 S. Ct. at 3231 ("[L]imiting an abstract idea to one field of use…d[oes] not make the concept patentable."); *Dealertrack*, 674 F.3d at 1334 (limiting claims directed to clearinghouse concept to auto loan applications did not render the claims patent-eligible); *Ultramercial*, 772 F.3d at 711-12 (reciting certain "media product[s]" did not add anything inventive); *CyberSource*, 654 F.3d at 1370 (using Internet to verify credit card transaction does not transform an abstract idea of verifying the transaction into patentable subject matter). Accordingly, because nothing in the asserted dependent claims transforms the patent-ineligible subject matter of asserted claim 1 into eligible subject matter, the asserted dependent claims of the '510 Patent are also directed to ineligible subject matter.

## VI. CONCLUSION

For at least the foregoing reasons, Defendants respectfully request that the Court grant this Motion for Summary Judgment and find that the asserted claims of the '510 Patent are invalid under 35 U.S.C. § 101.

| | |
|---|---|
| Dated: February 12, 2016 | */s/ Winstol D. Carter, Jr.* |
| | Winstol D. Carter, Jr. |
| | State Bar No. 03932950 |
| | wcarter@morganlewis.com |
| | Adam A. Allgood |
| | State Bar No. 24059403 |
| | aallgood@morganlewis.com |
| | **Morgan, Lewis & Bockius LLP** |
| | 1000 Louisiana Street, Suite 4000 |
| | Houston, Texas 77002 |
| | Telephone: 1.713.890.5000 |
| | Facsimile: 1.713.890.5001 |
| | |
| | Bradford A. Cangro (Admitted in TXED) |
| | D.C. Bar No. 495996 |
| | bcangro@morganlewis.com |
| | Alex Hanna (Admitted *Pro Hac Vice*) |
| | ahanna@morganlewis.com |
| | Jeremy D. Peterson (Admitted *Pro Hac Vice*) |
| | jpeterson@morganlewis.com |
| | **Morgan, Lewis & Bockius LLP** |
| | 1111 Pennsylvania Avenue, NW |
| | Washington, D.C. 20004 |
| | Telephone: 1.202.739.3000 |
| | Facsimile: 1.202.739.3001 |
| | |
| | Michael F. Carr (Admitted *Pro Hac Vice*) |
| | mcarr@morganlewis.com |
| | **Morgan, Lewis & Bockius LLP** |
| | 2 Palo Alto Square |
| | 3000 El Camino Real, Suite 700 |
| | Palo Alto, CA 94306 |
| | Telephone: 1.650.843.4000 |
| | Facsimile: 1.650.843.4001 |
| | |
| | Stephen S. Korniczky (Admitted *Pro Hac Vice*) |
| | Martin R. Bader |
| | **Sheppard Mullin Richter & Hampton LLP** |
| | 12275 El Camino Real, Suite 200 |
| | San Diego, California 92130 |
| | Telephone: (858) 720-8900 |
| | Facsimile: (858) 509-3691 |
| | skorniczky@sheppardmullin.com |

mbader@sheppardmullin.com

Eric H. Findlay
**Findlay Craft, P.C.**
102 N. College Ave., Suite 900
Tyler, TX 75702
903/534-1100
Fax: 903/534-1137
Email: efindlay@findlaycraft.com

**ATTORNEYS FOR DEFENDANTS TCL COMMUNICATION TECHNOLOGY HOLDINGS LTD., TCT MOBILE LIMITED, and TCT MOBILE (US), INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on February 12, 2016.

                                                */s/Winstol D. Carter, Jr.*
                                                Winstol D. Carter, Jr.