IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ERICSSON INC. AND<br>TELEFONAKTIEBOLAGET LM ERICSSON,<br><br>Plaintiffs,<br><br>v.<br><br>TCL COMMUNICATION TECHNOLOGY<br>HOLDINGS, LTD., TCT MOBILE LIMITED,<br>AND TCT MOBILE (US) INC.,<br><br>Defendants. | Civil Action No. 2:15-cv-00011-RSP<br><br>JURY TRIAL |

**TCL'S MOTION TO STRIKE THE DECLARATION OF MARK JONES, PH.D.,
SUBMITTED IN SUPPORT OF PLAINTIFFS' SUR-REPLY IN
OPPOSITION TO TCL'S MOTION FOR SUMMARY JUDGMENT THAT
THE ASSERTED CLAIMS OF THE '510 PATENT ARE INVALID**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ............................................................................................................. 1

II.    FACTS ............................................................................................................................... 1

III.    ARGUMENT ..................................................................................................................... 3

    A.    The Court Should Strike Newly Introduced Jones Declaration Because Ericsson May Not Use A Sur-reply To Cure Defects In Its Response ............................................................. 3

    B.    Even If the Jones Declaration Was Properly Submitted With Ericsson's Response, It Should Be Stricken As Unsupported by the Specification and Irrelevant to the § 101 Inquiry . 5

IV.    CONCLUSION .................................................................................................................. 8

# TABLE OF AUTHORITIES

**Cases**

*Amdocs (Israel) Limited v. Openet Telecom, Inc.*, 841 F.3d 1288 (Fed. Cir. 2016)......................6

*Auto. Body Parts Ass'n v. Ford Global Techs., LLC*, No. 4:13-cv-705, 2014 WL 4652123 (E.D. Tex. Sept. 17, 2014)..............................................................................................................3, 4

*Diamond v. Diehr*, 450 U.S. 175 (1981)......................................................................................6

*Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016).................................................7

*Loyalty Conversion Systems Corp. v. American Airlines, Inc.*, 66 F. Supp. 3d 795 (E.D. Tex. 2014) ....................................................................................................................................4

*Miles Bramwell USA, LLC v. Weight Watchers Int'l, Inc.*, No. 4:12-cv-992, 2013 WL 1797031 (E.D. Tex. Mar. 27, 2013)........................................................................................................3

*Visual Memory LLC v. NVIDIA Corp.*, 2017 WL 3481288 (Fed. Cir. Aug. 15, 2017)..........6, 7, 8

**Rules**

L. R. CV-56(b)............................................................................................................................3

L. R. CV-56(c)............................................................................................................................3

L. R. CV-7(d).............................................................................................................................3

I.      **INTRODUCTION**

Defendants TCL Communication Technology Holdings, Ltd., TCT Mobile Limited, and TCT Mobile (US) Inc., (collectively, "TCL") request this Court to strike the Declaration of Mark Jones, Ph. D., ("Jones Declaration") attached to Plaintiffs Ericsson Inc. and Telefonaktiebolaget LM Ericsson's (collectively, "Ericsson") sur-reply in opposition to TCL's Motion for Summary Judgment That The Asserted Claims Of The '510 Patent Are Invalid.  Because the Jones Declaration introduces new evidence in a sur-reply—in an improper attempt to cure defects in Ericsson's opposition to TCL's motion—and TCL is denied a fair opportunity to respond, this Court should strike the Jones Declaration and the arguments in the sur-reply that rely on it.

II.     **FACTS**

On July 20, 2017, TCL filed a Motion for Summary Judgment That The Asserted Claims Of The '510 Are Invalid (Dkt. No. 299).  TCL argued that the claims of the '510 patent fail step one of the *Alice* test because they are directed towards an abstract idea.  Ericsson filed its response in opposition to TCL's summary judgment motion on August 3, 2017 (Dkt. No. 301). In its response, Ericsson argued that the claims are not abstract because they provide a particular technological solution to a problem rooted in computer technology.  (Dkt. No. 301, at 4).  In support of that argument, Ericsson alleged that the claimed "architecture" of the '510 patent "provides numerous technological benefits over and above merely 'using a gatekeeper,'" without a single citation to evidence.  *Id.* at 8.  Specifically, Ericsson argued:

> The claimed architecture provides numerous technological benefits over and above merely "using a gatekeeper."  Segregating the application domain from the software services component and funneling requests to access the software services component through the interface component enhances security by limiting the number of entry points to the software services component.  Phone manufacturers need only secure the interfaces provided by the interface component to protect users from malicious applications that seek to access a user's microphone, track a user's location, or monitor a user's camera. Limiting

> the entry points to offered services also increases flexibility for users.  The easier it is for the system to locate and secure all entry points to offered services, the easier it is to toggle permissions on and off on a service-by-service and application-by-application basis.  Thus, the claimed architecture enables phone manufacturers to notify users which downloaded applications are attempting to access which services, and to allow the users to grant or deny access as desired.  Finally, segregating services from applications also makes it easier to update services, for example, to improve the ability to locate a user, with minimal impact on the applications which can continue to access the service through the pre-defined interface provided by the interface component.

*Id.*

TCL filed its reply brief on August 10, 2017.  (Dkt. No. 304).  TCL's reply brief did not contain any new legal issues or evidence; instead, it noted that Ericsson failed to provide any evidence to support its assertions of the various alleged technological benefits and that such unsubstantiated attorney arguments fail to satisfy the evidentiary dictates of Fed. R. Civ. P. 56.  (Dkt. No. 304).  In response, Ericsson cobbled up the Jones Declaration, precisely to cure the failures in its opposition brief that TCL pointed out, and submitted it as evidence for the first time in its sur-reply.  *See* Jones Declaration, ¶ 23 ("The '510 invention provides several technical benefits…").  Relying on this new evidence, Ericsson makes the same assertions regarding the technological benefits allegedly provided by the '510 patent in its sur-reply, but this time with citations to evidence submitted for the first time with its sur-reply.

> It is this particular arrangement of elements that separates the claimed architecture from prior art architectures.  Because applications were not isolated from the services, a malicious application designer could more easily find an unadvertised entry point to a service, perhaps one designed for internal system use, and use it to improperly access the service. Jones Decl. at ¶22.  The claims solve this problem by isolating applications from services and defining the location of entry to services to be the interface provided by the interface component. *Id.*  Further, as TCL's expert explained, "the layered architecture described in the '510 patent . . . is generally known to a person of ordinary skill in the art to promote extensibility, reuse, and flexibility."  Ex. 2 at ¶ 80. Specifically, the claimed architecture enables the permission requests users have become accustomed to today (e.g., when an app asks a user if it can access the user's location).  Jones Decl. at ¶23; *see also* Ex. 3 at ¶¶272-276.  The easier it is to locate and secure entry points to

offered services, the easier it is to toggle permissions on and off on a service-by-
service basis. Jones Decl. at ¶23.    Further, in the prior art, the lack of a
standardized way to request services meant that different services could be
requested in different ways.  This made it difficult to implement a single access
controller across multiple services, and thus prior art permissions were often
assigned to and stored with each individual resource.  By standardizing the way
applications make requests for services, i.e., via interfaces provided by the
interface component, the system can use a single access controller to monitor and
grant/deny those requests.  *Id.*

Sur-reply (Dkt. No. 307, at 6).

## III.   ARGUMENT

### A.   The Court Should Strike Newly Introduced Jones Declaration Because Ericsson May Not Use A Sur-reply To Cure Defects In Its Response

Generally, evidence in support of, or in opposition to, a motion for summary judgment

should be included in the original motion or the original response, not in a reply or sur-reply.

*Auto. Body Parts Ass'n v. Ford Global Techs., LLC*, No. 4:13-cv-705, 2014 WL 4652123, at *1

(E.D. Tex. Sept. 17, 2014) ("[T]his court does not ordinarily condone presenting a new argument

with additional evidence in a sur-reply brief."); *see Miles Bramwell USA, LLC v. Weight*

*Watchers Int'l, Inc.*, No. 4:12-cv-992, 2013 WL 1797031, at *4 (E.D. Tex. Mar. 27, 2013)

("Legal arguments raised for the first time in a sur-reply, like arguments raised for the first time

in a reply, are waived.").  Indeed, the Local Rules contemplate that the proper time for the non-

movant to submit any proper summary judgment evidence is when it files its opposition brief.

*See e.g.*, L. R. CV-56(b) ("The response should be supported by appropriate citations to proper

summary judgment evidence"); L. R. CV-56(c) ("In resolving the motion for summary

judgment, the court will assume that the facts as claimed ... by the moving party are admitted to

exist without controversy, except to the extent that such facts are *controverted in the response*

*filed in opposition to the motion, as supported by proper summary judgment evidence*."); *see*

*also*, L. R. CV-7(d) ("A party opposing a motion *shall file the response, any briefing and*

2015-cv-00011-RSP   Document 310   Filed 09/07/17   Page 7 of 13 PageID #:  12718

*supporting documents within the time period prescribed* by Subsection (e) of this rule.")
(emphasis added).  Courts tolerate new arguments or evidence in a reply or a sur-reply only in
rare and limited circumstances where the other (opposing) party first broke the rule and
presented new arguments or evidence in its response or reply.  *Auto. Body Parts,* 2014 WL
4652123, at *1 (allowing new evidence in sur-reply because the movant first "presented a new
factual challenge with new evidence in its reply brief").

     Nothing in the present case justifies Ericsson's introduction of new evidence via
attachments to the sur-reply.  First of all, TCL has not made any new arguments or submitted any
new evidence for summary judgment in its reply, and Ericsson does not contend otherwise.
Second, Ericsson's new evidence—namely, the Jones Declaration—was put together and
submitted only after TCL pointed out Ericsson's lack of evidentiary support for its assertions that
the claimed "architecture" of the '510 patent "provides numerous technological benefits."  *See*
Jones Decl. ¶ 23 ("The '510 invention provides several technical benefits…").  Specifically, the
Jones Declaration seeks to establish that "[t]hese technical benefits relate to security, including
its implementation, analysis, and ease-of-use" (*id.*) only after TCL pointed out in its reply that
Ericsson failed to cite to a single piece of evidence, intrinsic or otherwise, that supports its bald
assertions that the claimed invention provides technological benefits such as "'enhance[d]
security,' 'increase[d] flexibility,' and being 'easier to update services.'"  Dkt. No. 304, at 6.
Ericsson does not explain why it was prevented from introducing this supposed evidence in its
response in opposition to TCL's summary judgment motion.  It cannot, because the evidentiary
documents, including the Jones Declaration, were prepared to cure defects and failures in its
opposition brief, in response to TCL's reply, which is improper.  *See Loyalty Conversion
Systems Corp. v. American Airlines, Inc.*, 66 F. Supp. 3d 795, 811 (E.D. Tex. 2014) (holding that

DB1/ 93513309.2                                                      4

new argument raised for the first time in reply brief to address the defect noted by the other party's response is waived).

In contrast to Ericsson, TCL followed the local rules and this Court's general practice of putting forward all pertinent issues and evidence in its original brief.  Now that the sur-reply has been served, TCL cannot address or respond to Ericsson's new arguments and evidence, absent leave of the Court as required by Local Civil Rule 7(f).  Allowing the Jones Declaration and the arguments in the sur-reply that rely on the declaration would be allowing Ericsson to sandbag TCL at the last minute and withhold summary judgment arguments and evidence from TCL until after TCL had completed its briefing, which is unfair and prejudicial to TCL.  Accordingly, the Court should strike the Jones Declaration and the arguments in the sur-reply that rely on the Jones Declaration.

**B.** **Even If the Jones Declaration Was Properly Submitted With Ericsson's Response, It Should Be Stricken As Unsupported by the Specification and Irrelevant to the § 101 Inquiry**

To demonstrate patent eligibility, the Jones Declaration states that the asserted '510 patent claims are directed to "a layered computer architecture comprising a software services, an interface component, and an access controller, that enhances security" by "isolating applications from services and defining the location of entry to services to be the interface provided by the interface component."  Jones Decl. ¶¶ 21-22.  But rather than identify any patent-eligible subject matter recited in the *claims*, the Jones Declaration merely points to a "specific layered architecture" not recited in the claims and touts "technical benefits" that appear nowhere in the specification.  *Id*. at ¶ 23.  This testimony is not only unsupported by the patent, but irrelevant to the § 101 inquiry.

Tellingly, the Jones Declaration never identifies any claim limitation requiring that the interface component, software services component, or access controller be arranged in any specific architecture, that applications be isolated from services, or that the interface of the interface component serve as the only point of entry for services.  *See* Jones Decl. ¶¶ 21-22.  Nor could it.  Nothing in the asserted '510 patent claims reflects a "specific layered architecture"; the claims only require that the platform include those components.  Worse yet, the specification does not even recite the alleged technical improvements advanced by this layered architecture. At best, the Jones Declaration relies solely on expert testimony on the novelty of "[t]he '510 invention," *id*. at ¶ 23, which cannot confer patent-eligibility.  *Diamond v. Diehr*, 450 U.S. 175, 188-189 (1981) ("[T]he novelty of any element or steps in a process, or even of the process itself, is of no relevance in determining whether the subject matter of a claim falls within the § 101 categories or possibly patentable subject matter); *Amdocs (Israel) Limited v. Openet Telecom, Inc.*, 841 F.3d 1288, 1311 (Fed. Cir. 2016) ("To be clear, the concept of inventiveness is distinct from that of novelty," the "inventiveness inquiry of § 101 should therefore not be confused with the separate novelty inquiry.").

The Federal Circuit's recent decision in *Visual Memory* is particularly instructive.  There, the challenged claims recited a computer memory system having "programmable operational characteristics" specifying the type of data in the memory—a feature which, according to the patent's specification, improved prior art computer systems by "allow[ing] different types of processors to be installed with the [same] subject memory without significantly compromising their individual performance."  *Visual Memory LLC v. NVIDIA Corp.*, 2017 WL 3481288, at *2 (Fed. Cir. Aug. 15, 2017).  In finding that the claims were "directed to an improvement to

computer functionality," the Federal Circuit held that, like *Enfish* and *Thales*, the alleged

improvement was not only explicitly recited in the claims, but also described in the specification:

> As with *Enfish's* self-referential table and the motion tracking system in *Thales*, the claims here are directed to a technological improvement: an enhanced computer memory system.  The '740 patent's claims focus on a specific asserted improvement in computer capabilities—the use of programmable operational characteristics that are configurable based on the type of processor—instead of on a process that qualifies as an abstract idea for which computers are invoked merely as a tool.  And like the patents at issue in *Enfish* and *Thales*, the specification discusses the advantages offered by the technological improvement. Accordingly, this is not a case where the claims merely recite … generalized steps to be performed on a computer using conventional computer activity.

*Id*. at *4; *see generally id*. at *3-5.  Not so here.

Unlike the challenged claims in *Visual Memory, Enfish*, and *Thales*, the '510 patent

claims do not explicitly recite the alleged technical improvement advanced by the Jones

Declaration.  *Compare* '510 patent at Claim 1 *with Visual Memory*, 2017 WL 3481288, at *3

("In *Enfish*, we held claims ***reciting*** a self-referential table for a computer database were patent-

eligible"), ("Similarly, in *Thales*, we determined that claims ***reciting*** a unique configuration of

inertial sensors and the use of a mathematical equation for calculating the location and

orientation of an object relative to a moving platform were patent-eligible"), ("Claim 1 ***requires***

a memory system "having one or more programmable operational characteristics,") (emphasis

added); *see also Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) ("[S]ome

improvements in computer-related technology ***when appropriately claimed*** are undoubtedly not

abstract") (emphasis added).  To the extent Ericsson is using the expert declaration of Dr. Jones

to argue that the claims mean more than what they recite, this would be a belated improper

attempt at claim construction, the time for which has long past.

And whereas, in *Visual Memory*, "the specification explain[ed] that multiple benefits

flow from the '740 patent's improved memory system," *Visual Memory*, 2017 WL 3481288, at

*4, the '510 patent specification does not even mention the technical benefits advanced by the

Jones Declaration.  If anything, *Visual Memory* and its progenitors confirm the irrelevance of the

Jones Declaration and the ineligibility of the asserted '510 patent claims.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, TCL requests that its Motion to Strike be granted.


Dated: September 7, 2017

*/s/ Bradford A. Cangro*

Winstol D. Carter, Jr.
State Bar No. 03932950
wcarter@morganlewis.com
Adam A. Allgood
State Bar No. 24059403
aallgood@morganlewis.com
**Morgan, Lewis & Bockius LLP**
1000 Louisiana Street, Suite 4000
Houston, Texas 77002
Telephone: 1.713.890.5000
Facsimile: 1.713.890.5001

Bradford A. Cangro (Admitted in TXED)
D.C. Bar No. 495996
bcangro@morganlewis.com
Jeremy D. Peterson (Admitted *Pro Hac Vice*)
jpeterson@morganlewis.com
**Morgan, Lewis & Bockius LLP**
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Telephone: 1.202.739.3000
Facsimile: 1.202.739.3001

Michael J. Lyons (Admitted *Pro Hac Vice*)
michael.lyons@morganlewis.com
Michael F. Carr (Admitted *Pro Hac Vice*)
michael.carr@morganlewis.com
**Morgan, Lewis & Bockius LLP**
1400 Page Mill Road
Palo Alto, CA 94304
Telephone: 1.650.843.4000
Facsimile: 1.650.843.4001

Stephen S. Korniczky (Admitted *Pro Hac*

*Vice*)
Martin R. Bader
**Sheppard Mullin Richter & Hampton LLP**
12275 El Camino Real, Suite 200
San Diego, California 92130
Telephone: (858) 720-8900
Facsimile: (858) 509-3691
skorniczky@sheppardmullin.com
mbader@sheppardmullin.com

Eric H. Findlay
**Findlay Craft, P.C.**
102 N. College Ave., Suite 900
Tyler, TX 75702
903/534-1100
Fax: 903/534-1137
Email: efindlay@findlaycraft.com

**ATTORNEYS FOR DEFENDANTS TCL
COMMUNICATION TECHNOLOGY
HOLDINGS LTD., TCT MOBILE
LIMITED, and TCT MOBILE (US), INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on September 7, 2017.

/s/ Bradford A. Cangro
Bradford A. Cangro

## CERTIFICATE OF CONFERENCE

I certify that on August 29, 2017, Bradford A. Cangro, counsel for Defendants, conferred by telephone with Theodore Stevenson III and Nicholas Mathews, counsel for Plaintiffs, pursuant to Local Rule CV-7(h).  Counsel for Plaintiffs indicated that Plaintiffs oppose this motion.

/s/ Bradford A. Cangro
Bradford A. Cangro