# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| ERICSSON INC., | § | |
| TELEFONAKTIEBOLAGET LM | § | |
| ERICSSON, | § | |
| | § | Case No. 2:15-cv-00011-RSP |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | |
| TCL COMMUNICATION TECHNOLOGY | § | |
| HOLDINGS, LTD., TCT MOBILE | § | |
| LIMITED,  TCT MOBILE (US) INC., | § | |
| | § | |
| *Defendants*. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Trial in this case is scheduled to begin December 4, 2017. The following opinion and order resolves the parties' pending motions, with the exception of motions *in limine*, which will be addressed at the pretrial conference.

## BACKGROUND

The parties to the lawsuit are global networking and telecommunications equipment and services companies. The two plaintiffs are companies based in the United States and Sweden. Ericsson is a Delaware corporation based in Plano, Texas. Compl. ¶ 1, Dkt. No. 1. Telefonaktiebolaget LM Ericsson is based in Stockholm, Sweden. *Id.* ¶ 2. The plaintiffs are collectively referred to as "Ericsson."

Ericsson owns two relevant patent portfolios. The first is a portfolio that Ericsson alleges includes patents that are essential to global 2G, 3G, and 4G telecommunications standards established by the European Telecommunications Standards Institute (ETSI). *See TCL Commc'n Tech. Holdings, Ltd. v. Telefonaktienbolaget LM Ericsson et al.*, Case No. 8:14-cv-00341-JVS-

1

DFM, Dkt. No. 279-1 at 2 (C.D. Cal. June 29, 2015). The second is a portfolio that includes patents claiming inventions used to implement telecommunications standards in cellular handsets, smartphones, tablet computers, televisions, and other electronic devices. Compl. ¶ 3, Dkt. No. 1. Ericsson has not declared the patents in the second portfolio essential to ETSI telecommunications standards. *See TCL Commc'n Tech. Holdings*, Case No. 8:14-cv-00341-JVS-DFM, Dkt. No. 279-1 at 3. The patent-in-suit is a member of the second portfolio. *See* Compl. ¶¶ 3, 14, Dkt. No. 1.

The defendants are companies based in China, Hong Kong, and the United States, and are all owned by TCL Corporation, a company based in Shenzhen, China. TCL Communication Technology Holdings, Ltd. is one of the three defendants also based on Shenzhen. Compl. ¶ 4, Dkt. No. 1, Am. Ans. ¶ 4, Dkt. No. 45. TCT Mobile Limited is based in Hong Kong. Compl. ¶ 5, Dkt. No. 1; Am. Ans. ¶ 5, Dkt. No. 45. The third defendant, TCT Mobile (US), Inc., is a Delaware corporation based in Irvine, California. Compl. ¶ 6, Dkt. No. 1; Am. Ans. ¶ 6, Dkt. No. 45. The three defendants are collectively referred to as "TCL."

TCL's answer alleges that it is the fifth largest mobile telecommunications vendor in the world, with products available for sale in more than 100 countries. Am. Ans. ¶ 78, Dkt. No. 45. TCL sells products under the "Alcatel Onetouch" brand in the United States. *Id.*; Ericsson Ans. ¶ 78, Dkt. No. 51. Products sold under this brand, including the Alcatel OneTouch Fierce, include the Android operating system, which includes functionality that Ericsson claims is covered by the patent-in-suit. *See* Compl. ¶¶ 47-48, Dkt. No. 1.

## I. The Parties' Dispute

This lawsuit is a relatively small element of a larger global dispute. The larger dispute arises from failed license negotiations related to the patent portfolio Ericsson claims is essential to telecommunications standards set by ETSI. *See TCL Commc'n Tech. Holdings*, Case No. 8:14-cv-

00341-JVS-DFM, Dkt. No. 279-1 at 2. The parties attempted to negotiate a license to Ericsson's alleged standard essential patent (SEP) portfolio, but the parties were unable to reach agreement. *Id.* When a company such as Ericsson declares patents essential to a standard set by ETSI, the company must agree to license the patents on fair, reasonable, and nondiscriminatory (FRAND) terms. *See id.* TCL claims that Ericsson's license offers did not meet ETSI obligations. *See id.*

The parties' impasse prompted litigation around the world. From the fall of 2012 through 2014, Ericsson sued TCL for patent infringement in Brazil, France, Argentina, Germany, and Russia. *See id.* at 6-9. In 2013, TCL petitioned a court in the United Kingdom to revoke certain patents, and Ericsson counterclaimed for infringement. *Id.* at 6-7. The domestic litigation began in the Central District of California in May 2014, with a lawsuit filed by TCL. *See id.* at 2. TCL, an alleged third-party beneficiary to Ericsson's ETSI agreement, claimed that Ericsson breached its FRAND obligation. *Id.* TCL also sought a declaratory judgment that certain alleged SEPs were invalid and not infringed, and TCL asked the court to determine a FRAND rate for a license to Ericsson's SEP portfolio. *Id.*

Several months later, Ericsson filed a lawsuit against TCL in this district, seeking a declaratory judgment that Ericsson had complied with ETSI obligations, and alleging infringement of two alleged SEPs. *Id.* at 6. That lawsuit was transferred to the Central District of California in March 2015. *Id.* In early January 2015, Ericsson filed the present lawsuit, alleging infringement of five patents—United States Patent Nos. 7,149,510, 6,029,052, 6,418,310, RE 43,931, and 6,535,815. Compl. ¶¶ 11-17.

The California court channeled the global dispute at the parties' request. Because the parties indicated that the breach of contract action in California "should result in a 'global resolution' of the SEP patent licensing and damages claims," the court enjoined both parties from

continuing to pursue or initiating lawsuits regarding the SEPs at issue in the California lawsuit. *See TCL Commc'n Tech. Holdings*, Case No. 8:14-cv-00341-JVS-DFM, Dkt. No. 279-1 at 11 (citation omitted). The court also stayed the alleged SEP infringement claims in the lawsuit originally filed in this district, in addition to all "non-FRAND matters." *Id.* at 16. The lawsuit concerning Ericsson's FRAND obligation proceeded to bench trial earlier this year before the California court, and a final decision from the court is pending. The California court otherwise declined to enjoin or otherwise disturb the present lawsuit because it involves intellectual property Ericsson has not declared essential to telecommunications standards set by ETSI. *Id.* at 9.

## II.    This Lawsuit and the Remaining Patent-in-Suit

This lawsuit originally involved allegations that TCL infringed claims of five patents that Ericsson had not declared essential to ETSI standards. *Id.*; Compl. ¶¶ 11-17. These patents are generally related to systems and methods for controlling software and hardware functionality of mobile devices. *See* Dkt. No. 174 at 3. In response to Ericsson's infringement claims, TCL petitioned the Patent Trial and Appeal Board (PTAB) for inter parties review (IPR) of the asserted claims. *See* Dkt. No. 276. After the PTAB instituted IPR of all asserted claims, the lawsuit was stayed. Dkt. 270. Earlier this year, the PTAB found that TCL had proven by a preponderance of the evidence that the asserted claims of the '052, '931, '310, and '815 patents are unpatentable. *See id.* at 3; IPR2015-01650, Paper No. 32.  Ericsson has appealed those decisions to the Federal Circuit. The only claims that survived IPR were the claims of the '510 patent, which is the only remaining patent-in-suit. *See* Dkt. No. 276 at 3. Because the '510 patent claims emerged from IPR, the stay was lifted in May of this year. *See* Dkt. No. 280.

The '510 patent describes advancements in mobile device technology resulting in demands that have been difficult to meet because of the limited size, memory, and power of mobile

devices.'510 patent at 1:55-61. Mobile devices were at one time used only to make and receive phone calls. *Id.* at 1:33-35. As technology developed, mobile devices became capable of sending email and accessing the Internet, among other functions similar to those performed on a computer. *See id.* at 1:35-40. These advanced functions prompted third parties to develop non-native application software, often referred to as an "application" or "app," which could be downloaded by a user. *See id.* at 2:18-24. The problem is that such applications often need to access the mobile device's native software or hardware functionality, and if left unrestricted, the applications may jeopardize the integrity of the mobile device, for example by triggering cost-incurring events without the user's approval. *See id.* at 2:18-32. Consequently, the '510 patent describes a need for controlling or limiting an application's access to the mobile device's native functionality. *See id.* at 2:40-44.

Consistent with its title, "Security Access Manager in Middleware," the '510 patent describes a system for controlling an application's access to native software and hardware on a mobile device. *See id.* at 4:14-16. An exemplary embodiment of the invention claimed by the '510 patent is shown in Figure 1 (color added):



*FIG. 1*

5

Non-native application software (blue) is installed, loaded, and run on the mobile platform. *Id.* at 4:14-16. The software services component (green) provides services such as control, structured storage, and access to hardware driver software. *Id.* at 5:33-40. The hardware component (red) includes units associated with and controlled by the respective units of the software services component. *Id.* at 4:27-32. During operation, the non-native application requests access to the software services component, and an interception module intercepts these requests. *Id.* at 7:11-13. Once intercepted, a decision entity determines whether the request should be granted based on the security policies of the mobile platform and determines whether the user should be prompted to grant access to certain native functionality. *Id.* at 8:1-15, 8:26-41.

Ericsson is currently asserting claim 1 of the '510 patent and claims that depend from claim 1 (claims 3-5, and 9). *See* Dkt. No. 276 at 3. Claim 1 recites:

> A system for controlling access to a platform, the system comprising:
>
> a platform having a software services component and an interface component, the interface component having at least one interface for providing access to the software services component for enabling application domain software to be installed, loaded, and run in the platform;
>
> an access controller for controlling access to the software services component by a requesting application domain software via the at least one interface, the access controller comprising:
>
> an interception module for receiving a request from the requesting application domain software to access the software services component;
>
> and a decision entity for determining if the request should be granted wherein the decision entity is a security access manager, the security access manager holding access and permission policies; and
>
> wherein the requesting application domain software is granted access to the software services component via the at one least interface if the request is granted.

Although the PTAB initially found that TCL had established a reasonable likelihood that the asserted claims of the '510 patent are invalid, *see, e.g.*, IPR2015-01605, Paper No. 10, the PTAB issued final written decisions after trials on the merits concluding that TCL failed to meet its preponderance of the evidence burden, *see id.*, Paper No. 44. In the first IPR proceeding, for example, TCL argued that the asserted claims are invalid as obvious under 35 U.S.C. § 103 in view of two combinations of references—Usui and Gong, and Usui, Gong, and Spencer. *See id.* at 11. The PTAB concluded that TCL had failed to establish that a person of ordinary skill in the art would have been motivated to combine Usui, which describes a Java application environment and software platform for mobile phones, with Gong, which describes Java security mechanisms for computers. *See id.* at 29-37.

The PTAB reasoned that TCL had not come forward with sufficient evidence establishing that it would have been obvious to combine the relatively elaborate computer security software described by Gong with the mobile platform of Usui "given the design constraints of less memory and resources of a mobile phone." *See id.* at 29-30. The PTAB reached essentially the same conclusion in two related IPR proceedings, concluding that TCL had failed to establish that a person of ordinary skill in the art would have been motivated to combine a mobile phone software platform with computer security software. *See* IPR2015-01622, Paper No. 44 at 24-33; IPR2015-01628, Paper No. 43 at 27-36. As a result of the PTAB's decisions, the parties stipulated that TCL would not raise certain invalidity defenses at trial. *See* Dkt. No. 296.

Ericsson contends that certain phones manufactured or sold by TCL include functionality that falls within the scope of the '510 patent claims. The accused products all include some version of the Android operating system, and Ericsson's infringement theory is based in large part on features of this operating system. *See, e.g.*, Dkt. No. 340-3 ¶ 37.

# DISCUSSION

## I.     Motions for Summary Judgment and Related Motions

TCL moves for summary judgment of no willful infringement and summary judgment of invalidity under § 101. Summary judgment must be granted when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902 (5th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must consider evidence in the record in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Thorson v. Epps*, 701 F.3d 444, 445 (5th Cir. 2012). The moving party must identify the portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a party has made that showing, the non-moving party bears the burden of establishing otherwise. *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990) (citing *Celotex*, 477 U.S. at 323). The non-moving party cannot "rest upon mere allegations or denials" in the pleadings, but "must set forth specific facts showing there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 248. Thus, summary judgment "is appropriate if the non-movant 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" *Bluebonnet Hotel Ventures, LLC v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014) (quoting *Celotex*, 477 U.S. at 322).

### A. TCL's Willfulness Motions

#### 1. Summary Judgment of No Willfulness, Dkt. No. 217 (*see also* Dkt. No. 300)

TCL's original motion for summary judgment of no willfulness was filed before the Supreme Court's decision in *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923 (2016), *see* Dkt. No. 217, and the parties have since updated their briefs to reflect the change in law. *See* Dkt. Nos. 300, 302, 305, 306. Although a close call, TCL's willfulness motion is denied because a reasonable jury could possibly conclude that TCL's conduct has been egregious. This conclusion, however, is far from certain, and the Court will carefully monitor the evidence presented at trial.

TCL's arguments in support of summary judgment are based in large part on the applicable willfulness standard, and for that reason it is helpful to explain the standard as it stands today. The Supreme Court's *Halo* decision clarified the narrow circumstances in which enhanced damages should be awarded. They are not to be awarded in a "typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior." *Halo*, 136 S. Ct. at 1932 (citation omitted). In surveying the relevant cases, the Supreme Court characterized the conduct supporting enhanced damages as "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id.*

The word in the Supreme Court's list of culpable conduct that has created the most uncertainty is "willful" because that word implies nothing more than intentional infringement. As foreshadowed by Justice Breyer, parties have interpreted "willful" to mean knowledge of the patent "*and nothing more*." *See Halo*, 136 S. Ct. at 1936 (Breyer, J., concurring). As this Court has recognized, however, knowledge of an asserted patent, without more, cannot justify enhanced damages under the *Halo* standard. *See Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No.

2:15-CV-1202-WCB, 2017 WL 2190055, at *3 (E.D. Tex. May 18, 2017) (Bryson, J., sitting by designation). This conclusion is consistent with—and in fact compelled by—the majority opinion in *Halo*, which repeatedly emphasizes that enhanced damages are "reserved for *egregious cases* of culpable behavior." *Halo*, 136 S. Ct. at 1932 (emphasis added). In other words, culpable conduct is required, but the culpable conduct must be egregious, i.e., outrageous or shocking.

In addition to uncertainty regarding what is required for enhanced damages, it is also not clear from *Halo* whether willfulness is a jury question. The Supreme Court did not have a reason to address the issue. A plausible reading of *Halo* nevertheless suggests that a jury may be asked whether infringing conduct was indeed egregious, particularly since a prerequisite to such an egregiousness finding is an accused infringer's subjective belief that he is infringing a valid patent. *See Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, 240 F. Supp. 3d 605, 618 (E.D. Tex. 2017) (Bryson, J., sitting by designation). Intent is a classic factual issue.

If the jury finds the requisite intent and that the intentional conduct was egregious, or in effect worthy of punitive damages, the Court may in its discretion determine whether damages should be enhanced. *See Halo*, 136 S. Ct. at 1931-32 (explaining that the Court's discretion "is not whim"). Even if this characterization of *Halo* is incorrect, however, and willfulness is not a jury question, there is no disadvantage in submitting the question to the jury. *See Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1356-60 (Fed. Cir. 2012) (explaining the basis for why ultimate legal questions such as obviousness are routinely submitted to the jury). It may be prejudicial to a defendant if the plaintiff repeatedly refers to the defendant's conduct as "wanton" or "egregious" in front the jury, but the plaintiff may also prejudice itself by making such extreme characterizations without reasonable support. In sum, there is no error in submitting a willfulness

question to a jury, assuming of course that the summary judgment record could support a willfulness finding.

There is also uncertainty regarding pre-suit and post-suit conduct, namely whether post-suit conduct alone can justify enhanced damages. Indeed, part of the basis for TCL's motion is that there is no evidence of egregious pre-suit conduct that would support enhanced damages. *Id.* at 6. The Federal Circuit, however, has at least suggested that there is no per se rule precluding a finding of willful infringement based solely on conduct occurring after the lawsuit is filed. *See Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1295-96 (Fed. Cir. 2017) (district court "erred in concluding that Synopsys could not present evidence of post-filing willful infringement because Synopsys did not seek a preliminary injunction."). It appears that the Federal Circuit was simply saying that pre-suit willful infringement could continue after the suit was filed, and that a motion for a preliminary injunction is not required to recover enhanced damages for continued post-filing willful infringement. *See id.* But it would seem contrary to *Halo* to suggest that an accused infringer could intentionally infringe an asserted patent and engage in other egregious behavior, such as deliberately driving a less-resourceful patentee out of business, as long as the egregious behavior begins after the patentee filed the complaint. A fair reading of *Halo* suggests that truly egregious behavior may warrant a punitive response regardless of when the behavior occurs.

The more pertinent question is whether there is any evidence to support a finding of egregious culpable behavior at any time in this case. TCL argues that Ericsson has not produced evidence of "egregious infringement behavior" or behavior of a "wanton and malicious pirate." Dkt. No. 300 at 2. TCL also argues that its good faith belief of noninfringement and invalidity of the '510 patent is "demonstrated by its summary judgment motion on invalidity as well as the IPRs that were instituted by the PTAB." *Id.* While nothing in the record clearly stands out as egregious,

Ericsson has come forward with evidence suggesting that TCL's infringement has accelerated since the lawsuit was filed. This may be because TCL believed it was not infringing a valid patent. *See WesternGeco L.L.C. v. Ion Geophysical Corp.*, 837 F.3d 1358, 1363 (Fed. Cir. 2016) (even after *Halo*, the objective reasonableness of the accused infringer's positions can still be relevant to the § 284 issue).

Yet TCL has offered little other evidence relevant to the subjective belief of its decision makers at the relevant time. TCL's IPR petitions came after its knowledge of the '510 patent, as did TCL's motion for summary judgment invalidity under § 101. As TCL acknowledges, "culpability is generally measured against the knowledge of the actor at the time of the challenged conduct." *Halo*, 136 S. Ct. at 1933. There is no evidence, for example, going to TCL's subjective beliefs when its infringement allegedly accelerated after Ericsson filed the lawsuit. Consequently, the Court cannot conclude with confidence at this point that no reasonable jury could find that TCL subjectively believed it was infringing a valid patent, and that this intentional conduct was egregious. The motion for summary judgment is therefore denied.

### 2. TCL's Motion to Bifurcate Willfulness, Dkt. No. 321

TCL also moves to bifurcate the issue of willful infringement from "initial issues of liability and damages in order to prevent jury confusion and prejudice to both parties." Dkt. No. 321 at 1. TCL argues that without bifurcation, the presentation of prior art, PTAB proceedings, and the strength of TCL's invalidity and legal defenses will likely confuse a jury "that is not asked to determine invalidity or the legal defenses." *Id.* at 1. The Court is not persuaded.

Nothing will prevent TCL from telling the jury that it had a good faith belief that the '510 patent was invalid or not infringed, and the PTAB's institution of IPR of the '510 patent claims is evidence of the reasonableness of that belief. But if TCL would like to present such evidence,

Ericsson is of course entitled to tell the jury the rest of the story, i.e., that the PTAB ultimately found that TCL had not proven by a preponderance of the evidence that the asserted claims of the '510 patent are invalid. The same may be true of TCL's § 101 motion—if TCL were to present evidence that it thought the '510 patent was invalid on a legal ground (§ 101), then of course Ericsson would be entitled to inform the jury that the Court denied that motion (see below). Similarly, if TCL were to tell the jury that it believed the claims were invalid under § 112, ¶ 6, then Ericsson could inform the jury that the Court found TCL's claim construction arguments untimely and thus waived (see below). The point is that TCL could present evidence that it subjectively believed the '510 patent to be invalid or not infringed—and point to objective evidence of that belief—without getting into the merits of the invalidity or legal defenses.

Contrary to TCL's argument, it is not clear how presenting evidence related to its good faith belief of invalidity will prejudice either side. Validity and infringement raise different questions, and a party's reference to a validity argument is no more prejudicial than reference to an infringement finding during the willfulness phase of a bifurcated trial. Similarly, judicial economy does not support bifurcation. TCL is correct that a finding of no infringement could eliminate the need for a trial on willfulness, but a finding of infringement would require a second trial—an inefficient outcome given that evidence relevant to willfulness is intertwined with evidence of infringement and damages. Accordingly, TCL's motion to bifurcate is denied.

### B. TCL's Subject Matter Eligibility Motion, Dkt. No. 299, and Related Motion to Strike, Dkt. No. 310

TCL moves for summary judgment that the asserted claims of the '510 patent are invalid under 35 U.S.C. § 101 because according to TCL, the claims are directed to patent-ineligible subject matter. *See* Dkt. No. 299. TCL argues that the asserted claims "are directed to the abstract idea of controlling access to a platform based on access rules." *Id.* at 1. This idea, according to

TCL, is abstract because "[f]or centuries, gatekeepers tasked with controlling access to restricted resources intercepted requests for access and determined whether to grant or deny the request by relying on predetermined access and permission policies." *Id.* The Court is not persuaded that the claims are directed to an abstract idea, but even if they are, the claims recite an inventive concept sufficient to render the claims patent-eligible.

A patent may be obtained for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The exception is that "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S.Ct. 2107, 2116 (2013) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S.Ct. 1289, 1293 (2012)). In assessing subject-matter eligibility, a court must "first determine whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 134 S.Ct. at 2355. If the claims are directed to an ineligible concept, the court must then "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo*, 132 S.Ct. at 1298, 1297).

When evaluating claims related to computer technology, a court must "articulate with specificity what the claims are directed to, and 'ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea.'" *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1258 (Fed. Cir. 2017) (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016)) (citing *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1347 (Fed. Cir. 2017)). The claims of the '510 patent are limited to mobile platform technology. Accordingly, the question at *Alice* step one is whether the claims, which are directed to security and permission software for mobile devices, are merely directed to the abstract idea of

controlling access to restricted resources, as TCL suggests, or to an improvement in mobile phone software, as Ericsson suggests.

The Court agrees with Ericsson's characterization. Rather than using computer technology in its ordinary capacity, the claims recite a system capable of permitting a mobile phone user to grant applications access to native phone functionalities while denying access to other native functionalities. *See* Dkt. No. 301 at 1. The PTAB thoroughly described the technical details of the claimed system, and the focus of the claims, during IPR proceedings. *See* IPR2015-01605, Paper No. 44; IPR2015-01622, Paper No. 44; IPR2015-01628, Paper No. 43. The PTAB's highly technical characterization of the claims supports the conclusion that the claims are not directed to an abstract idea. Indeed, the asserted claims resemble claims directed to improved computer technology that have survived scrutiny under *Alice* step one at the Federal Circuit. *See Visual Memory*, 867 F.3d at 1259 (enhanced computer memory system); *Thales*, 850 F.3d at 1345 (motion-tracking system); *Enfish*, 822 F.3d at 1339 (self-referential table). Accordingly, the Court concludes that the claims are not directed to an abstract idea but rather to an improved technological solution to mobile phone security software.

Even if the claims were directed to an abstract idea, however, the claims recite a sufficiently inventive concept under *Alice* step two to distance the claims from the abstract idea. Namely, the claims recite a technological improvement to a problem arising in mobile platform technology, namely the problem of limited memory and resources on mobile phones. The invention is a particularized solution to that problem, much like the invention at issue in *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014). The fact that the PTAB concluded that TCL failed to establish that a person of ordinary skill in the art would be motivated to combine computer-based security software with the relevant mobile platform technology—because of the

limited memory and resources of a mobile phone—suggests that the systems claimed by the '510 patent are not merely conventional applications of computer technology. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1347 (Fed. Cir. 2015) (A "pragmatic analysis of § 101 is facilitated by considerations analogous to those of §§ 102 and 103 as applied to the particular case."). Accordingly, TCL's motion for summary judgment of invalidity under § 101 is denied. TCL also moves to strike Ericsson's sur reply. Dkt. No. 310. Because the Court's decision on the § 101 motion does not rely on the sur reply, TCL's motion to strike is denied as moot.

## II.    Motions to Strike or Exclude Expert Testimony

Both parties have moved to strike opposing expert testimony related to both the technical, infringement aspect of the case as well as the damages aspect of the case. When evaluating a party's challenge to an opponent's expert witness, the Court assumes the role of gatekeeper to ensure the reliability and relevance of the expert's testimony. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). Rule 702 guides the inquiry, specifying that a qualified expert may testify as long as his opinion will aid the fact finder and is reliable, i.e., the opinion must stand on sufficient data, reliable methods, and the facts of the case. *See Daubert*, 509 U.S. at 590; Fed. R. Evid. 702(a)-(d); *see also Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391 (Fed. Cir. 2003) ("In 2000, Rule 702 was amended in response to *Daubert* and cases applying it.").

### A.  Ericsson's Motions to Strike Martinez Report, Dkt. Nos. 222 & 326

Ericsson moves to strike Christopher Martinez's damages report on two grounds, both of which relate to Mr. Martinez's reliance on an offer Ericsson made to a third-party for a license to the '510 patent. The licence offer was part of a larger negotiation involving both SEPs and implementation patents, or patents that are relevant to but that have not been declared essential to

a standard. *See* Dkt. Nos. 222 and 326. Ericsson contends that Mr. Martinez's reliance on this offer should be precluded (1) because the offer was a settlement offer and is thus properly excluded under Rule 408, and (2) because the offer is not a reliable indicator of the value of the invention claimed in the '510 patent given that the '510 patent was a small portion of a larger bundle of patents offered for license. The Court does not agree with either argument.

First, the Court does not accept the premise that Ericsson's license offer to the third party is inadmissible evidence of an offer to compromise a claim. *See* Fed. R. Evid. 408. "Rule 408 has been and remains fact-specific, and tethered to the rationales underlying the rule." *Lyondell Chem. Co. v. Occidental Chem. Corp.*, 608 F.3d 284, 298 (5th Cir. 2010). An effective settlement negotiation requires frank discussion of relevant evidence, and permitting the use of such evidence in related litigation would undermine Rule 408's purpose. *Id.* The circumstances surrounding Ericsson's license negotiations with the third party, however, simply do not implicate a Rule 408 concern.

By its own admission, Ericsson licenses thousands of patents to numerous parties and owns a large portfolio of patents declared essential to telecommunications standards. Patent infringement is a strict liability offense, and at any given time, it is possible that a non-licensed party may be infringing an Ericsson patent. That does not mean all of Ericsson's patent license negotiations are settlement negotiations shielded by Rule 408 simply because litigation could ensue, or that litigation did ensue after failed negotiations. Large patent portfolio negotiations, in contrast to negotiations following an environmental disaster, for example, *see Lyondell*, 608 F.3d at 298-300, are not as tied to a defined claim of liability.

Under the circumstances of Ericsson's negotiations with the third party, any "claim" was simply too nebulous to warrant protecting the negotiations with Rule 408. As a result, permitting

evidence of Ericsson's offer will not dampen reliance on such offers in the future. Ericsson's offer of a license to the '510 patent was bundled with a license to numerous other patents, including other implementation patents and SEPs. Given the volume of patents that the offer covered, it is unreasonable to think that the third party negotiating with Ericsson had any particular claim of liability in mind, even though the third party may have reasonably anticipated *some* claim in the event negotiations failed. It would have been practically impossible, however, for Ericsson to have initiated litigation for infringement of *all* the patents included with the license offer. Accordingly, there is no clear basis for excluding the offer under Rule 408. The "overarching policy of favoring the admission of all relevant evidence" should control in this instance. *See id.* at 299.

Second, the Court does not agree that the offer is so unreliable to warrant exclusion under the *Daubert* standard. The use of similar evidence has been condoned by the Federal Circuit in past cases. *See Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1297 (Fed. Cir. 2015) (discussing reliance on evidence of plaintiff's unaccepted license offer); *see also Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283 (Fed. Cir. 2015) ("Past licensing practices of the parties and licenses for similar technology in the industry may be useful evidence."). Ericsson may present its view of why the license offer is not comparable or not an adequate indicator of the value of the invention claimed in the '510 patent. Indeed, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Ericsson's motions to strike Mr. Martinez's reports are denied.

### B. TCL's Motion to Strike Jones Report, Dkt. No. 323

TCL moves to strike Dr. Mark Jones' infringement report on four grounds. *See* Dkt. No. 323. TCL argues that Dr. Jones' opinions (1) are not based on a sufficient examination of all

accused products; (2) rely on an incorrect (claim construction) premise concerning the term "interception module"; (3) rely on and extrapolate a flawed consumer survey; and (4) provide "unhelpful" claim construction opinions. The Court is not persuaded that TCL has demonstrated a reason to exclude Dr. Jones' testimony.

TCL's first and third arguments go to the weight of Dr. Jones' opinion, not to its admissibility. Dr. Jones' opinion is based a sufficient examination of the accused products. *See* Dkt. No. 340-3 ¶¶ 42-117; Dkt. No. 340-4; Dkt. No. 340-5; Dkt. No. 340-6 at 10-77; Dkt. No. 340-7; Dkt. No. 340-8, Dkt. No. 340-9. In addition, Dr. Jones is not providing an unqualified opinion. Dr. Wecker and Dr. Jones simply rely on each other's opinions, with Dr. Wecker relying on Dr. Jones' technical analysis, and Dr. Jones relying on Dr. Wecker's consumer preference survey. *See Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1299 (Fed. Cir. 2015) ("To the extent [the expert's] credibility, data, or factual assumptions have flaws, these flaws go to the weight of the evidence, not to its admissibility.").

TCL's second argument is at least partially a claim construction argument regarding the term "interception module" that was not timely raised, and thus the argument is waived for the reasons explained below. *See infra* § IV. Because "interception module" has not been construed, the term has its ordinary meaning. TCL may nevertheless present its noninfringement argument to the jury. In other words, TCL is not precluded from presenting evidence or argument that products do not infringe because the accused "interception module" includes code that is dispersed throughout the operating system, as opposed to being a self-contained segment of code, i.e., that a person of ordinary skill in the art would not view the accused software segment(s) as an "interception module" because the accused code segments are not part of a module. Dr. Jones will present his contrary view, and the jury will decide which testimony to credit. *See Verizon Servs.*

*Corp. v. Cox Fibernet Va., Inc.*, 602 F.3d 1325, 1330-41 (Fed. Cir. 2010) (distinguishing infringement opinions from claim construction). TCL's argument does not, however, provide a basis to exclude Dr. Jones' testimony.

Finally, TCL's fourth argument relates to portions of Dr. Jones' expert report concerning the construction of "interception module" as a means-plus-function term. As explained below, the Court will not construe "interception module." As a result, this portion of Dr. Jones' report is no longer relevant. In any event, Dr. Jones' claim construction opinions would not have been presented to the jury, as Ericsson explains. Accordingly, TCL's motion to strike Dr. Jones' report is denied.

### C. TCL's Motion to Exclude Wecker and Mills Testimony, Dkt. No. 324

TCL moves to exclude testimony by Dr. William Wecker and Robert Mills because according to TCL, certain testimony from these witnesses is based on a consumer survey that is not adequately tied (or apportioned) to the features claimed in the '510 patent. *See* Dkt. No. 324. TCL may present its view of the theory at trial, but the Court is not persuaded that Mr. Mills and Dr. Wecker should be precluded from offering their opinions.

Dr. Wecker designed and implemented an online consumer survey that purports to isolate the value of the invention claimed in the '510 patent. The survey includes questions such as the following question:

> Suppose that the Android-based smartphone you purchased, as well as some other manufacturers' smartphones, did not have the ability to (1) ask your permission for an app to access particular capabilities on your phone before downloading that app, and (2) prevent an app from accessing the capabilities on your phone for which permission was neither requested nor given. Instead, just prior to downloading an app, you would have to decide to either (a) grant the app permission to access all capabilities on the phone, or (b) not download the app.

Dkt. No. 324-3 ¶ 7. TCL contends that such questions are not adequately tied to the '510 patent claims. Similarly, because Mr. Mills bases his damages model on the Wecker survey results, TCL argues that Mr. Mills' testimony should be excluded.

The Court does not agree. Dr. Wecker's questions are at least as narrowly tailored as those at issue in *Summit 6*. *See* 802 F.3d at 1297-99. Dr. Wecker's questions concerning permission and access features of a mobile phone relate to the allegedly infringing features, as certain of TCL's noninfringing alternatives illustrate. Similarly, by comparing survey respondents' preferences regarding allegedly infringing and noninfringing alternatives, Mr. Mills' damages assessment sufficiently accounts for the allegedly infringing features. *See, e.g.*, *Sentius Int'l, LLC v. Microsoft Corp.*, No. 5:13-CV-00825-PSG, 2015 WL 451950, at *11 (N.D. Cal. Jan. 27, 2015) (approving similar damages model). "When methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony' weight, but not its admissibility." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010). Accordingly, TCL's motion to exclude the testimony of Dr. Wecker and Mr. Mills is denied.

### D. Ericsson's Motion to Strike Ligatti Report, Dkt. No. 325

Ericsson moves to strike the expert report of Dr. Jared Ligatti, contending that the report is based on a new infringement theory that was not timely raised before this case was stayed pending IPR. *See* Dkt. No. 325. The Court agrees. Dr. Ligatti's report is stricken.

The original expert disclosure and discovery period in this case ended on January 27, 2016, almost two years ago. *See* Dkt. No. 161 at 3. The parties have since been litigating validity issues at the PTAB, after TCL filed close to twenty IPR petitions. Before the case was stayed pending

IPR, Ericsson was accusing TCL products that included version 2, 3, or 4 of the Android operating system. *See* Dkt. No. 325 at 2.

After the '510 patent emerged from IPR proceedings, the Court entered a docket control order allowing "supplemental expert reports on infringement and damages." Dkt. No. 289. The point of allowing additional expert reports and discovery was to allow the parties to update their original, pre-stay positions on infringement and damages. It was never intended that either party would introduce new theories or new experts into the case, provided of course that the original experts remained available to testify at trial.

Ericsson's addition of new products into the case does not, under the circumstances, justify Dr. Ligatti's new report. Ericsson served a supplemental infringement report from Dr. Jones in August of this year, which included an infringement opinion for new TCL products that were released during the stay period. *See* Dkt. No. 325 at 5. The new products include versions 4-7 of the Android operating system. But the theory of infringement, which is based on the Android system's security and permissions software, has not meaningfully changed, at least not enough to warrant a new noninfringement theory. TCL's original noninfringement report from Dr. Malek includes opinions that are as relevant to the new TCL products as they are to the original products based on older versions of the Android operating system. Dr. Malek can present those opinions and any updated opinions specific to the newly accused products at trial.

Dr. Ligatti's opinion, by contrast, does more than update TCL's original theory. Dr. Ligatti distinguishes between a "service-based approach" and an "interception-based" approach. This distinction was never made in Dr. Malek's original noninfringement report. Nothing about the Android operating system on the newly accused products justifies permitting this new theory.

Accordingly, Ericsson's motion to strike Dr. Ligatti's report is granted. Dr. Ligatti is not permitted to testify at trial.

### III. Discovery-Related Motions

#### A. Ericsson's Undisclosed Noninfringing Alternatives Motion, Dkt. No. 220

Ericsson moves to strike portions of TCL's rebuttal expert reports related to noninfringing alternatives that were not disclosed in response to Ericsson's Interrogatory No. 5. *See* Dkt. No. 220. Ericsson's original motion requested that the Court strike noninfringing alternatives relevant to the '510, '052, and '931 patents, *see id.*, but because the '052 and '931 patents are no longer in the case, Ericsson has informed the Court that the only remaining dispute relates to the '510 patent, *see* Dkt. No. 284 at 1. Consequently, the portion of the motion related to the '052 and '931 patents is denied as moot. The portion of the motion related to the '510 patent is granted-in-part and denied-in-part for the following reasons.

On April 13, 2015, Ericsson served TCL with a first set of interrogatories. Interrogatory No. 5 asked TCL to "identify and describe all facts and documents (including the technical and financial details) related to any acceptable non-infringing alternative(s) or design around(s) available to You, of which You are aware, which you are presently investigating, or which You may rely upon for any purpose in this case (including at trial) and the three persons most knowledgeable thereof." Dkt. No. 220-2 at 9. TCL objected to the interrogatory because "Ericsson's infringement contentions are vague and unclear," and because the Court had "yet to issue final constructions on the disputed terms from the '510 patent." Dkt. No. 220-9 at 45. TCL agreed to "further supplement after receiving and analyzing the Court's constructions for the '510 patent." *Id.* at 46. TCL nevertheless stated that "non-infringing alternatives would include prior art solutions such as found on desktop and laptop computers, including Linux and Windows security

implementations." *Id.* TCL later supplemented this response to include "TCL phones with different operating systems such as Windows Phone, Ubuntu Touch, and Firefox OS." Dkt. No. 220-10 at 18. TCL did not disclose any alternative based on a modification to the Android security module, i.e., the software already present on TCL's phones.

In addition to not disclosing a change to the Android operating system, TCL's corporate representative, Sebastian Codeville, led Ericsson to believe that such a modification would not be possible. On October 14, 2015, Mr. Codeville explained that modifying the Android security module would lead to compatibility problems with Google applications:

> Q: Okay. What did you determine with respect to the '510 patent? Which parts of the codes do you modify, which parts do you not? The '510 is the security permissions patent.
>
> A: Yes. So on this one, my discussion was basically that this module, the security and permission module, they are open source, you know, Android. But my question was, "Do we modify this mechanism?" And the answer was, "No, we don't modify this mechanism, because modifying this would mean not being compliant with the ecosystem of application available on Google Play on the market."

Dkt. No. 220-13 at 32:9-16. According to Mr. Codeville, any changes to the internal Android operating system would have to be made by Google:

> Q: Are you aware of any non-infringing alternatives to the '510 patent?
>
> A: So I -- I don't -- I believe there are alternatives, but again, I believe it should be a Google implementation.
>
> Q: Okay. So any --
>
> A: I answered this question before.
>
> Q: Any changes that would be made with respect to the permissions on TCL's Android devices would have to be made by Google, not TCL?
>
> A I believe so, yes.

*Id.* at 228:19-229:4.

The Docket Control Order that was in place at the time required that fact discovery be completed by November 27, 2015. Dkt. No. 161 at 3. Opening expert reports were due December 11, 2015, rebuttal reports were due January 11, 2016, and expert discovery was scheduled to end January 27, 2016. *Id.*

On January 11, 2016, TCL served its rebuttal expert reports. These reports included opinions based on noninfringing alternatives requiring modifications to the internal Android operating system. Dr. Sam Malek opines, for example, that the operating system could be modified such that another entity, other than the alleged "security access manager" could hold access and permission policies. Dkt. No. 220-20 ¶ 147. Such a modification would provide an acceptable noninfringing alternative, according to Dr. Malek, because claim 1 of the '510 patent requires that the "security access manager" hold "access and permission policies." *Id.* (quoting claim 1). TCL's damages experts appear to rely on Dr. Malek's opinions. *See* Dhar Rep. ¶ 77, Dkt. No. 220-21. Because the factual basis for these opinions was not disclosed in response to Ericsson's Interrogatory No. 5, Ericsson requests that the opinions be stricken from the reports.

Rule 26 requires a party who has responded to an interrogatory to supplement its response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1). A party that fails to do so "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

TCL's primary argument is that no discovery violation occurred. *See* Dkt. No. 248 at 1. TCL contends that in response to Interrogatory No. 5, TCL "disclosed its then-known non-infringing alternatives, in the detail it had developed." *Id.* But "as TCL worked with its experts on

reports to rebut Ericsson's grandiose damages theories, TCL flushed out its theories in more detail, and disclosed them as the docket control order requires, in its rebuttal expert reports." *Id.* TCL's argument is supported by Mr. Dhar's February 2016 deposition testimony, which explains that TCL's experts developed new noninfringing alternative theories in late December 2015:

> Q: TCL's technical experts told you that they identified additional noninfringing alternatives other than those just in the interrogatory responses?
>
> A: That's my memory of it. I wouldn't hold myself to it but my memory is there were certain things that had identified at that stage whenever that was in the case, and since then they haded [sic] that additional ideas again I'm paraphrasing the language.
>
> Q: Do you know about when you had those conversations with TCL's technical experts?
>
> A: Yes, late December.

Dkt. 220-14 at 128:2-129:14.

TCL's argument is not persuasive. TCL is correct that a party must only answer interrogatory questions with information that is currently available. TCL is also correct that expert theories need not be disclosed in response to interrogatories. *See, e.g.*, *Beneficial Innovations, Inc. v. AOL LLC*, Case No. 2:07-cv-555, Dkt. No. 260 at *1 (E.D. Tex. May 26, 2010). But TCL's response to Interrogatory No. 5 stated that noninfringing alternatives included phones with operating systems that are different than the default Android system, i.e., that the operating system would have to be replaced. *See* Dkt. No. 220-10 at 18. Mr. Codeville testified during deposition that a similar modification to the default Android operating system was not possible, and that any such change would have to be made by Google. Dkt. No. 220-13 at 32:9-16, 228:19-229:4.

In light of TCL's position that the operating system would have to be replaced, and that any similar change to the Android system did not seem feasible, it is difficult to believe that TCL was not at least investigating a modification to the Android operating system during the fact

discovery period. Such an investigation would have included underlying facts that TCL should have timely disclosed in response to Interrogatory No. 5, which asked for the details underlying any such investigation. *See* Dkt. No. 220-2 at 9. At the very least, there would have been no harm in including a modification to the default Android system in the response to the interrogatory because as explained below, the ramifications for the late disclosure are significant. Consequently, a discovery violation occurred.

The only remaining question is whether the violation was substantially justified or harmless. In evaluating whether a violation of Rule 26 is harmless, the Fifth Circuit considers four factors: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Texas A & M Research Found. v. Magna Transp.*, 338 F.3d 394, 402 (5th Cir. 2003). These factors support excluding the late noninfringing alternative theories.

The noninfringing alternatives based on a modification to the Android operating system are important, but only to the extent the alternatives relate to damages or the value of the patented features. The alternatives are not, however, as important as a defense that would result in a finding of no liability. *See Allergan, Inc. v. Teva Pharm. USA, Inc.*, No. 2:15-CV-1455-WCB, 2017 WL 1512334, at \*5 (E.D. Tex. Apr. 27, 2017) (Bryson, J., sitting by designation) (importance of the evidence factor requires "a pragmatic judgment as to the likelihood" that the evidence will support a successful defense). The important of the evidence, in other words, weighs in favor of excusing the violation, but the factor is not as overwhelming as it would be for a case-dispositive defense.

The prejudice to Ericsson is substantial. Not only were the noninfringing alternatives based on a modification to the Android system not disclosed, but Ericsson was led to believe that such a

modification was not possible. As a result, Ericsson proceeded through fact and expert discovery assuming that noninfringing alternatives required replacing, not modifying, the Android operating system. Most important, Ericsson did not have any reason to seek third-party discovery from Google to inquire about whether modifications to the Android system would be permitted. In light of Mr. Codeville's testimony, Ericsson had every reason not to pursue such discovery. TCL's disclosure of the new theory in its rebuttal expert reports, after the close of fact and expert discovery, is too late to cure the prejudice.

The remaining factors do not weigh in favor of excusing the late disclosure. As for the third factor, any continuance would delay trial, which is only weeks away. *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 537 (5th Cir. 2003) (affirming district court's refusal to grant continuance when it would "unnecessarily delay the trial"). Finally, Ericsson does not adequately explain why it did not at least disclose that it was investigating a modification to the Android operating system, particularly given its position that a change to the source code on the operating system would have to be made. It only seems logical that TCL would have investigated modifying the default system before concluding that the operating system had to be replaced altogether. In sum, the factors weigh in favor of precluding TCL from relying on the new noninfringing alternatives based on a modification to the Android operating system.

The purpose of interrogatories is not only to ascertain facts but also to "determine what the adverse party contends they are, and what purpose they will serve, so that the issues may be narrowed, the trial simplified, and time and expense conserved." *Baim & Blank, Inc v. Philco Distributors, Inc.*, 25 F.R.D. 86, 87 (E.D.N.Y. 1957). Discovery and pretrial procedures "make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Proctor & Gamble Co.*, 356 U.S. 677,

682 (1958). While the Court is not suggesting that TCL's late disclosure was deliberate, the drastic change in position after Mr. Codeville's deposition justifies excluding the new noninfringing alternatives.

Accordingly, the portion of Ericsson's motion related to the '510 patent is granted-in-part. Paragraph 147 of Dr. Malek's report, Dkt. No. 220-20, and paragraph 77 of Mr. Dhar's report, Dkt. No. 220-21, are stricken. The motion is otherwise denied. Ericsson asks the Court to strike paragraphs 76 and 78 of the Dhar report, Dkt. No. 220-21, and paragraphs 200, 201, and 202 of Christopher Martinez's damages report, Dkt. No. 220-22, but these paragraphs do not clearly reference the new noninfringing alternatives based on a modification of the Android operating system. Consequently, these additional paragraphs are not stricken. To be clear, however, TCL's experts will not be permitted to rely on noninfringing alternatives based on a modification to the Android operating system.

### B. Ericsson's Updated Noninfringing Alternative Motion, Dkt. No. 327

After the stay was lifted, Ericsson updated its noninfringing alternative motion, and the new motion is based on the same grounds as those discussed above, namely that noninfringing alternatives based on a modification to the Android operating system should be stricken. *See* Dkt. No. 327. Ericsson's updated motion asks the Court to strike paragraphs 208-210 of Dr. Jarred Ligatti's rebuttal report, Dkt. No. 327-14, as well as the damages opinions based on the undisclosed alternatives, at paragraphs 11, 70-71, and 75-78 of the January 11, 2016 Dhar report, Dkt. No. 327-17, paragraphs 133-34 and 200-201 of the January 11, 2016 Martinez report, Dkt. No. 327-13, and paragraphs 125-129, 201, and 203-204 of the September 26, 2017 Martinez report, Dkt. No. 327-19.

Ericsson's updated motion is granted-in-part and denied-in-part for the same reasons explained above, i.e., that TCL is not permitted to rely on opinions related to noninfringing alternatives requiring a modification to the Android operating system that were not timely disclosed in response to Ericsson's Interrogatory No. 5. Paragraph 77 of Mr. Dhar's January 2016 report has already been stricken. In addition, the portion of paragraph 134 of Mr. Martinez's January 2016 report, Dkt. No. 327-13, that discusses modifications to the Android operating system is stricken. Similarly, paragraph 129 of Mr. Martinez's September 2017 report, Dkt. No. 327-19, is stricken. The remaining portions of the expert reports identified by Ericsson do not clearly reference noninfringing alternatives based on a modification to the Android operating system.

## IV.   Claim Construction

TCL requests additional claim construction of two terms, "interception module" and "decision entity." Dkt. No. 292. TCL contends these limitations are means-plus function terms governed by 35 U.S.C. § 112, ¶ 6. Dkt. No. 292. According to TCL, the patent's specification fails to include sufficient structure corresponding to the "interception module," and thus this term is indefinite. *See id.* at 9. TCL proposes that "decision entity" be construed as the security access manager disclosed in the specification that is programmed to perform the algorithm shown in Figure 7 of the patent. *See id.* at 14. Because TCL could have made these arguments during the claim construction phase of the case but did not, the request for additional claim construction is denied.

### A.  TCL's Waiver

TCL filed its original responsive claim construction brief on August 28, 2015. Dkt. No. 91. TCL did not argue that "interception module" or "decision entity" are terms that should be

governed by § 112, ¶ 6. *See id.* Rather, TCL agreed that "decision entity" should be given its plain and ordinary meaning, Dkt. No. 63, and TCL did not oppose giving "interception module" its plain and ordinary meaning, Dkt. No. 109. The claim construction hearing was held on September 29, 2015, and TCL again did not argue these limitations were means-plus-function terms. *See* Hr'g Tr., Dkt. No. 127. TCL's failure to timely raise these claim construction arguments should ordinarily result in waiver of the arguments. *See Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007) (affirming district court's finding that claim construction argument was waived).

TCL also failed to give Ericsson any timely indication that it might seek a construction of "interception module" or "decision entity" under § 112, ¶ 6. Rather, in its petition for IPR of the '510 patent, TCL proposed constructions of the terms under the broadest reasonable construction standard, but no suggestion was made that the terms are governed by § 112, ¶ 6 or that either term is indefinite. *See* IPR Pet. at 18, IPR2015-01605, Paper No. 2 (July 20, 2015). TCL effectively argued that both terms have their plain and ordinary meaning. According to TCL's petition, "interception module" means "software invoked to receive a request to access the software services component from requesting application domain software and pass the request to the decision entity." *See id.* at 18 (citation omitted). Similarly, TCL contended that "decision entity" means "software responsible for deciding whether a request from application domain software to access a software services component should be permitted." *See id.* at 19 (citation omitted).

### B. *Williamson* and Developments at the PTAB

TCL's only explanation for failing to raise its claim construction arguments earlier is the Federal Circuit's *Williamson* decision. On June 16, 2015, the Federal Circuit eliminated the "strong" presumption that a limitation lacking the word "means" is not subject to § 112, ¶ 6 in

*Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015) (en banc in relevant part). Notably, however, the Federal Circuit decided *Williamson* more than two months before TCL filed its opening claim construction brief. Thus, there is not a change in law to excuse TCL's waiver.

TCL argues that the "scope and effect of the *Williamson* case" because "clearer with subsequent case law," Dkt. No. 292 at 1, but TCL does not identify any case law that makes *Williamson* clearer. In fact, one of the most notable decisions applying *Williamson* in concluding that a claim term lacking the word "means" is nevertheless subject to § 112, ¶ 6 was decided on September 24, 2015, five days before the claim construction hearing was held in this case. *See Media Rights Techs., Inc. v. Capital One Fin. Corp.*, 800 F.3d 1366, 1372 (Fed. Cir. 2015) ("compliance mechanism" subject to § 112, ¶ 6), *cert. denied sub nom. Media Rights Techs., Inc. v. Capitol One Fin. Corp.*, 136 S. Ct. 1173 (2016). Subsequent cases have provided no more guidance than that offered by *Media Rights*. *See, e.g.*, *Advanced Ground Info. Sys., Inc. v. Life360, Inc.*, 830 F.3d 1341, 1346 (Fed. Cir. 2016) ("symbol generator" subject to § 112, ¶ 6).

The fact that the PTAB identified the potential § 112, ¶ 6 issue does change the analysis. On March 7, 2016, after IPR had been instituted, the PTAB asked the parties to address whether "interception module" and "decision entity," among other terms, should be construed as means-plus-function terms in light of *Williamson*. *See* Order at 2, IPR2015-01605, Paper No. 14 (Mar. 7, 2016). Only then did TCL inform the Court about the need for additional claim construction. *See* Dkt. No. 263. TCL proceeded to file a brief with the PTAB arguing that "interception module" and "decision entity" are subject to § 112, ¶ 6, but notably, TCL's proposed constructions at the PTAB differ from those it is now seeking. *See* Claim Construction Br. at 8-12, IPR-2015-01605, Paper No. 19 (Mar. 28, 2016). Ultimately, the PTAB never adopted a construction because its final decision was based on TCL's failure to show that a person of ordinary skill in the art would have

been motivated to combine two prior art references. *See, e.g.*, Final Written Decision at 15, IPR2015-01605, Paper No. 44 (Jan. 25, 2017), Dkt. No. 276-4. In reaching that decision, the PTAB determined that "no claim terms require express construction." *Id.*

More important, TCL's claim construction brief at the PTAB did not cite any case to support the means-plus-function constructions of "interception module" and "decision entity" other than *Williamson* itself. *See id.* TCL relied only on *Williamson*'s clarification that replacing the word "means" with the "'nonce word 'module'" does not save a claim from construction under § 112, ¶ 6. *See* Claim Construction Br. at 9, IPR-2015-01605, Paper No. 19 (citing 792 F.3d at 1350). These arguments were available to TCL during the claim construction phase of the case, and subsequent case law did not make the arguments any clearer, as TCL's claim construction brief submitted to the PTAB illustrates.

Contrary to TCL's argument, the Federal Circuit's decision in *O2 Micro International Ltd. v. Beyond Innovation Technology Co., Ltd.* does not require a district court to resolve a claim construction dispute based on arguments that have been waived. *See* 521 F. 3d 1351, 1360 (Fed. Cir. 2008). *O2 Micro* held that "[w]hen the parties raise an actual dispute regarding the proper scope of [claim terms], the court, not the jury, must resolve that dispute." *Id.* at 1362-63. Subsequent cases have confirmed that it is legal error for a district court to allow the jury to decide questions of claim scope. *See Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*, 815 F.3d 1314, 1318 (Fed. Cir. 2016). Even after *02 Micro*, however, the Federal Circuit has affirmed a district court's decision not to revisit claim construction absent good cause. *See Nuance Commc'ns, Inc. v. ABBYY USA Software House, Inc.*, 813 F.3d 1368, 1373 (Fed. Cir. 2016); *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 805 F.3d 1368, 1376 (Fed. Cir. 2015).

TCL incorrectly assumes that the dispute will necessarily go to the jury if it is not resolved by the Court. Because TCL waived its arguments that "interception module" and "decision entity" are means-plus-function terms, *there is no dispute* for either the Court or the jury to resolve. Claim terms that are not construed have their ordinary meaning. *See Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 696 (Fed. Cir. 2008) ("The term 'selectively couples' was not construed by the district court because the parties agreed to let the ordinary meaning control."). The ordinary meanings of "interception module" and "decision entity" therefore control, and TCL may not make any argument to the jury suggesting any other meaning. As a result, an *O2 Micro* error will not occur. In sum, because TCL's proposed constructions of "interception module" and "decision entity" could have been made during claim construction but were not, the arguments are waived. For that reason, TCL's request for additional claim construction is denied.

## CONCLUSION

For the foregoing reasons, it is ORDERED:

(1)     TCL's motion for summary judgment of no willfulness, Dkt. No 217 (*see also* Dkt. No. 300), is denied.

(2)     Ericsson's motion to strike TCL's undisclosed noninfringing alternatives, Dkt. No. 220, is granted-in-part. Paragraph 147 of Dr. Malek's report, Dkt. No. 220-20, and paragraph 77 of Mr. Dhar's report, Dkt. No. 220-21, are stricken. The motion is otherwise denied.

(3)     Ericsson's motion to strike Mr. Martinez's report, Dkt. No. 222, is denied.

(4)     TCL's request for additional claim construction, Dkt. No. 292, is denied.

(5)     TCL's motion for summary judgment that the asserted claims of the '510 patent are invalid under § 101, Dkt. No. 299, is denied.

(6)    TCL's motion to strike Ericsson's sur reply in opposition to TCL's § 101 motion, Dkt. No. 310, is denied as moot.

(7)    TCL's motion to bifurcate willful infringement issues from infringement and damages, Dkt. No. 321, is denied.

(8)    TCL's motion to strike Dr. Jones' report, Dkt. No. 323, is denied.

(9)    TCL's motion to exclude Dr. Wecker's and Mr. Mills' testimony, Dkt. No. 324, is denied.

(10)    Ericsson's motion to strike Dr. Ligatti's report, Dkt. No. 325, is granted. Dr. Ligatti is not permitted to testify at trial.

(11)    Ericsson's motion to strike Mr. Martinez's report, Dkt. No. 326, is denied.

(12)    Ericsson's updated motion to strike TCL's undisclosed noninfringing alternatives, Dkt. No. 327, is granted-in-part and denied-in-part. The portion of paragraph 134 of Mr. Martinez's January 2016 report, Dkt. No. 327-13, that discusses modifications to the Android operating system is stricken. Similarly, paragraph 129 of Mr. Martinez's September 2017 report, Dkt. No. 327-19, is stricken. The motion is otherwise denied.

**SIGNED this 4th day of November, 2017.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE