**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| ERICSSON INC. and TELEFONAKTIEBOLAGET LM ERICSSON,<br><br>    Plaintiffs<br><br>  v.<br><br>TCL COMMUNICATION TECHNOLOGY HOLDINGS, LTD., TCT MOBILE LIMITED, and TCT MOBILE (US), INC.,<br><br>    Defendants. | § § § § § § § § § § § | NO. 2:15-cv-00011-RSP<br><br>JURY TRIAL |

**DEFENDANTS' OPPOSITION TO ERICSSON'S MOTION FOR
ENHANCED DAMAGES, ATTORNEYS' FEES, PREJUDGMENT INTEREST,
POSTJUDGMENT INTEREST AND COSTS**

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................................ 1

II.    ARGUMENT ...................................................................................................................... 1

    A.   Enhancement of Damages Is Not Appropriate in This Case ............................................ 1

        1.   TCL Did Not Copy Any Ideas or Design of Ericsson ................................................ 2
        2.   TCL's Good-Faith Belief of Non-Infringement and Invalidity .................................. 3
        3.   TCL Did Not Engage in Litigation Misconduct ......................................................... 4
        4.   TCL's Size and Finances Do Not Warrant Enhancement .......................................... 5
        5.   The Case Was Close ................................................................................................... 5
        6.   The Duration of Infringement Is Short ....................................................................... 9
        7.   Remedial Action Was Unnecessary ......................................................................... 10
        8.   There is No Evidence TCL Sought to Harm Ericsson .............................................. 10
        9.   TCL Did Not Conceal Infringement ......................................................................... 11

    B.   There Is No Basis to Award Attorneys' Fees ................................................................ 11

        1.   TCL's Assertion of Patents Was Proper ................................................................... 12
        2.   TCL's Conduct in Discovery Was Proper ................................................................ 12
        3.   TCL's Claim Construction Positions Were Proper .................................................. 14

    C.   The Court Should Deny Ericsson's Request for Prejudgment Interest ........................... 15

III.   CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294 (Fed. Cir. 2001) .............. 8

*Bose Corp. v. SDI Techs., Inc.*, 558 F. App'x 1012 (Fed. Cir. 2014) ............................................ 4

*Calypso Wireless, Inc. v. T-Mobile U.S.A., Inc.*, No. 2:08-CV-441-JRG-RSP, 2015 WL 1022745 (E.D. Tex. Mar. 5, 2015) ................................................................................ 11

*Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508 (Fed. Cir. 1990) ..................... 10

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016) .................................................. 1, 2

*Harris Corp. v. Fed. Express Corp.*, No. 6:07-cv-1819-Orl-28KRS, 2011 WL 13141674 (M.D. Fla. Feb. 28, 2011) ........................................................................................ 10

*Idenix Pharms. L.L.C. v. Gilead Scis., Inc.*, No. 14-CV-846-LPS, 2017 WL 4216993 (D. Del. Sept. 22, 2017) ............................................................................................... 2, 5

*Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, 203 F. Supp. 3d 755 (E.D. Tex. 2016) ...................................................................................................... 2

*Mondis Tech., Ltd. v. LG Elecs., Inc.*, No. 2:07-CV-565-TJW-CE, 2011 WL 13098805 (E.D. Tex. Aug. 29, 2011) .................................................................................... 2

*NexusCard, Inc. v. Brookshire Grocery Co.*, Case No. 2:15-cv-961-JRG, 2016 WL 6893704 (E.D. Tex. Nov. 23, 2016) ................................................................................. 11, 15

*Octane Fitness, L.L.C. v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014) ........................ 11

*Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992) ........................................................... 2

*Saint Lawrence Commc'ns L.L.C. v. Motorola Mobility L.L.C.*, No. 2:15-CV-351-JRG, 2017 WL 6268735 (E.D. Tex. Dec. 8, 2017) ....................................................... 4

*Stryker Corp. v. Zimmer, Inc.*, 837 F.3d 1268 (Fed. Cir. 2016) .................................................. 11

*WBIP, L.L.C. v. Kohler Co.*, 829 F.3d 1317 (Fed. Cir. 2016) ................................................... 2, 9

**Statutes**

35 U.S.C. § 285 (2012) ................................................................................................................ 11

35 U.S.C. § 298 (2012) .................................................................................................................. 4

Defendants TCL Communication Technology Holdings, Ltd., TCT Mobile Limited, and TCT Mobile (US), Inc. (collectively, "TCL") hereby oppose the Motion for Enhanced Damages, Attorneys' Fees, Prejudgment Interest, Postjudgment Interest and Costs (Dkt. No. 413) filed by Plaintiffs Ericsson Inc. and Telefonaktiebolaget LM Ericsson (collectively, "Ericsson").

## I. INTRODUCTION

Ericsson's request for enhanced damages is premised on the jury's finding that TCL willfully infringed U.S. Patent No. 7,149,510 ("the '510 patent"). As explained in TCL's Rule 50(b) Motion, there is no evidentiary basis for this finding; thus, Ericsson's request must fail. Moreover, even if the jury's willfulness finding is upheld, Ericsson's arguments for enhancement fall short. TCL had a good-faith belief of non-infringement that it presented at trial, had a good-faith belief of invalidity under § 103 that it presented to the U.S. Patent and Trademark Office ("PTO"), and presented to the Court a strong argument of invalidity under § 101. Ericsson fails to identify any alleged litigation misconduct that would rise to the level of "exceptional" within the meaning of § 285, or is relevant to the inquiry on whether to enhance damages. As the Court noted, this has been a well-tried case that both sides litigated with professionalism. 12/7 Trial Tr. at 76:9-12. Finally, the Court should deny Ericsson's request for prejudgment interest.

## II. ARGUMENT

### A. Enhancement of Damages Is Not Appropriate in This Case

Enhanced damages are "not to be meted out in a typical infringement case." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016). Instead, the Supreme Court has explained willfulness and enhanced damages should be reserved for egregious infringement that can be described as "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id.*

Further, a court is not required to increase damages where the jury finds willfulness.

*WBIP, L.L.C. v. Kohler Co.*, 829 F.3d 1317, 1342 (Fed. Cir. 2016). Nor does a jury's willfulness finding create a presumption of enhancement. *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992). Rather, "the jury's finding merely 'opens the door' to the Court making a discretionary decision as to whether damages should be enhanced." *Idenix Pharms. L.L.C. v. Gilead Scis., Inc.*, No. 14-CV-846-LPS, 2017 WL 4216993, at *3 (D. Del. Sept. 22, 2017) (citations omitted). Indeed, "[a]s with any exercise of discretion, courts should continue to take into account the particular circumstances of each case in deciding whether to award damages, and in what amount." *Halo*, 136 S. Ct. at 1933. Although the *Read* factors may provide guidance, "an analysis focused on 'egregious infringement behavior' is the touchstone for determining an award of enhanced damages rather than a more rigid, mechanical assessment." *Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, 203 F. Supp. 3d 755, 763 (E.D. Tex. 2016).

As explained in TCL's Rule 50(b) Motion, no reasonable jury could have found willfulness in this case. Without a finding of willfulness, there is no basis to enhance damages. *Mondis Tech., Ltd. v. LG Elecs., Inc.*, No. 2:07-CV-565-TJW-CE, 2011 WL 13098805, at *1 (E.D. Tex. Aug. 29, 2011) (denying a motion to enhance damages because the Court granted defendant's motion for JMOL of no willful infringement); *see also Halo*, 136 S. Ct. at 1934 ("Consistent with nearly two centuries of enhanced damages under patent law, however, such punishment should generally be reserved for egregious cases typified by willful misconduct."). Further, even if the jury's willfulness finding is upheld, the *Read* factors do not favor enhancement. Unlike Ericsson, which addressed only the *Read* factors it thought favored it, TCL will address each *Read* factor in turn.

### 1. TCL Did Not Copy Any Ideas or Design of Ericsson

The first *Read* factor weighs against enhancement because TCL did not copy the '510

patent. In fact, Ericsson's corporate representative, Kjell Gustafsson, testified that Ericsson is not claiming that TCL stole something from Ericsson or that TCL copied any Ericsson product. *See* 12/4 PM Trial Tr. at 85:4-13.

## 2. TCL's Good-Faith Belief of Non-Infringement and Invalidity

The second *Read* factor also weighs against enhancement. The parties agreed that TCL received actual notice of Ericsson's infringement allegations for the '510 patent on October 21, 2014, in a lawsuit filed with this Court. JX001.0005. Thus, the sole basis for willfulness is post-litigation knowledge. From the beginning, TCL put forth a meritorious defense to Ericsson's claims. Starting with its Answer, TCL raised, and maintained through the litigation, a number of defenses. Dkt. No. 19 at 5-9. For example, TCL put forth detailed invalidity contentions, filed multiple petitions for *inter partes* review of the '510 patent, all instituted, and filed a motion for summary judgment of invalidity under § 101. Dkt. Nos. 203-5-7; Dkt. No. 299.

Ericsson makes much of the fact that five TCL witnesses testified that they did not read the '510 patent. Mot. at 3-4. This is irrelevant. There is no requirement or duty on the part of TCL employees to read or study the '510 patent, nor did Ericsson lay any foundation that the TCL witnesses would understand the patent if they had read it. Rather than have technically-unqualified employees read the patent, TCL relied on its outside counsel and experts to evaluate the patent. 12/5 AM Trial Tr. at 45:13-20. Thus, the mere fact that some TCL employees, who Ericsson failed to establish had even the potential for understanding the patent and its alleged relevance to the accused products, did not read the '510 patent does not show that TCL failed to investigate Ericsson's infringement allegations or that TCL did not have a good faith belief in its defenses. Similarly, the fact that TCL objected to Ericsson calling TCL's "trial representative" is irrelevant. The reason for the objection, which was sustained, is that TCL's trial representative was simply not a witness in the case. *See, e.g.,* 11/28/17 Hearing Tr. at 17:7-13, 18:18-24. TCL

was under no obligation to call a witness at trial regarding willfulness because it is Ericsson's burden to prove willfulness.

Ericsson misses the mark when it argues that TCL is foreclosed from relying on its attorneys' opinions because TCL never disclosed those opinions. Mot. at 4. The entire period of alleged willfulness is coextensive with this litigation; thus, TCL's good faith belief is evidenced by the defenses TCL's attorneys put forth in this litigation and before the PTAB. More importantly, the absence of an opinion of counsel "may not be used to prove that the accused infringer willfully infringed the patent." 35 U.S.C. § 298 (2012). Ericsson cites *Bose Corp. v. SDI Techs., Inc.*, 558 F. App'x 1012 (Fed. Cir. 2014) (unpublished), but that case is inapposite. *Bose* stands for the unremarkable proposition that if a party attempts to use an opinion of counsel to show lack of intent to infringe, it must show that it relied on that opinion. *Bose*, 558 F. App'x at 1024. Here, TCL is not relying on such an opinion.

Finally, Ericsson fails to address TCL's other defenses, such as its §§ 101 and 103 invalidity defenses and those based on TCL's claim construction arguments.

### 3. TCL Did Not Engage in Litigation Misconduct

Ericsson ascribes ill-intent to certain of TCL's conduct in this case without a basis for doing so. In this case, TCL's conduct was entirely appropriate and there was no bad faith on behalf of TCL. Furthermore, any alleged instances of litigation misconduct are more appropriately dealt with in connection with a determination of whether the case is exceptional under § 285, as Ericsson implicitly recognizes when it incorporates its arguments from its request for attorneys' fees. *Saint Lawrence Commc'ns L.L.C. v. Motorola Mobility L.L.C.*, No. 2:15-CV-351-JRG, 2017 WL 6268735, at *2 (E.D. Tex. Dec. 8, 2017) (noting that any alleged litigation misconduct is more appropriately considered with respect to an exceptional case determination under § 285).

### 4. TCL's Size and Finances Do Not Warrant Enhancement

Ericsson's argument that TCL's size and "massive revenues" favor enhancement (Mot. at 5) is inconsistent with arguments it previously presented to the Court in its Opposition to TCL's Motion to Confirm that Judgment Is Neither Final Nor Subject to Execution Or, Alternatively, to Stay Execution of the Judgment (Dkt. No. 418). There, Ericsson argued that TCL is "not in a position to pay the amount of judgment," and Ericsson has "serious concerns about its ability to collect upon the judgment." Dkt. No. 418 at 5. If these contentions from Ericsson are true, this factor would weigh against enhancement. *See Idenix Pharms. L.L.C. v. Gilead Scis., Inc.*, No. CV 14-846-LPS, 2017 WL 4216993, at *5 (D. Del. Sept. 22, 2017) ("This factor is often given weight *against* enhancement in situations where, for instance, the other *Read* factors strongly support enhancement but the infringer is in such perilous financial condition that an award of enhanced damages might put it out of business.") (emphasis in original).

### 5. The Case Was Close

This was a close case. On the issues of invalidity and infringement, TCL marshalled significant evidence in its favor. Indeed, although this case was scheduled to go to trial in 2016 with four patents on the slate, only one patent was ultimately tried. As for the other patents, the PTO agreed with TCL's invalidity positions and found that the claims of those patents were unpatentable. Dkt. No. 274; *see Idenix*, 2017 WL 4216993, at *2 (noting "it is entirely appropriate, even required, for the Court to consider . . . the entire course of [the] case, as well as what it observed at trial" in determining whether to exercise its discretion to award enhanced damages). Ericsson makes no mention of those patents in this case, instead taking aim only at TCL's invalidity positions on the '510 patent. In particular, Ericsson alleges that TCL's position was "based on prior art references that clearly taught away from one another." Mtn. at 6. Presumably, Ericsson means to argue that the references "clearly taught away from" TCL's

proposed combinations, and Ericsson is wrong. Indeed, the PTO instituted *Inter Partes* Review on multiple grounds for all claims of the '510 patent asserted by Ericsson, even in view of Ericsson's preliminary response to TCL's petitions. Dkt. Nos. 203-5-7 ("[TCL] ha[s] demonstrated a reasonable likelihood of prevailing in showing that the challenged claims are unpatentable under 35 U.S.C. § 103(a)."). Notwithstanding the PTO's ultimate finding that TCL's proposed combinations would not have been obvious (a finding that TCL is currently appealing), the record at the PTO supports the reasonableness of TCL's invalidity positions.

Ericsson's arguments against TCL's non-infringement positions are similarly unavailing. As Ericsson recognizes, one of the key disputes at trial related to the "interception module" of claim 1 of the '510 patent. Ericsson incorrectly argues that TCL's technical expert, Dr. Sam Malek, took inconsistent positions on the meaning of this term. Throughout this litigation, Dr. Malek consistently opined that Ericsson's infringement theory is premised on ignoring the proper meaning of the term "module" and that, if the proper meaning is applied in the context of the claim element "interception module" there is no infringement. Indeed, when Dr. Malek prepared his original expert report on noninfringement on January 9, 2016, he devoted an entire section to Ericsson's (mis)use of the terms "module" and "component." Dkt. No. 364-5 at 34-38. In that report, Dr. Malek provided two, similar definitions for the term "module"—one from the Dictionary of IBM & Computing Terminology and one from online technical dictionary Webopedia.com. Dr. Malek cited these sources in his Supplemental Expert Report on Noninfringement dated September 26, 2017. Dkt. No. 364-3 at 27, 44.

Dr. Malek's explanation of the term "module" during trial was entirely consistent with his opinions expressed in his report. Indeed, the explanation of "module" that he provided aligns especially well with the Dictionary of IBM & Computing Terminology. *Compare* Dkt. No. 364-

5 at 23 (citing IBM Dictionary defining "module" as a "program unit that is discrete and identifiable with respect to compiling, combining with other units, and loading"), *with* 12/6 AM Trial Tr. at 31:2-5 ("A module essentially -- essentially is a unit of program that is distinct and identifiable with respect to loading and, you know, compilation and -- and in its combination with other units of programming.").

      Ericsson conjures allegedly "self-contradictory testimony" first by comparing Dr. Malek's testimony for two different terms—"module" and "interception module"—and taking the latter testimony wildly out of context to boot. First, notwithstanding Ericsson's allegation that its quotation of Dr. Malek's testimony on page 6 of its brief related to the term "interception module," it instead was provided in response to the question "What is a module?" 12/6 AM Trial Tr. at 30:23-31:5. Ericsson then places that explanation of "module" against one of Dr. Malek's numerous attempts to convey the meaning of an "interception module" to Ericsson's attorney during his deposition. However, it is abundantly clear from the context of that testimony that Dr. Malek was describing the "interception" function performed by the claimed "interception module." In particular, when asked to explain the plain and ordinary meaning of "interception module," Dr. Malek stated "So it's basically something that, you know, performs the function of receiving the request from the requesting application domain software to access the software services component." Ex. A (10/6/2017 Malek Depo. Tr.) at 37:2-9. Ericsson's attorney asked Dr. Malek how he arrived at that interpretation, and Dr. Malek responded that he simply borrowed from the language of the claim itself. *Id.* at 37:10-15. The next two questions and answers eviscerate Ericsson's claim of "self-contradictory testimony." Specifically, Ericsson's attorney next asked Dr. Malek, "So how do you identify whether an accused product is using an interception module?", and Dr. Malek responded: "I would look for a module that

implements that function." Ex. A at 37:16-19. Of course, "that function" is the "interception" function that Dr. Malek had just explained (in the answer quoted by Ericsson on page 6 of its brief). Thus, it is clear that Dr. Malek's prior answers were not an attempt to give a definition of the term "module." Indeed, Ericsson's attorney recognized this—his next question was: "And what is a module?" Ex. A at 37:20. Ericsson's allegations of "self-contradictory testimony" are disingenuous and do not withstand examination.

Ericsson makes a similar, but even more egregious error when it references Dr. Malek's claim construction declaration. Dr. Malek's declaration does not set out to define "module" but rather the entire phrase "an interception module for receiving a request from the requesting application domain software to access the software services component." Dkt. No. 91-10 at 10. Moreover, Ericsson disputed TCL's and Dr. Malek's original proposal for that phrase, Dkt. No. 102-1 at 5, and the parties ultimately settled on "plain and ordinary meaning." Dkt. No. 109-1 at 4. Ericsson appears to suggest that TCL should be faulted for not advancing at trial the claim construction position that TCL originally proposed, but then withdrew in an effort to compromise. Undoubtedly, Ericsson would have cried "bait-and-switch" had TCL done that.

Ericsson incorrectly alleges that the jury found this case to not be close. Mtn. at 6. As an initial matter, the jury is not in the best position to assess that question. *See, e.g., Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1311 (Fed. Cir. 2001) (noting that "closeness of the case" is factor "that a jury is not in the best position to assess"). Moreover, the jury made no such finding, and indeed the evidence reveals that the jury found liability to be a close call. Jury notes ████████████████

█ ██████████████
█ ████████████████████████
█ ██████████████████████████████████

███████████████████████

█ ███████████████████████

Dkt. No. 407 at 1, 4, 5. These notes reveal that the jury wrestled with the issue of liability. Moreover, if liability was a foregone conclusion, Ericsson should have moved for summary judgment of infringement. That it did not belies its argument that this was not a close case.

Finally, this was also a close case on the issue of willfulness. Indeed, the Court noted that TCL's motion for summary judgment of no willfulness was "a close call." Dkt. No. 359 at 9. The trial did not change this. Indeed, the evidence that Ericsson adduced at the trial regarding willfulness falls far short of the standard set forth by *Halo* for the reasons set forth in TCL's Rule 50(b) Motion. In any event, willfulness was, at the very least, a close case.

### 6. The Duration of Infringement Is Short

The sixth *Read* factor is the duration of the misconduct, *i.e.*, the *knowing* infringement of the patent. *WBIP, L.L.C. v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016) (after *Halo*, "[k]nowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages") (citation omitted). It is undisputed that TCL did not know of the '510 patent until Ericsson filed this lawsuit. JX001.0005. Thus, that infringement began in 2010 is irrelevant. This factor weighs against enhancement.

In addition, Ericsson makes much of TCL's "step-up" strategy, but that fact weighs against enhancement. TCL's step-up strategy was in place, and TCL executed on that strategy, long before it knew of the '510 patent. 12/5 PM Trial Tr. at 50:12-19. This explains the acceleration of sales: to increase market share, not, as Ericsson alleges, to accelerate infringement. There was no reason for TCL to change or abandon its "step-up" strategy, especially in light of its good-faith belief of non-infringement and invalidity.

### 7. Remedial Action Was Unnecessary

TCL first learned of the '510 patent in connection with this litigation. JX001.0005. From the very beginning of this litigation, TCL put forth a number of defenses to infringement, including non-infringement and invalidity, which it maintained throughout the case. *See, e.g.,* TCL's Answer and Affirmative Defenses to Ericsson's Complaint (Dkt. No. 19) at 5-9; 12/6 PM Trial Tr. at 63:15-64:2 (Mark Jones, Ericsson's own expert, admitting that "TCL has always disputed that they infringed the '510 patent since the very beginning of this case" and TCL "provided an expert that says they don't infringe."). Accordingly, there was no need for TCL to take any remedial action. *See Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 511 (Fed. Cir. 1990) ("One [need not] cease manufacture of a product immediately upon learning of a patent, or upon receipt of a patentee's charge of infringement, or upon the filing of suit" to avoid willfulness). This factor weighs against enhancement, or at worst, is neutral.

### 8. There is No Evidence TCL Sought to Harm Ericsson

TCL and Ericsson are not competitors, and there was no motivation to harm Ericsson. 12/5 PM Trial Tr. at 82:3-15; *see Harris Corp. v. Fed. Express Corp.*, No. 6:07-cv-1819-Orl-28KRS, 2011 WL 13141674, at *7 (M.D. Fla. Feb. 28, 2011) ("[The defendant] and [plaintiff] are not direct competitors . . . . Accordingly, the eighth *Read* factor weighs against enhancing damages."). Ericsson attempts to inject a bad faith motive into TCL's conduct without any basis. Specifically, Ericsson argues that TCL's "step-up" strategy is premised upon avoiding paying royalties on the '510 patent, which enables TCL to undercut its competitors who "voluntarily pay"[1] Ericsson for a license. Mot. at 8. Ericsson's entire "evidence" of the alleged motivation for harm is the answer to two questions, which simply state that TCL's goal, like all companies,

---

[1] [redacted]

is to be able to compete so that it can become No. 1 in its market. *See* Mot. at 8 (citing 12/5 AM Trial Tr. at 46:19-47:8). There is simply no evidence that TCL sought to harm Ericsson.

### 9. TCL Did Not Conceal Infringement

It is undisputed that TCL has not concealed any infringement. *See* Mot. at 2-9 (no analysis of the ninth *Read* factor). Accordingly, this factor weighs against enhancement.

### B. There Is No Basis to Award Attorneys' Fees

"A court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285 (2012). An exceptional case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, L.L.C. v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.*

A willfulness finding does not necessarily make a case exceptional. *See Stryker Corp. v. Zimmer, Inc.*, 837 F.3d 1268, 1279 (Fed. Cir. 2016) (holding that "it does not necessarily follow that the case is exceptional" from a willfulness determination). "Even if a party's position is ultimately meritless, the question is whether it was 'so meritless as to stand out from the norm and, thus, be exceptional.'" *NexusCard, Inc. v. Brookshire Grocery Co.*, Case No. 2:15-cv-961-JRG, 2016 WL 6893704, at *3 (E.D. Tex. Nov. 23, 2016) (quoting *SFA Sys., L.L.C. v. Newegg, Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015)). "If the case is shown to be exceptional, the movant must then show that an award of attorney fees is justified." *Calypso Wireless, Inc. v. T-Mobile U.S.A., Inc.*, No. 2:08-CV-441-JRG-RSP, 2015 WL 1022745, at *1 (E.D. Tex. Mar. 5, 2015).

Here, Ericsson has not shown that this case stands apart from a typical patent infringement case, nor has it made any showing as to why it should be awarded attorneys' fees

even if the case were exceptional. Ericsson identifies three general instances of alleged misconduct that it argues makes the case exceptional. None of these instances evidence litigation misconduct on the part of TCL nor do they collectively make the case exceptional.

### 1. TCL's Assertion of Patents Was Proper

The first act of alleged misconduct was TCL's assertion of "meritless patents for the purpose of harassing Ericsson and throwing off the case schedule." Mot. at 10. Ericsson is referring to two patents that TCL asserted Ericsson infringed, which TCL brought as counterclaims in this case. Ericsson is loose with its baseless allegations as to the purported reasons for TCL's assertion of these patents. TCL brought the claims of infringement in good faith, but ultimately dropped the patents on the last day it could amend its pleadings without leave in order to streamline the case. Ericsson never alleged a Rule 11 violation for TCL bringing its claims, nor could it have. Ericsson ultimately received a covenant not to sue with respect to the two TCL asserted patents, so it is hard for Ericsson to assert it ended up at a loss for having to defend itself against the patents. *See* Dkt. No. 185. TCL should not be punished for bringing claims in good faith nor should it be punished for dropping claims in order to streamline the case. Moreover, it is odd for Ericsson to argue what TCL did amounted to misconduct, when Ericsson similarly asserted a patent in this case, the '815 patent, which it later dropped without explanation and prior to any substantive ruling on the merits around the same time TCL dropped its two asserted patents. *See* Dkt. No. 185.

### 2. TCL's Conduct in Discovery Was Proper

The second set of acts of alleged misconduct relates to what Ericsson describes as TCL's "fail[ure] to conduct itself in a reasonable manner throughout discovery." Mot. at 10. As the first example, Ericsson cites to TCL's alleged refusal to timely produce source code and imposing unreasonable source code review provisions. Ericsson notes that it moved to compel

production, and the motion was granted. However, Ericsson was compensated for bringing the motion pursuant to FED. R. CIV. P. 37(a)(5)(A). Ericsson also argues that onerous source code review provisions were put in place "despite the fact that the source code was later admitted by TCL to be stock Android code that is publicly available." This statement is incorrect for a number of reasons. First, Ericsson sought a "complete set of source code" for the accused products (Dkt. No. 61 at 1), while TCL only acknowledged that the specific and very small subset of code that Ericsson ultimately identified as infringing the '510 patent was unmodified public code. Moreover, at the time of production, TCL did not know that to be the case because it did not know what specific portions of code were accused until after the code was produced, and even then, only made that determination in response to a request by Ericsson. Second, as noted at trial, the actual printed code documents upon which Ericsson relied contains TCL proprietary information (12/5 AM Trial Tr. at 34:2-12), so it is disingenuous for Ericsson to say there is no need for special protection. Third, TCL originally produced the public version of the source code, and Ericsson argued in its motion to compel that the publically-available code was insufficient (Dkt. No. 61 at 1), so it cannot now fault TCL for producing its highly confidential source code. Fourth, Ericsson sought software with respect to at least the '310 patent and the '815 patent in addition to the '510 patent (Dkt. No. 93 at 6). Even if the code related to the '510 patent did not merit additional protections, which it did, the same cannot be said about the code related to the other two patents. In short, the source code provisions in the protective order were agreed and there is no basis to infer that TCL sought additional protections of its highly confidential source code to burden Ericsson.

In addition, Ericsson points to cancellation of depositions as litigation misconduct. Although it may have been inconvenient for the witnesses and counsel, it is not uncommon for

depositions to be cancelled and discovery to be reevaluated. TCL never rescheduled the depositions, so Ericsson ultimately saved time and money compared to the depositions going forward. More importantly though, Ericsson has no basis to believe that there was any ill intent on the part of TCL in cancelling the depositions or that TCL did not fully expect to take the depositions at the time it scheduled them.

As a third example of alleged discovery misconduct, Ericsson cites its motion to compel the BlackBerry agreement. Ericsson argues that TCL misrepresented the scope of the agreement, but does not cite to any statements by TCL that it claims are misrepresentations. Presumably, Ericsson is referring to TCL's argument that the BlackBerry agreement does not contain any explicit grant clause relating to patents and is not relevant to the case because Ericsson's damages expert agreed it did not provide guidance as to the value of the '510 patent. These statements, however, were backed up with citations to the agreement itself and the expert report of Mr. Mills. *See, e.g.,* Dkt. No. 317 at 3-4. The fact that Ericsson was successful on its motion to compel does not mean that TCL committed litigation misconduct. Losing two motions to compel in a dispute that spans over two years is not exceptional for a patent litigation, especially one involving a large number of products and patents as is the case here. Also, as before, Ericsson was already compensated under FED. R. CIV. P. 37(a)(5)(A) for bringing the motion.

### 3. TCL's Claim Construction Positions Were Proper

Finally, Ericsson argues that TCL untimely disclosed claim construction arguments and expert opinions, which necessitated Ericsson filing motions to strike. Mot. at 10. Ericsson again manufactures reasons for TCL's conduct for which there is no basis and that are belied by the record. For example, Ericsson argues that "TCL made a tactical decision to argue that the term 'interception module' was not governed by §112(6). Then, after losing its validity challenge before the PTAB, TCL changed course and tried to obtain a 112(6) construction." Mot. at 14.

There is no basis for this assertion. At the beginning of the PTAB proceeding and after the PTAB raised the question of whether "interception module," among other terms, was means-plus-function, TCL took the position that the term was subject to §112(6). The fact that TCL was ultimately unsuccessful in its motion to seek additional claim construction does not make the filing of the motion litigation misconduct. *See NexusCard, Inc. v. Brookshire Grocery Co.*, Case No. 2:15-cv-961-JRG, 2016 WL 6893704, at *3 (E.D. Tex. Nov. 23, 2016). Ericsson also makes passing references to moving to strike untimely expert opinions. Mot. at 10, 14. Presumably, Ericsson is referring to its motion to strike the expert report of Dr. Ligatti. Again, that there was a dispute over the scope of discovery and Ericsson was ultimately successful in its motion is far from litigation misconduct or the makings of an exceptional case. Finally, Ericsson's argument that TCL's non-infringement defense was based on self-contradictory expert testimony is simply not true. *See* Sec. II.A.5 *supra*.

### C. The Court Should Deny Ericsson's Request for Prejudgment Interest

For the reasons stated in Defendants' Opposition to Plaintiffs' Motion for Recovery of Prejudgment Interest (Dkt. No. 415), which is hereby incorporated by reference, the Court should deny Ericsson's request for prejudgment interest in whole. Alternatively, the Court should accept TCL's calculation of prejudgment interest. To the extent that the Court does not grant TCL's post-judgment motions under Rules 50 and 59 and TCL is unsuccessful in any appeal, TCL does not oppose post-judgment interest as calculated pursuant to 28 U.S.C. § 1961. TCL will separately address Ericsson's request for costs once Ericsson submits its bill of costs.

### III. CONCLUSION

For the foregoing reasons, TCL respectfully requests the Court deny Ericsson's Motion for Enhanced Damages, Attorneys' Fees, Prejudgment Interest, Postjudgment Interest and Costs.

| | |
|---|---|
| Dated: January 10, 2018 | */s/ Bradford A. Cangro* |
| | Winstol D. Carter, Jr. |
| | State Bar No. 03932950 |
| | wcarter@morganlewis.com |
| | Adam A. Allgood |
| | State Bar No. 24059403 |
| | aallgood@morganlewis.com |
| | **Morgan, Lewis & Bockius LLP** |
| | 1000 Louisiana Street, Suite 4000 |
| | Houston, Texas 77002 |
| | Telephone: 1.713.890.5000 |
| | Facsimile: 1.713.890.5001 |
| | |
| | Bradford A. Cangro (Admitted in TXED) |
| | D.C. Bar No. 495996 |
| | bradford.cangro@morganlewis.com |
| | Jeremy D. Peterson (Admitted *Pro Hac Vice*) |
| | jpeterson@morganlewis.com |
| | Jacob A. Snodgrass (Admitted *Pro Hac Vice*) |
| | jacob.snodgrass@morganlewis.com |
| | **Morgan, Lewis & Bockius LLP** |
| | 1111 Pennsylvania Avenue, NW |
| | Washington, D.C. 20004 |
| | Telephone: 1.202.739.3000 |
| | Facsimile: 1.202.739.3001 |
| | |
| | Michael J. Lyons (Admitted *Pro Hac Vice*) |
| | michael.lyons@morganlewis.com |
| | Michael F. Carr (Admitted *Pro Hac Vice*) |
| | michael.carr@morganlewis.com |
| | **Morgan, Lewis & Bockius LLP** |
| | 1400 Page Mill Road |
| | Palo Alto, CA 94304 |
| | Telephone: 1.650.843.4000 |
| | Facsimile: 1.650.843.4001 |
| | |
| | **ATTORNEYS FOR DEFENDANTS TCL COMMUNICATION TECHNOLOGY HOLDINGS LTD., TCT MOBILE LIMITED, and TCT MOBILE (US), INC.** |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via e-mail on January 10, 2018.

                                                */s/ Bradford A. Cangro*
                                                Bradford A. Cangro

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that authorization to file this document under seal was provided by the Protective Order, Dkt. No. 39, entered in this matter.

                                                */s/ Bradford A. Cangro*
                                                Bradford A. Cangro