**FILED UNDER SEAL**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **ERICSSON INC., AND TELEFONAKTIEBOLAGET LM ERICSSON,**<br><br>        **Plaintiffs,**<br><br>                **v.**<br><br>**TCL COMMUNICATION TECHNOLOGY HOLDINGS, LTD., TCT MOBILE LIMITED, AND TCT MOBILE (US), INC.,**<br><br>        **Defendants.** | **Civil Action No.  2:15-cv-00011-RSP**<br><br><br>**JURY TRIAL** |

**DEFENDANTS' MOTION FOR NEW TRIAL PURSUANT TO FED. R. CIV. P. 59(a)**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................... 1

II.     LEGAL STANDARD ......................................................................................... 2

III.    ARGUMENT ...................................................................................................... 3

        A.      Damages Evidence Wrongly Admitted at Trial Substantially Prejudiced
                TCL ......................................................................................................... 3

                1.      Ericsson Requested Damages For Unaccused Products. ........................ 3

                2.      Reference to Incorrect $245 Million Damages Was Highly
                        Prejudicial. ............................................................................. 4

                3.      Ericsson's Repeated Reference to TCL as Chinese and its
                        Provisioning of Royalties for Patent Rights Was Highly
                        Prejudicial. ............................................................................. 5

                4.      Irrelevant Agreement Price Tainted the Damages Verdict. ...................... 7

        B.      Mr. Mills' and Dr. Wecker's Testimony Should Have Been Excluded ............... 8

                2.      The Survey's Narrow Focus Made It Unreliable. ..................................... 9

                3.      Mr. Mills Failed To Apportion Damages. ................................................ 9

                4.      No Substantial Evidence Supports Mr. Mills' Proposed Rates. .............. 12

                5.      Mr. Mills Improperly Used 35 U.S.C. § 287(a) to Increase
                        Damages ................................................................................ 13

        C.      Damages Should Be Remitted ............................................................... 14

        D.      Infringement Verdict Is Against the Great Weight of the Evidence .................... 15

IV.     CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Biscotti Inc. v. Microsoft Corp.*,
  No. 2:13-CV-01015-JRG-RSP, 2017 WL 2536962 (E.D. Tex. May 18, 2017)....................13

*Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*,
  576 F.3d 1348 (Fed. Cir. 2009)...............................................................................................3

*Commil USA, LLC. v. Cisco Sys. Inc.*,
  No. 2:07-cv-00341-JRG, 2010 WL 11484496 (E.D. Tex. Dec. 29, 2010)...............................7

*Dixon v. Int'l Harvester Co.*,
  754 F.2d 573 (5th Cir. 1985) .................................................................................................15

*Finjan, Inc. v. Sophos, Inc.*,
  No. 14-cv-01197-WHO, 2016 WL 4268659 (N.D. Cal. Aug. 15, 2016) .................................3

*Fractus, S.A. v. Samsung*,
  No. 6:09–cv–203–LED–JDL, 2011 WL 7563820 (E.D. Tex. Apr. 29, 2011) ........................9

*Garretson v. Clark*,
  111 U.S. 120 (1884).........................................................................................................10, 11

*Hall v. Freese*,
  735 F.2d 956 (5th Cir. 1984) ..................................................................................................7

*LaserDynamics v. Quanta Comp. Corp.*,
  694 F.3d 51 (Fed. Cir. 2012)........................................................................................ passim

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009).........................................................................................4, 12

*Lyle v. Bentley*,
  406 F.2d 325 (5th Cir. 1969) ...................................................................................................4

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
  711 F.3d 1348 (Fed. Cir. 2013)..............................................................................................15

*Salinas v. O'Neill*,
  286 F.3d 827 (5th Cir. 2002) .................................................................................................15

*Shockley v. Arcan, Inc.*,
  248 F.3d 1349 (Fed. Cir. 2001)..............................................................................................15

*Smith v. Transworld Drilling Co.*,
  773 F.2d 610 (5th Cir. 1985) ................................................................3

*TCL Commc'ns Tech. Hldgs Ltd. v. Telefonaktiebolaget LM Ericsson*,
  No. SACV 14–341 JVS, 2017 WL 6611635 (C.D. Cal. Dec. 21, 2017) ...............................7, 9

*Uniloc USA v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011) ..........................................................5, 13

*VirnetX, Inc. v. Cisco Sys., Inc.*,
  767 F.3d 1308 (Fed. Cir. 2014) ......................................................3, 11, 13

*Visteon Global Techs., Inc. v. Garmin Int'l, Inc.*,
  No. 10-cv-10578, 2016 WL 5956325 (E.D. Mich. Oct. 14, 2016) ...........................................9

*Wang Labs, Inc. v. Toshiba Corp.*,
  993 F.2d 858 (Fed. Cir. 1993) ..............................................................14

*Whitehead v. Food Max of Miss., Inc.*,
  163 F.3d 265 (5th Cir. 1998) ................................................................7

*Whitserve, LLC v. Computer Packages, Inc.*,
  694 F.3d 10 (Fed. Cir. 2012) ...............................................................13

*Wordtech Sys. v. Integrated Netwks Sols., Inc.*,
  609 F.3d 1308 (Fed. Cir. 2010) .............................................................4

*Z4 Techs., Inc. v. Microsoft Corp.*,
  507 F.3d 1340 (Fed. Cir. 2007) ............................................................2

## STATUTES

35 U.S.C. § 286 ...............................................................................14

35 U.S.C. § 287(a) ........................................................................2, 13, 14

## OTHER AUTHORITIES

Fed. R. Civ. P. 50(b) .........................................................................1

Fed. R. Civ. P. 59 .........................................................................1, 2, 4

Defendants TCL Communication Technology Holdings, Ltd., TCT Mobile Limited, and

TCT Mobile (US) Inc. (collectively "TCL") hereby move for a new trial pursuant to Rule 59(a)

because the jury's infringement and willfulness verdicts and damages award is against the weight

of the evidence.  *See* Fed. R. Civ. P. 59(a).  As explained in TCL's post-judgment motion for

judgment as a matter of law ("JMOL") under Rule 50(b), incorporated herein by reference, the

evidence is legally insufficient to support a liability verdict or the award of $75 million in

damages.  As an alternative to a new trial on damages, TCL seeks remittitur of $2,465,000.

## I.   <u>INTRODUCTION</u>

The jury's damages verdict for infringement of U.S. Patent No. 7,149,510 ("the '510

patent") should be vacated because it is excessive and based upon inadmissible evidence that

should have been excluded.  By awarding lump sum damages of $75 million, the jury adopted

the model of Plaintiffs Ericsson Inc. and Telefonaktiebolaget LM Ericsson's (collectively,

"Ericsson") damages expert, Robert Mills.  Mr. Mills' lump sum damages model is flawed

because it was based on a projection of TCL's sales to 2024 that included unaccused products.

Ericsson presented no other rationale to support its demand of $245 million.  Although Ericsson

backtracked during closing argument, reducing its demand to $125 million, unaccused products

remained part of Ericsson's post-trial damages estimate.  Indeed, Mr. Mills' highest estimate of

pretrial damages was $61.2 million.  Thus, the jury's verdict of $75 million necessarily awarded

damages for post-trial sales, which Mr. Mills admitted included unaccused products.

Other errors further tainted the jury's damages award.  *First* Ericsson knowingly

advanced false arguments regarding TCL's accounting practices and introduced the prejudicial

and irrelevant price that Samsung paid to Ericsson under a portfolio-wide agreement, both of

which prejudiced the jury's findings regarding damages.

*Second*, to calculate damages for the '510 patent, Mr. Mills relied upon a survey designed

by Dr. William Wecker which purported to measure the percentage of sales that TCL would have

lost if the accused products did not contain the allegedly infringing feature.  Dr. Wecker's

survey, however, was not tied to the claims of the '510 patent.  Indeed, Ericsson's infringement

expert, Dr. Mark Jones, testified that the '510 patent does not cover the capabilities measured in

Dr. Wecker's survey.  Thus, the survey failed to accurately measure damages for the '510 patent.

*Third*, compounding these errors, Mr. Mills violated the entire market value rule by using

100% of the profit of the sales that TCL purportedly would have lost by not practicing the '510

patent.  As described in TCL's Motion to Exclude (Dkt. 284), Mr. Mills failed to apportion

damages to account for the profit that unpatented features contribute to TCL's accused products.

*Fourth*, Mr. Mills concluded without basis that TCL and Ericsson would have agreed to

split the profit purportedly associated with practicing the patented feature with either almost all,

or a little over 50%, of that profit going to Ericsson.

*Fifth*, in calculating his lump sum damages estimate, Mr. Mills used the damages

*limitation* of 35 U.S.C. § 287(a) to *increase* damages by tens of millions of dollars.

Because the verdict was contrary to law and against the clear weight of the evidence

properly before the jury, the Court should order a remittitur, or a new trial, under Rule 59.  Once

Mr. Mills' improper opinions are excluded, the largest damages award supported by the evidence

at trial is $2,465,000, based on the testimony of TCL's damages expert, Christopher Martinez.

## II.    <u>LEGAL STANDARD</u>

A new trial may be granted on any or all issues "for any reason for which a new trial has

heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  The

Federal Circuit reviews the question of a new trial under the law of the regional circuit.  *Z4

Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1347 (Fed. Cir. 2007).  "A new trial may be

granted, for example, if the district court finds the verdict is against the weight of the evidence,

the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its

course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985).

III.   **ARGUMENT**

 A. **Damages Evidence Wrongly Admitted at Trial Substantially Prejudiced TCL**

  1. **Ericsson Requested Damages For Unaccused Products.**

By awarding a lump sum amount of $75 million, the jury adopted Mr. Mills' damages

model.  Mills, however, testified that his lump sum damages amount included TCL unaccused

products that are "not currently sold," are "launched a year from now," and are "not named as

accused products in this case."  12/5/17 PM Tr. 54:3-55:7.  As the Federal Circuit explained in

*Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, a patentee "can only receive infringement

damages on those devices that actually performed the patented method during the relevant

infringement period." 576 F.3d 1348, 1358-1359 (Fed. Cir. 2009); *see also Finjan, Inc. v.

Sophos, Inc.*, 2016 WL 4268659, *6-7 (N.D. Cal., Aug. 15, 2016) (excluding expert testimony

concerning damages for including unaccused products in the royalty base as it "cannot

reasonably assist the jury"); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir.

2014) ("a patentee must take care to seek only those damages attributable to the infringing

features.").  Mr. Mills' testimony is also contradicted by the parties' stipulation that Ericsson's

"claims for infringement as to" "TCL Android-based products first made available to the public

on or after June 16, 2017" "will not be extinguished by a judgment for damages through the time

of trial unless the product is included in Ericsson's infringement contentions." Dkt. 308, ¶ 3.

Thus, as explained in TCL's Motion to Exclude Testimony of Dr. Wecker and Mr. Mills, Mr.

Mills' lump sum damages estimate impermissibly "charge[d] royalties for products not accused

of infringement," and should have been excluded.  Dkt. Nos. 324 at 14 and 358 at 4-5.

Ericsson may argue that it corrected this error in closing argument when it reduced its

damages request from $245 million to $125 million.  12/7/17 PM Tr. 67:15-68:13.  Any effect of

Ericsson's reduced demand, however, was negated by Ericsson's argument that it was giving

TCL a "free" license for the 4 years from 2020-2024.  12/7/17 AM Tr. 68:6-13 ("We're not even

going to charge them for it, even though they're using our invention").  Thus, Ericsson urged the

jury to consider TCL's unaccused products in awarding damages.  Moreover, even the $125

million damages request included unaccused products.  Ericsson based this amount by "go[ing]

out three years" and "three years past today will end up with an infringement amount of $125

million."  *Id*.  The uncontroverted evidence, however, established that no TCL accused product

sold for more than 2.5 years, and that the average lifecycle was less than one year.  12/6/17 AM

Tr. 148:1-24.  Thus, any damages beyond 2.5 years were based upon pure speculation.  As such,

Ericsson's request for damages for the next 3 years invited the jury to speculate and included

unaccused products.  Indeed, the highest estimate of pretrial sales was $61.2 million.  12/5/17

PM Tr. 45:4-7.  The damages award of $75 million, therefore, necessarily includes post-trial

sales that Mr. Mills admitted include unaccused products.  This award based on speculation and

unaccused products cannot stand.  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327

(Fed. Cir. 2009) ("[A]n explanation [of a lump sum amount] urging jurors to rely on speculation,

without more, is often insufficient."); *Wordtech Sys. v. Integrated Netwks Sols., Inc.*, 609 F.3d

1308, 1322 (Fed. Cir. 2010) (reversing denial of Rule 59(a) a motion when damages verdict was

"clearly not supported by the evidence" and "based only on speculation or guesswork").  Given

that the jury awarded at least some damages for sales of unaccused products, "the jury verdict

must be set aside and a new trial held."  *Lyle v. Bentley*, 406 F.2d 325, 327-328 (5th Cir. 1969).

### 2.      Reference to Incorrect $245 Million Damages Was Highly Prejudicial.

Ericsson's repeated request for $245 million in damages based on unaccused products

was highly prejudicial.  Ericsson told the jury on several occasions that damages should be $245

million, comprised of $61.2 million pre-trial lump sum damages and $183 million post-trial lump

sum damages based on units "TCL would sell through 2024."  12/4/17 PM Tr. 19:9-20:14; *see*

*also* 12/5/17 AM Tr. 111:8-15; 12/5/17 PM Tr. 44:13-20; 45:4-7.  Mr. Mills admitted that he

inflated this damages estimate by including unaccused products.  The Court recognized this

error, overruling Ericsson's objection to the jury instruction limiting damages to "accused

products."  12/7/17 AM Tr. 3:9-6:13.  By that point, however, Ericsson's repeated reference to

the legally flawed $245 million damages figure "skew[ed] the damages horizon for the jury,"

requiring a new trial on damages. *See Uniloc USA v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed.

Cir. 2011) (though the "jury was instructed not to base its damages determination on the entire

market value," disclosure of entire accused revenue "taint[ed] the jury's damages award.").

### 3. Ericsson's Repeated Reference to TCL as Chinese and its Provisioning of Royalties for Patent Rights Was Highly Prejudicial.

Ericsson made repeated improper reference to TCL as "those Chinese executives" having

"two sets of books."  12/5/17 Am Tr. 130:12-14; 12/5/17 PM Tr. 73:9-11 ("You mean to tell me

that those Chinese executives that he talked about yesterday got two sets of books?").  These

references not only violated the MIL ruling precluding pejorative reference to a witness's

nationality (Dkt. 377 at 2), they were false and inflammatory.  Ericsson attempted to add trial

exhibits produced in the California case that relate to TCL's provisioning of potential payments

for rights to standard essential patents ("SEPs").  The Court sustained TCL's objection to those

exhibits as untimely, irrelevant, and prejudicial.  11/28/17 Pretrial Conf. Tr. 35:13-38:5.  Despite

this ruling, Ericsson elicited testimony and presented the false argument that TCL's SEP

provisioning was done in bad faith.  Ericsson advanced this prejudicial and false argument

despite the fact that, unbeknownst to TCL's trial counsel here, *Ericsson's* expert in the California

trial testified that TCL's provisioning for rights to SEPs was expected, required, and proper.  Ex.

A (Decl. of D. Kennedy, ¶ 287 ("If TCL *failed* to make an IPR provision, then TCL would have

been filing misleading financial statements.") (emphasis original)).  Yet, at this trial, Ericsson's

counsel presented the false argument that TCL manipulated its profits by holding back money

that was really owed to Ericsson.  Ericsson repeatedly advanced misleading and false arguments:

- Baxter: "They take some figure, and they subtract from it a bunch of costs, but they actually never paid the bill?"  12/5/17 PM Tr. 73:22-24;

- Baxter: "[D]id you say those payments were that they--they say they're making but they're not really making, that they make that up, what are those?"  *id*. at 74:7-12;

- Baxter: "So there are accruals to pay for property rights, but they never pay them, but they deduct them from their revenue and call it costs; is that what they do?"  *id*. at 74:17-21;

- Mills: "So there's no indication that I'm aware of that they will pay them."  *id*. at 75:15-18;

- Baxter: "So they've got another set of books that they go to the public with to try to show they're making a lot more money?"  *id*. at 75:24-76:1;

- Baxter: "They got a second set of books that goes to the public?"  *id*. at 76:4-5.

Ericsson's counsel then summarized this misleading evidence in closing argument, falsely telling

the jury that TCL "set aside up to $50 million" that "ought to go to" Ericsson as damages:

> [TCL] set aside up to $50 million for this exact payments ... to try to get
> their profits down, even though they haven't paid them, *because they've got
> those two sets of books*, even though they don't pay them, they deduct them
> to try to lower their gross profit to come into here and say we can't afford
> this, and the money's just sitting there. *And it seems to me it ought to go to
> the people they have reserved it for, which is us, for their infringement*.

12/7/17 AM Tr. at 70:5-13 (emphasis added).

Ericsson's argument lacked any basis in the record.  There is no evidence that TCL

"reserved" funds for infringement of the '510 patent.  To the contrary, TCL funds were reserved

for SEPs, not the '510 patent.  Ex. A, (Decl. of D. Kennedy, ¶ 281 ("TCL has already calculated

and accounted for royalties owed for its unlicensed use of Ericsson's *SEPs* in its audited

financial statements") (emphasis added)).  The only reason funds were reserved was due to

Ericsson's breach of its FRAND obligation to TCL.  *TCL Commc'ns Tech. Hldgs Ltd. v. Telefonaktiebolaget LM Ericsson*, 2017 WL 6611635, at *57 (C.D. Cal. Dec. 21, 2017) (Ericsson's offers to license SEPs to TCL "are not FRAND rates.").  By knowingly eliciting misleading testimony and proffering false arguments, Ericsson's counsel improperly exploited the fact TCL's trial counsel here was not TCL's counsel in the California case, and also exploited the MIL order excluding reference to the California litigation.  Dkt. 377 at 1.

This misleading evidence and false argument referencing "Chinese executives" allegedly underreporting profits and having "two sets of books" inflamed the jury to award excessive damages, requiring a new trial.  *Commil USA, LLC. v. Cisco Sys. Inc.*, 2:07-cv-00341-JRG, 2010 WL 11484496, *2 (E.D. Tex. Dec. 29, 2010) (ordering new trial when comments "employ[ed] an 'us v. them' mentality" and "prejudiced the jury's findings regarding indirect infringement and damages"); *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 276 (5th Cir. 1998) ("awards influenced by passion and prejudice are the antithesis of a fair trial."); *Hall v. Freese*, 735 F.2d 956 (5th Cir. 1984) (argument appealing to the jury's biases and prejudices justified a new trial).

### 4. Irrelevant Agreement Price Tainted the Damages Verdict.

TCL moved *in limine* to exclude the total amounts paid to Ericsson under its portfolio license agreements.  TCL MILs (Dkt. 336) at 3.  The Court conditionally granted the motion but not with respect to Ericsson's license agreement with Samsung.  Updated Order on MILs (Dkt. 377) at 5.  As discussed in TCL's MIL, Ericsson's agreement with Samsung exceeded ████ ████ and introduction of that large figure would prejudice the merits of any damages analysis of the '510 patent.  Also, the Samsung agreement had minimal, if any, probative value.  Indeed, neither Mr. Mills nor Mr. Martinez relied upon the Samsung agreement to calculate a royalty rate.  Mr. Mills testified that the Samsung agreement "doesn't identify a rate or any payment for the '510 patent," it "grants rights to thousands of Ericsson patents," and he did not take the price

Samsung paid "and apply it to the '510 patent in calculating a royalty in this case…."  12/5/17

PM 48:10-50:2.  Despite its lack of relevance, Mr. Mills testified at length about the price

Samsung paid.  12/5/17 PM Sealed Tr. 5:13-6:25 ██████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████.  This prejudicial and irrelevant evidence of the agreement price

should have been excluded. *LaserDynamics v. Quanta Comp. Corp.*, 694 F.3d 51, 78 (Fed. Cir.

2012) (abuse of discretion to admit agreement with "very little relation to demonstrated

economic demand for the patented technology" when "its probative value is greatly outweighed

by the risk of unfair prejudice, confusion of the issues, and misleading the jury.").

## B.  Mr. Mills' and Dr. Wecker's Testimony Should Have Been Excluded

### 1.  The Survey Was Not Tied To The Claimed Invention.

As explained in TCL's Motion to Exclude (Dkt. 284 at 4), the questions in Dr. Wecker's

survey were not circumscribed to describe the feature actually claimed in the '510 patent.  As a

result, the survey responses do not reflect consumer preferences for the patented features.  The

survey presented the following scenario purporting to describe the '510 patented feature:

> Suppose that the Android-based smartphone you purchased, as well as some other
> manufacturers' smartphones, did not have the ability to (1) ask your permission
> for an app to access particular capabilities on your phone before downloading that
> app, and (2) prevent an app from accessing the capabilities on your phone for
> which permission was neither requested nor given.  Instead, just prior to
> downloading an app, you would have to decide to either (a) grant the app
> permission to access all capabilities on the phone, or (b) not download the app.

PX113.0034.  Dr. Wecker characterized the invention of the '510 patent as the ability to perform

items (1) and (2).  Dr. Wecker relied upon Dr. Mark Jones for his understanding that the '510

patent covered this capability.  12/5/17 AM Tr. 100:3-101:13.  Dr. Wecker testified that he

"wanted to check it with Dr. Jones to confirm this is a fair description" of what the '510 patent

covers because if it wasn't fair or accurate "then it would be a big deal." *Id*. Dr. Jones, however, testified that the '510 patent does not cover, this functionality. Dr. Jones testified that "the inventors of the '510 patent" did not invent "requiring a user's permission before allowing an app to be installed on a phone," "preventing access to certain phone" hardware or software "without a user's permission," "access control," "app security," or "app permissions." 12/5/17 AM Tr. 18:13-16; 22:2-10; 12/6/17 PM Tr. 64:16-24. Given the large discrepancy between the feature measured in the survey and the more limited feature actually claimed by the '510 patent, the survey "do[es] not measure how consumers value the purported advantages provided by Plaintiff's technology." *See Fractus, S.A. v. Samsung*, 2011 WL 7563820, at *1 (E.D. Tex. Apr. 29, 2011). As such, the survey, "purportedly demonstrating the value of [a phone feature] not tied directly to Plaintiff's technology confuses the issues and [should have been] excluded." *Id*.

### 2.     The Survey's Narrow Focus Made It Unreliable.

In addition, by singling out the patented access feature, the survey "artificially increases the number of people who at the moment think of [that feature] as more important." *See* 12/6/17 AM Tr. 103:10-112:11; *TCL Commc'ns*, 2017 WL 6611635, at *29 (survey that "focused on one feature at a time instead of presenting the bundle of phone features consumers evaluate in reality, and also singled out certain features" was "not reliable"); *Visteon Global Techs., Inc. v. Garmin Int'l, Inc.*, 2016 WL 5956325, at *19 (E.D. Mich. Oct. 14, 2016) (testimony of survey and damages experts excluded when experts failed to "separated the value of the numerous valuable non-patented features from that of the four patented features"). Thus, the survey should have been excluded as unreliable for failing to consider more than the patented access feature.

### 3.     Mr. Mills Failed To Apportion Damages.

Mr. Mills compounded the errors of the flawed survey through his use of its results. First, it follows that, because the questions in the survey describe a feature more broadly than the

claims of the '510 patent, Mr. Mills' royalty calculations derived from the survey responses fail to apportion the damages in a manner to limit them to the actual invention claimed.

Second, in addition to including unaccused products, as described above, Mr. Mills' damages estimate violates the entire market value rule ("EMVR").  Both Mr. Mills and Dr. Wecker admitted that the '510 patent's access control feature does not drive the demand for TCL's products.  12/5/17 AM Tr. 95:4-17; 12/5/17 PM Tr. 67:2-20.  Indeed, Dr. Wecker testified that there are "many," potentially "thousands" of features on a smartphone and that some of them are "majority must have features," such as "the ability to make a phone call," "text messag[ing]," "WiFi connection," and "the camera."  12/5/17 AM Tr. 90:3-9; 97:6-98:17.  Dr. Wecker also testified that customers are "not going to buy the phone" in the absence of any of those features. *Id*.  Thus, it is undisputed that, even for 28.4% of respondents who indicated they would not have purchased a smartphone without the allegedly patented feature, the feature did not "drive[] the demand for [the] entire multi-component" accused products.  *LaserDynamics*, 694 F.3d at 67.

Yet, despite long-standing precedent that "the patentee . . . must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features," *Garretson v. Clark*, 111 U.S. 120, 121 (1884), Mr. Mills admitted that he did not "try to determine what portion of TCL's average profit per unit could be attributed to other features, like text messaging, battery life, [or] screen size." 12/5/17 PM Tr. 66:17-67:20 ("No, I didn't focus on those features.").  Instead, Mr. Mills used 100% of TCL's average gross profit per unit of $12.03 associated with 28.4% of TCL's potential lost sales due to the lack of the '510 patented feature to calculate TCL's purported "at-risk" profit per unit of $3.42.  12/5/17 PM Tr. 13:1-15:3 ("I multiplied the number of sales that would be lost for 7.6 million times that profit per device figure of $12.03, and that works out to $91.8 million in profit" and "next I take that profit that would be lost and I spread that over all the

phones that were sold during that period, and--to determine how much on average that is. And it turns out to be $3.42."); *see also id.* at 62:1-10 ("you could calculate the $3.42 of at risk profit [] by taking 28.4 percent of $12.03, right?  A. That would produce the same number of $3.42, yes.").  By doing so, Mr. Mills violated the EMVR, *i.e.*, using "damages as a percentage of revenues or profits attributable to the entire product," even though the patented feature does not drive the demand for the accused products.  *LaserDynamics*, 694 F.3d at 67-69.

The Federal Circuit squarely rejected this methodology in *LaserDynamics*.  There, the court explained that, even if consumers would not have purchased the product without the patented features, that fact alone does not justify "damages as a percentage of revenues or *profits attributable to the entire product.*"  *Id*. at 67 (emphasis added).

> It is not enough to merely show that the disc discrimination method is viewed as valuable, important, or even essential to the use of the laptop computer.  Nor is it enough to show that a laptop computer without an ODD practicing the disc discrimination method would be commercially unviable.  Were this sufficient, a plethora of features of a laptop computer could be deemed to drive demand for the entire product.…  But proof that consumers would not want a laptop computer without such features is not tantamount to proof that any one of those features alone drives the market for laptop computers.

694 F.3d at 68-69.  Similarly, here, that 28.4% of the survey respondents indicated they would not buy a phone without the '510 patented feature does not mean that the feature drives the demand.  Both Mr. Mills and Dr. Wecker agreed it does not.  Nor does it mean that Mr. Mills could calculate "damages as a percentage of revenues or profits attributable to the entire product."  *Id*. at 67.  Yet, Mr. Mills attributed all the profits from the "at risk" sales to the '510 patent.  12/5/17 PM Tr. 13:1-15:3; 62:1-10.  Thus, under the binding *LaserDynamics* holding, Mr. Mills' failure to account for the value of non-infringing features in his analysis violates the EMVR.  *See also Garretson*, 111 U.S. at 121; *VirnetX*, 767 F.3d at 1329 (expert testimony should have been excluded for failing to "link demand for the accused device to the patented

feature, and fail[ing] to apportion value between the patented features and the vast number of non-patented features contained in the accused products."); *Lucent Techs.*, 580 F.3d at 1332-33 (vacating damages award and noting "the glaring imbalance between infringing and non-infringing features must impact the analysis of how much profit can properly be attributed to the use of the [accused feature] compared to non-patented elements and other features of Outlook."). As such, the jury's verdict adopting Mr. Mills' damages estimate must be vacated.

### 4. No Substantial Evidence Supports Mr. Mills' Proposed Rates.

Mr. Mills testified that "$3.42 is the expe[cted] profit that TCL would get by taking that license" to the '510 patent.  12/5/17 PM Tr. 15:10-20.  To determine how TCL and Ericsson split that $3.42 in the hypothetical negotiation, Mr. Mills recited a number of factors that purportedly would have resulted in Ericsson being "in the stronger bargaining position" than TCL.  *Id.* at 24:4-25:13  Mills then estimated that the $3.42 would be split between TCL and Ericsson as follows: "if Ericsson had just a slight majority of a - slightly stronger bargaining position then we might expect a royalty at the lower end of the range, like [$]1.72, which is just a little bit over half" but "[i]f Ericsson had tremendous bargaining strength relative to TCL, then we might expect a royalty toward the upper end of that range, like $3.41, which is just a little bit below the total value."  *Id.*  Thus, Mr. Mills' royalty rates ranged from $1.72 to $3.41 per unit.  Ericsson argued exclusively for $3.41 per unit.  12/4/17 PM Tr. 19:9-20:14; 78:23-79:9; 86:9-16; 12/6/17 AM Tr. 124:21-22; 12/7/17 AM Tr. 42:16-17; 69:4-19.

As an initial matter, Mr. Mills' rate of $3.41 of $3.42 profit per unit is contrary to Mr. Mills' first expert report, where he opined that "Ericsson could not reasonably expect to receive a royalty equal to the entire value realized by TCL … because such a royalty would leave TCL with little or no incentive to take a license," an opinion Mr. Mills testified he still holds.  12/5/17 PM Tr. 71:13-23.  Moreover, other than his vague analysis of the *Georgia-Pacific* factors, Mr.

Mills provided no quantitative basis for this split of profit.  His arbitrary rates ranging from $1.72 to $3.41 per unit stem from no reliable methodology.  Both the Federal Circuit and this Court have rejected such conclusory royalty rates.  *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 31 (Fed. Cir. 2012) ("[W]hile mathematical precision is not required, some explanation of both why and generally to what extent [each *Georgia-Pacific* factor] impacts the royalty calculation is needed."); *Biscotti Inc. v. Microsoft Corp.*, 2017 WL 2536962, *4-5 (E.D. Tex. May 18, 2017) (Payne, J.) (striking "entirely conclusory" damages opinion of a 40% royalty rate as "'arbitrary' and akin to the damages model rejected in *Uniloc* and *Virnetx*"); *VirnetX*, 767 F.3d at 1332.  Mr. Mills' "arbitrary and speculative" royalty rates require a new trial.  *See LaserDynamics*, 694 F.3d at 80 (when "6% running royalty theory [could not] be reconciled with the actual licensing evidence" a "new trial is required because the jury's verdict was based on an expert opinion that finds no support in the facts in the record.") (*citing Uniloc*, 632 F.3d at 1318).

## 5.      Mr. Mills Improperly Used 35 U.S.C. § 287(a) to Increase Damages.

Pursuant to 35 U.S.C. § 287(a), patent damages "may be recovered only for infringement occurring after … notice."  35 U.S.C. § 287(a).  Here, the parties stipulated that the date of the hypothetical negotiation is April 1, 2010, but due to Ericsson's failure to require marking of products that practice the '510 patent, damages could not begin until October 21, 2014, the date Ericsson provided TCL with actual notice of its infringement claims.  JX001, ¶¶ 6-9; Dkt. Nos. 227, 231.  Thus, Ericsson's damages are limited by § 287(a).  Ericsson, however, used this damages limitation to increase its damages.

In calculating lump sum damages, Mr. Mills used a discount rate of 11.4%, which is the weighted average cost of capital for TCL, to reduce his calculation from 2024 to present value as of the date of payment.  12/5/17 PM Tr. 26:22-27:10; 56:1-57:10.  Mr. Mills, however, discounted damages for his lump sum estimate to October 21, 2014, instead of April 1, 2010, the

date of the hypothetical negotiation.  *Id*.  By doing so, Mr. Mills used § 287's damages *limitation* to *increase* his damages estimate.  In fact, absent § 287's damages limitation, Mr. Mills' lump sum damages would have included accused products prior to October 2014, but would have also been discounted back to April 2010, resulting in damages $40 million to $79 million *lower* than Mr. Mills' estimated amounts.[1]  This use  of § 287's damages limitation to increase damages is contrary to § 287's purpose—to limit (not increase) damages that "may be recovered only for infringement occurring after … notice." 35 U.S.C. § 287(a).

Mr. Mills' use of the 2014 notice date instead of the 2010 hypothetical negotiation date to reduce his calculation to present value is also contrary to binding case law.  Mr. Mills assumed that the parties at the hypothetical negotiation would recognize that damages would be limited by § 287(a).  12/5/17 PM Tr. 28:9-19; 56:1-57:10.  The Federal Circuit, however, has explained that § 287's legal limitation does not affect the construct of the hypothetical negotiation.  *See Wang Labs, Inc. v. Toshiba Corp*., 993 F.2d 858, 870 (Fed. Cir. 1993) (court erred when it "confused limitation on damages due to lack of notice with determination of the time when damage first began to accrue, and it is the latter which is controlling in a hypothetical royalty determination."); *LaserDynamics*, 694 F.3d at 75 ("We have … been careful to distinguish the hypothetical negotiation date from other dates that trigger infringement liability" such as "the six-year limitation on recovery of past damages under 35 U.S.C. § 286" and preclusion "of damages prior to the marking or notice date" under § 287).  Thus, Mr. Mills' use of the 2014 notice date to limit the reduction of his lump sum damages calculation is legally flawed.

## C.   <u>Damages Should Be Remitted</u>

Instead of awarding a new trial on damages, this Court may alternatively give Ericsson

---

[1] *See* Declaration of Christopher Martinez In Support of Motion for New Trial and Schedules 1A, 1B, 2A, and 2B, attached thereto.

the opportunity to accept a remittitur.  Whether a court should order a remittitur in a patent

infringement case is determined under the law of the regional circuit.  *Power Integrations, Inc. v.*

*Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1356 (Fed. Cir. 2013).  The Fifth Circuit has

held that a remittitur is proper where the damages award is "excessive to the maximum amount

the jury could have awarded."  *Salinas v. O'Neill*, 286 F.3d 827, 830 (5th Cir. 2002).  Reduction

of the award is calculated in accordance with the "maximum recovery rule" in which the Court

determines the maximum amount a jury could have awarded based on the appropriate evidence.

*Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 590 (5th Cir. 1985); *Shockley v. Arcan, Inc.*, 248

F.3d 1349, 1362 (Fed. Cir. 2001).  Remittitur is appropriate here because the jury could not have

properly awarded damages based on Mr. Mills' legally flawed testimony.  The maximum

recovery based on appropriate evidence is $2,465,000, as discussed by TCL's damages expert,

Christopher Martinez.  Mr. Martinez's testimony, based on Ericsson's actual licensing practice

(not an inaccurate, litigation-based survey), supports a one time, lump sum damages award for

past and future damages of no more than $2,465,000 for infringement of the '510 patent. 12/6/17

AM Tr. 132:6-12/6/17 PM Tr. 46:11; 12/6/17 PM Sealed Tr. 3:14-62:21.  Thus, if the Court does

not enter judgment of zero damages or order a new trial, it should remit damages to this amount.

### D. **Infringement Verdict Is Against the Great Weight of the Evidence**

For the reasons presented in TCL's post-judgment motion for JMOL, the evidence is

legally insufficient to support infringement and willfulness verdicts.  Thus, if the Court does not

enter judgment of no infringement or willfulness, a new trial is appropriate because the jury

could not have properly found liability based on the evidence presented at trial.

### IV. **CONCLUSION**

If the Court does not enter judgment of no infringement and no damages, this Court

should order a new trial on liability and either a new trial on damages or remittitur of $2,465,000.

Dated: January 10, 2018

*/s/ Michael F. Carr*
Winstol D. Carter, Jr.
State Bar No. 03932950
wcarter@morganlewis.com
Adam A. Allgood
State Bar No. 24059403
aallgood@morganlewis.com
**Morgan, Lewis & Bockius LLP**
1000 Louisiana Street, Suite 4000
Houston, Texas 77002
Telephone: 1.713.890.5000
Facsimile: 1.713.890.5001

Bradford A. Cangro (Admitted in TXED)
D.C. Bar No. 495996
bradford.cangro@morganlewis.com
Jeremy D. Peterson (Admitted *Pro Hac Vice*)
jpeterson@morganlewis.com
Jacob A. Snodgrass (Admitted Pro Hac Vice)
jacob.snodgrass@morganlewis.com
**Morgan, Lewis & Bockius LLP**
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Telephone: 1.202.739.3000
Facsimile: 1.202.739.3001

Michael F. Carr (Admitted *Pro Hac Vice*)
michael.carr@morganlewis.com
**Morgan, Lewis & Bockius LLP**
2 Palo Alto Square
3000 El Camino Real, Suite 700
Palo Alto, CA 94306
Telephone: 1.650.843.4000
Facsimile: 1.650.843.4001

**ATTORNEYS FOR DEFENDANTS TCL
COMMUNICATION TECHNOLOGY
HOLDINGS LTD., TCT MOBILE
LIMITED, and TCT MOBILE (US), INC.**

**CERTIFICATE OF SERVICE**

The undersigned certifies that on January 10, 2018, counsel of record who are deemed to have consented to electronic service are being served with a copy of this document by electronic mail.

*/s/Michael F. Carr*

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that authorization to file this document and accompanying exhibits under seal was provided by the Protective Order, Dkt. No. 39, entered in this matter.

*/s/Michael F. Carr*