# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| **ERICSSON INC., AND TELEFONAKTIEBOLAGET LM ERICSSON,**<br><br>Plaintiffs,<br><br>v.<br><br>**TCL COMMUNICATION TECHNOLOGY HOLDINGS, LTD., TCT MOBILE LIMITED, AND TCT MOBILE (US), INC.,**<br><br>Defendants. | **Civil Action No. 2:15-cv-00011-RSP**<br><br>**JURY TRIAL** |

## DEFENDANTS' REPLY IN SUPPORT OF
## MOTION FOR NEW TRIAL PURSUANT TO FED. R. CIV. P. 59(a)

### A.     <u>Ericsson's Damages Model Included Damages For Unaccused Products.</u>

Ericsson's Opposition confirms that its damages model presented to the jury included TCL unaccused products. 12/5 PM Tr. 54:3-55:7. Ericsson also does not dispute that its request for damages on future, unaccused products contradicted the parties' stipulation that a judgment would not apply to any TCL product not "included in Ericsson's infringement contentions." Dkt. 308, ¶ 3. And it is undisputed that no accused product sold for more than 2.5 years. 12/6 AM Tr. 148:1-24. As a result, any damages beyond March 2020 included unaccused products and were based upon pure speculation. Ericsson, however, requested $125 million based on "infringement" "go[ing] out three years," and on the basis that it was giving TCL a "free" license from 2020 to 2024. 12/7 AM Tr. 67:16-68:13. Thus, Ericsson requested damages for unaccused products and invited the jury to "rely on speculation." *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327 (Fed. Cir. 2009); *Wordtech Sys. v. Integrated Netwks Sols., Inc.*, 609 F.3d 1308, 1322 (Fed. Cir. 2010). Indeed, Ericsson confirms that damages are for a license to 2024. Opp. at 5 ("it is 100% correct" that the license extends through "the life of the patent" to 2024).

Ericsson contends that TCL waived the argument that Ericsson wrongly included unaccused products in its damages case. Yet, TCL filed a *Daubert* motion seeking to preclude Mr. Mills' lump sum damages estimate for including unaccused products. TCL's Mot. to Exc. (Dkt. 324) at 14. Once the Court ruled on TCL's objections (Dkt. 359), TCL was not required to continually "renew an objection … to preserve a claim of error…." Fed. R. Evid. 103.

### B.     <u>Repeated Reference to Damages of $245 million Was Highly Prejudicial.</u>

Ericsson contends that its repeated requests for $245 million in damages was cured by the jury instruction to base any damages on accused products, and by "Ericsson's reduction of its damages prayer to correspond with the Court's instruction." Opp. at 5. Ericsson's last-minute decision to lower its damages request, however, could not cure the prejudice caused by its

repeated request for $245 million throughout the trial. Though the jury was instructed that damages were for infringement by the accused products, the bell could not be unrung. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011) (new trial "in spite of a final instruction that the jury may not award damages based on Microsoft's entire revenue from all the accused products"). Although *Uniloc* addressed disclosure of total revenue instead of testimony and argument seeking excessive damages of $245 million, *Uniloc* is still relevant because there, as here, the final instruction could not cure the harm created by the improper evidence.

C. **Ericsson's Repeated Reference to TCL Provisioning Was Highly Prejudicial.**

Ericsson contends there was "nothing prejudicial" about its repeated reference to TCL as "those Chinese executives" having "two sets of books." Opp. at 6; 12/5 AM Tr. 130:12-14; 12/5 PM Tr. 73:9-11; 12/7 AM 70:5-13. Ericsson cannot seriously dispute that its false argument that TCL manipulated profits by holding back funds "reserved" for Ericsson was highly prejudicial. Ericsson argues that the questioning about TCL's provisioning of potential payments for rights to SEPs was "highly relevant." Opp. at 7. Yet, there is no dispute that Mr. Mills' reports contain no discussion of IPR provisioning. Indeed, the issue of how TCL "keeps its books" (Opp. at 9) was never an issue until it was interposed by Ericsson despite the Court's admonition that there had not been any prior "testimony about a second set of books." 12/5 PM Tr. 76:8-9.

Ericsson contends that the provisioning was not limited to rights to SEPs. This argument is directly contradicted by the testimony of Ericsson's expert regarding TCL's IPR provisioning, which was described exclusively with respect to "SEPs." *See* Mot. Ex. A (Dkt. 429-3), ¶¶ 281, 286, 287. That TCL's provisioning was for essential patents, not the '510 patent, is confirmed by Ericsson's Post-Trial [Proposed] Findings of Fact and Concl. of Law filed in the California case, which also described the provisioning exclusively with respect to "Essential Patent royalt[ies]." *See* Reply Ex. A ¶¶ 3, 335, 340, 342. Despite the fact that TCL's provisioning was

2

for SEPs, and despite the absence of any evidence that TCL "reserved" funds for infringement of the '510 patent, Ericsson's counsel argued to the jury that TCL "set aside up to $50 million" that "ought to go to" Ericsson as damages for infringement of the '510 patent. 12/7 AM Tr. at 70:5-13. This false, unsupported argument "plac[ed] material facts not in evidence before the jury in final argument," inflaming the jury to award excessive damages, requiring a new trial. *See Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276, 285 (5th Cir. 1975).

Ericsson contends that TCL waived its objections to this prejudicial evidence. TCL, however, objected three times to this questioning. In response to TCL's first objection, the Court instructed Ericsson to "move on since [the questioning was] not part of the original testimony." 12/5 PM Tr. 74:21-75:2. Despite this instruction, Ericsson continued to ask if TCL has "another set of books that they go to the public with to try to show they're making a lot more money?" *Id*. at 75:24-76:1. TCL again objected, which was sustained. *Id*. at 76:2-3. Remarkably, Ericsson's next question was "[t]hey got a second set of books that goes to the public?" *Id*. at 76:4-5. TCL again objected and the Court agreed, noting "I don't think there's been testimony about a second set of books." *Id*. at 76:8-9. In light of these objections, there was no waiver. Fed. R. Evid. 103.

Moreover, in each of the cases cited in TCL's Motion ordering a new trial, no objection was raised. *See Commil USA, LLC. v. Cisco Sys. Inc.*, 2:07-cv-00341-JRG, 2010 WL 11484496, at *2 (E.D. Tex. Dec. 29, 2010) (ordering new trial "even though no objections were made" to comments that "employ[ed] an 'us v. them' mentality"); *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 276 (5th Cir. 1998) (order new trial when there was no objection "to almost all of the statements now challenged" such as "statements that appealed to local bias"); *Hall v. Freese*, 735 F.2d 956, 961 (5th Cir. 1984) (argument appealing to prejudices justified a new trial even though there was a "lack of objection"). Ericsson does not address any of these cases.

### D. Ericsson's Reference to "Chinese Executives" Was Highly Prejudicial.

Ericsson attempts to justify its repeated reference to TCL's witnesses as "Chinese executives" by suggesting that it was "the most convenient and understandable way to distinguish between" TCL's affiliated entities. Opp. at 10. Ericsson's argument is belied by the fact that it never referred to any witnesses as "American executives," despite the fact that most of TCL's witnesses worked for the U.S. affiliate. Ericsson's next excuse, that it was merely "fram[ing] the concept of a hypothetical negotiation," (Opp. at 10) is equally unavailing. Indeed, Mr. Mills corrected Ericsson's counsel, clarifying that the negotiation was *not* with any specific TCL affiliate or witness. 12/5 AM Trial Tr. 130:12-21 ("I don't have a specific name").

Ericsson claims TCL waived the right to request a new trial due to Ericsson's improper comments. But Ericsson's comments violated the MIL ruling precluding pejorative reference to a witness's nationality. Dkt. 377 at 2. And as noted above, courts have ordered a new trial in the absence of any objection when comments appeal to local bias. *Commil USA, LLC.*, 2010 WL 11484496, at *2; *Whitehead*, 163 F.3d at 276; *Hall*, 735 F.2d at 961.[1] That TCL asked potential jurors in *voir dire* about any prejudice towards Chinese companies did not give Ericsson permission to inflame any such prejudice. Ericsson's only motivation for referring to TCL as Chinese was to "employ an 'us v. them' mentality." *See id*. If this were not enough, "the synergistic effect of" reference to "Chinese executives" having "two sets of books" severely prejudiced TCL, requiring a new trial. *U.S. v. Houston*, 481 F. App'x 188, 194 (5th Cir. 2012).

### E. Irrelevant Agreement Price Tainted the Damages Verdict.

Ericsson's argument that TCL waived its objections to the price of the Samsung

---

[1] As recognized by the *Nissho-Iwai* court, (cited by Ericsson), a failure to object does "not result in waiver [when] substantial justice was jeopardized." *Nissho-Iwai Co. v. Occidental Crude Sales, Inc*., 848 F.2d 613, 619 (5th Cir. 1988) (citing, *Edwards*, 512 F.2d at 286 (new trial when verdict is influenced by "jury passion or prejudice" "even in the absence of timely objection")).

Agreement also fails.  TCL objected to this document (PX010) under Rules 402 and 403 and in a MIL.  Dkt. 339, Ex. 5 at 28.  TCL moved to "exclude[] as highly prejudicial and irrelevant" "any reference to the total amounts paid" to Ericsson under its portfolio license agreements.  TCL MILs (Dkt. 336) at 3.  The Court definitively ruled that the price of the Samsung agreement was admissible when it denied TCL's motion.  11/6/17 Tr. Pretrial Conf. Tr. (Dkt. 366) at 81:13-19 (holding that it was "appropriate for [Ericsson] to be able to put those numbers before the jury, and that's with respect to Samsung."); Order on MILs (Dkt. 377) at 5.  TCL was not required to renew its objection to this evidence.  Fed. R. Evid. 103.  Ericsson cites *z4* for the proposition that a ruling on a MIL is not definitive.  However, in *z4*, unlike here, the court "repeatedly clarified" that granting the MIL was not "a definitive ruling on admissibility."  *z4 Techs., Inc. v. Microsoft Corp.*, 2006 WL 2401099, at *9 (E.D. Tex. Aug. 18, 2006).[2]  Ericsson contends it was "TCL that put the amount of the Samsung license at issue." Opp. at 12.  Neither Mr. Martinez nor Mr. Mills deemed the *price* that Samsung paid under the agreement to be relevant because the agreement granted "rights to thousands" of patents." 12/5 PM Tr. 48:10-50:2.  In contrast, the offer relied upon by Mr. Martinez was to a subset of patents that included the '510 patent.

### F. At a Minimum, the Court Should Order a New Trial.

For the reasons presented in TCL's Motion and Reply in Support of Renewed JMOL, incorporated by reference herein, the evidence is legally insufficient to support the infringement, willfulness, and damages verdicts.  As a result, the Court should at a minimum require a new trial, or in the alternative, a remittitur of no more than $2,465,000.

---

[2] Ericsson's reliance on *Ameranth* and *Chrimar* is also misplaced.  In *Ameranth*, no pretrial objection to the exhibit was raised.  *Ameranth, Inc. v. Menusoft Sys. Corp.*, 2011 U.S. Dist. LEXIS 56501, at *2 (E.D. Tex. May 26, 2011).  Similarly, in *Chrimar Sys. v. Alcatel-Lucent Enter. USA*, 2017 U.S. Dist. LEXIS 19587, at *21 (E.D. Tex. Feb. 3, 2017), there was no objection to exhibits "during pretrial or trial." Here, TCL timely raised its objections.  Dkt. 339.

Dated: January 31, 2018

/s/ *Michael F. Carr*
Winstol D. Carter, Jr.
State Bar No. 03932950
Winn.carter@morganlewis.com
Adam A. Allgood
State Bar No. 24059403
adam.allgood@morganlewis.com
**Morgan, Lewis & Bockius LLP**
1000 Louisiana Street, Suite 4000
Houston, Texas 77002
Telephone: 1.713.890.5000
Facsimile: 1.713.890.5001

Bradford A. Cangro (Admitted in TXED)
D.C. Bar No. 495996
bradford.cangro@morganlewis.com
Jeremy D. Peterson (Admitted *Pro Hac Vice*)
jpeterson@morganlewis.com
Jacob A. Snodgrass (Admitted *Pro Hac Vice*)
jacob.snodgrass@morganlewis.com
**Morgan, Lewis & Bockius LLP**
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Telephone: 1.202.739.3000
Facsimile: 1.202.739.3001

Michael F. Carr (Admitted *Pro Hac Vice*)
michael.carr@morganlewis.com
**Morgan, Lewis & Bockius LLP**
1400 Page Mill Road
Palo Alto, CA 94304
Telephone: 1.650.843.4000
Facsimile: 1.650.843.4001

**ATTORNEYS FOR DEFENDANTS TCL COMMUNICATION TECHNOLOGY HOLDINGS LTD., TCT MOBILE LIMITED, and TCT MOBILE (US), INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that on January 31, 2018, counsel of record who are deemed to have consented to electronic service are being served with a copy of this document by electronic mail.

/s/ *Michael F. Carr*
Michael F. Carr