# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| ERICSSON INC., AND TELEFONAKTIEBOLAGET LM ERICSSON,<br><br>Plaintiffs,<br><br>v.<br><br>TCL COMMUNICATION TECHNOLOGY HOLDINGS, LTD., TCT MOBILE LIMITED, AND TCT MOBILE (US), INC.,<br><br>Defendants. | Civil Action No. 2:15-cv-00011-RSP<br><br>JURY TRIAL |

**ERICSSON'S SUR-REPLY REGARDING DEFENDANTS' MOTION FOR NEW TRIAL PURSUANT TO FED. R. CIV. P. 59 (a)**

## I.     THE JURY'S AWARD DID NOT INCLUDE UNACCUSED PRODUCTS

After TCL prevailed on its requested jury instruction, in closing arguments, Ericsson told the jury in no uncertain terms that it requested only damages for accused products, and that it was limiting damages for future sales through the first quarter of 2020. 12/7 Trial Tr. at 67:24-68:9. TCL selectively quotes Ericsson's closing argument reference to damages going "out three years," while ignoring the statements that immediately followed telling the jury that Ericsson's $125 million ask includes only "products that are out on the market" and "stop[s] at 2020, the first quarter." *Id*. As explained in Ericsson's opposition, TCL's own expert similarly projected sales of accused products through the first quarter of 2020, the Court expressly instructed the jury to award damages for only future sales of accused products, and counsel for both parties repeatedly emphasized during closing arguments that any damages award should only include sales of accused products sold through the first quarter of 2020. Dkt. 443 at 1-3.[1]

Further, TCL waived its right to request a new trial. TCL now complains that Ericsson's statements in closing argument that it was (1) seeking $125 million based on infringement "going out three years," and (2) giving TCL a "free" license from 2020-2024, justify a new trial, but TCL did not object at the time these statements were made, nor did it seek a mistrial before submitting the case to the jury. Despite TCL's suggestion to the contrary, it never filed a *Daubert* on either issue, and TCL fails to even address *Nissho*, which required TCL to choose one of three options if it believed Ericsson's arguments were improper: (1) object when the statements were made; (2) seek a mistrial before submitting the case to the jury; or (3) roll the dice with the jury. *Nissho-Iwai Co. v. Occidental Crude Sales*, *Inc*., 848 F.2d 613, 619 (5th Cir.

---

[1] TCL's suggestion that the parties had a stipulation to not seek damages for products released after June 16, 2017 is not true. The parties agreed that a judgment for damages "through the time of trial" would not extinguish claims for infringement as to those products. Dkt. 308 ¶ 3. This stipulation was never intended to preclude Ericsson from seeking an alternative lump sum damages judgment through the life of the patent.

1988) ("Nissho chose to submit the case to the jury. Not until its strategy failed did Nissho register its first complaint about Occidental's closing argument. Nissho is now barred 'from urging the improper arguments as grounds for a new trial after the jury has returned its verdict'"). TCL chose to take its chances with the jury verdict. Buyer's remorse is not a remedy for waiver.

## II.  ERICSSON'S DAMAGES MODEL WAS NOT PREJUDICIAL

TCL chose to resolve its complaints with regard to Ericsson's $245 million lump sum damages model with a very specific jury instruction. 12/7 Trial Tr. at 25:21-26:4. TCL obtained this instruction over Ericsson's objection and made the strategic choice to submit this case to the jury. If TCL believed that Ericsson's $245 million damages calculation was inherently prejudicial, it was obligated to request a mistrial before this case was submitted to the jury. *Nissho*, 848 F.2d at 619. Presumably, TCL was satisfied that the jury instruction was sufficient to remedy any alleged prejudice. Now that TCL's strategic choice did not pan out, TCL cannot change course and seek a mistrial.

Regarding *Uniloc*, TCL fails to address the obvious difference between the inflammatory **$19 billion** irrelevant revenue figure presented to the jury in *Uniloc*, and Ericsson's lump sum projections through 2024 ($245 million) rather than 2020 ($125 million). The Court instructed the jury on this exact issue and the jury is presumed to have followed the Court's instruction. *Wellogix inc. v. Accenture, LLP*, 716 F.3d 867, 876 (5th Cir. 2013). TCL provides no reasoned basis for assuming the jury did not do so here.

## III.  ERICSSON DID NOT PRESENT ANY PREJUDICIAL OR MISLEADING ARGUMENT TO THE JURY

TCL cannot deny that (1) it uses two types of accounting to calculate profit, (2) its expert chose to use the more favorable accounting metric to present a low profit figure to the jury, and (3) the accounting method TCL selected includes an accrual for unpaid patent royalties due to

Ericsson and others. 12/05 PM Trial Tr. at 63:1-64:11. Given this, it is hard to understand how TCL believes the testimony on this topic was false or unfairly prejudicial, especially when it was elicited by a question from TCL's own attorney. TCL seems to be focused on Ericsson's use during redirect examination of the colloquial expression that the two accounting methods were "two sets of books," but Ericsson's statement was entirely accurate in the context of TCL's accounting practices, as evidenced by Mr. Mills' testimony and TCL's failure to present any testimony to the contrary.

None of the testimony that TCL cited from the CDCA action (Dkt. 429-3 ¶ 281, 286, 287) supports TCL's contention that TCL's IPR reserve is exclusively for standard essential patents. But regardless, TCL entirely misses the point. Ericsson never said at trial that the reserve was for this particular patent; rather, Ericsson showed the jury that TCL was misrepresenting its profits because it was accruing an unpaid cash reserve for patent royalties that TCL is not actually paying anyone. 12/5 PM Trial Tr. at 63:1-64:19.

Finally, Ericsson never made any pejorative statements about the nationality of TCL's executives. Simply referencing a party's nationality is not pejorative, as evidenced by the fact that TCL's counsel used the phrases "Chinese companies" or "Chinese executives" at least eleven times during *voir dire*. 12/4 AM Trial Tr. at 68:18-71:16. In fact, the parties specifically agreed they would be permitted to do so. TCL originally proposed a motion in *limine* precluding "evidence or argument relating to the geographic location of any party or nationality of any witness." Ex. 1 (Oct. 20, 2017 email from B. Cangro to N. Mathews). During the meet and confer process, the parties agreed to a modified version of this motion in *limine* as follows: "Cannot use pejorative language to describe a party or witnesses nationality or country or origin. Parties may refer factually to where particular witnesses or entities are located." Ex. 2 (Oct. 20,

2017 email from N. Mathews to B. Cangro). The parties memorialized this agreement in an agreed motion in *limine* precluding "pejorative" references to the nationality of any party. Dkt. No. 377.

TCL's cited cases are inapposite. In *Commil*, counsel made repeated anti-Semitic references about a party to the lawsuit. *Commil USA, LLC. v. Cisco Sys. Inc.*, 2:07-cv-00341-JRG, 2010 WL 11484496, at *2 (E.D. Tex. Dec. 29, 2010). In *Whitehead*, counsel repeatedly vilified the defendant in various manners and ignored the district court's instructions to the contrary, going so far as to speculate that the victim's last thought before her death would be her rape. *Whitehead v. Food Max of Mississippi Inc.*, 163 F.3d 265, 277 (5th Cir. 1998). Finally, in *Hall*, the court's decision to grant a new trial was expressly not based solely on the inappropriate conduct of counsel, which included statements that the witness "flouted respect for marriage vows," "had used illegal drugs," and "was trying to take advantage of the good people of rural northern Mississippi," but rather on the fact that the damages award was inadequate to compensate for injuries for which there was uncontroverted evidence. *Hall v. Freese*, 735 F.2d 956, 958, 961-62 (5th Cir 1984).

## IV. THE SAMSUNG PAYMENTS WERE HIGHLY RELEVANT TO REBUTTING TCL'S DAMAGES THEORIES

TCL's damages model was based on an unaccepted offer Ericsson made to Samsung for a license to Ericsson's implementation patent portfolio, in the context of broader negotiations involving a cross-license to both Ericsson's and Samsung's entire patent portfolios. 12/6 AM Trial Tr. at 140:4-9. Those negotiations eventually resulted in a cross-license involving a large cash payment to Ericsson. 12/5 PM Sealed Trial Tr. at 2:21-3:1. The Court should deny TCL's motion because it was TCL that put the amount of the Samsung license at issue by basing its damages model on Ericsson's offer made in the midst of those negotiations. This was addressed

4

at the motion in *limine* stage, and the Court expressly ruled that TCL's reference to the negotiation offer made the financial and business terms of the final Samsung agreement relevant. Ericsson complied with the letter and spirit of the Court's ruling.

## V.     CONCLUSION

For the foregoing reasons, the Court should deny TCL's Motion for a New Trial.

| | |
|---|---|
| Dated: February 7, 2018 | **MCKOOL SMITH, P.C.**<br><br>*/s/ Theodore Stevenson III*<br>Theodore Stevenson III, Lead Attorney<br>Texas State Bar No. 19196650<br>tstevenson@mckoolsmith.com<br>David Sochia<br>Texas State Bar No. 00797470<br>dsochia@mckoolsmith.com<br>Warren Lipschitz<br>Texas State Bar No. 24078867<br>wlipschitz@mckoolsmith.com<br>Nicholas Mathews<br>Texas State Bar No. 24085457<br>nmathews@mckoolsmith.com<br>Mitchell R. Sibley<br>Texas State Bar No. 24073097<br>msibley@mckoolsmith.com<br>**MCKOOL SMITH, P.C.**<br>300 Crescent Court Suite 1500<br>Dallas, TX 75201<br>Telephone: (214) 978-4000<br>Telecopier: (214) 978-4044<br><br>Samuel F. Baxter<br>Texas State Bar No. 01938000<br>sbaxter@mckoolsmith.com<br>**MCKOOL SMITH, P.C.**<br>P.O. Box O<br>Marshall, Texas 75671<br>Telephone: (903) 927-2111<br>Telecopier: (903) 927-2622<br><br>**ATTORNEYS FOR PLAINTIFFS ERICSSON INC., AND TELEFONAKTIEBOLAGET LM ERICSSON** |

6

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on February 7, 2018.

                                                */s/ Nicholas M. Mathews*
                                                Nicholas M. Mathews