# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| **ERICSSON INC., AND TELEFONAKTIEBOLAGET LM ERICSSON,**<br><br>Plaintiffs,<br><br>v.<br><br>**TCL COMMUNICATION TECHNOLOGY HOLDINGS, LTD., TCT MOBILE LIMITED, AND TCT MOBILE (US), INC.,**<br><br>Defendants. | **Civil Action No. 2:15-cv-00011-RSP**<br><br>**JURY TRIAL** |

## DEFENDANTS' OPPOSITION TO MOTION FOR LEAVE TO SERVE A SUPPLEMENTAL CONSUMER SURVEY REPORT

Defendants TCL Communication Technology Holdings, Ltd., TCT Mobile Limited, and TCT Mobile (US), Inc. (collectively, "TCL") oppose Plaintiffs Ericsson Inc. and Telefonaktiebolaget LM Ericsson's (collectively, "Ericsson's") Expedited Motion for Leave to Serve a Supplemental Consumer Survey Report.

In its order granting a new trial, this Court granted the parties leave to amend their damages reports "[b]ecause the primary problem with the damages evidence relates to Mr. Mills' opinion." Dkt. 456 at 16 ("New Trial Order"). Rather than cure the problem with Mr. Mills' opinion identified by this Court, Ericsson now seeks leave to perform some new, unidentified survey.

For at least four reasons, Ericsson cannot satisfy its burden to show that this Court should grant leave to Ericsson to conduct and submit an untimely survey. First, Ericsson fails to explain—at all—what survey it seeks to conduct or how such a survey could cure the deficiencies in Mr. Mills' opinion. Without such an explanation, Ericsson cannot possibly demonstrate that the evidence has any relevance (much less importance) to the case.

Second, Ericsson fails to provide such an explanation because no survey could cure the flaws in the Mr. Mills' opinion identified by this Court in the New Trial Order. Mr. Mills "did not consider the numerous patented features on the accused phones, many of which a consumer would consider essential." New Trial Order at 11. And Mr. Mills failed to recognize that his methodology "would result in the erosion of all of TCL's profit," given that "there are many features on a phone that would likely yield survey results similar to those obtained for the '510 patent." New Trial Order at 11. Neither deficiency has anything do with the underlying survey, and neither could be cured by a new survey. Indeed, this Court expressly rejected TCL's challenge to the reliability of Ericsson's survey: "Dr. Wecker's survey is not itself unreliable." New Trial Order at 11.

1

Third, to the extent that a different survey could somehow cure the flaws in Mr. Mills' opinion, Ericsson fails to provide any excuse for its lack of diligence in conducting a proper survey in the first instance. Ericsson provides no explanation for why it could not have conducted a correct survey in the first instance. In identifying the flaws in Mr. Mills' opinion, this Court merely applied black-letter law and common sense. Ericsson chose to present an aggressive, facially-unrealistic damages model at trial and should not be rewarded with a second bite at the apple.

Fourth, TCL will suffer prejudice if Ericsson is permitted to conduct a new survey. Given the passage of time since the start of the alleged infringement, any survey would be unreliable, and TCL will be put to significant expense to rebut any new survey provided by Ericsson.

This Court should adhere its New Trial Order and limit Ericsson to amending Mr. Mills' expert report, "within reason."

## ARGUMENT AND ANALYSIS

When determining whether to permit untimely expert opinions, courts in the Fifth Circuit consider: "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir. 1990); *see also Campbell v. Keystone Aerial Surveys, Inc.*, 138 F.3d 996, 1000 (5th Cir. 1998)

Applying these factors, Ericsson should not be permitted to conduct and rely on a supplemental survey.

## I.   Ericsson Fails to Demonstrate the Importance of New Survey

The Court ordered a new damages trial due to the flaws in Mr. Mills' opinion, not any flaws in Dr. Wecker's survey. Specifically, the Court noted that a new damages trial was necessary because (1) of "the manner in which Mr. Mills used Dr. Wecker's survey results is not based on sufficient facts or data, not the product of reliable principles, and not reliably based on the facts of

2

the case;" (2) "Mr. Mills did not consider the numerous patented features on the accused phones, many of which a consumer would consider essential;" (3) "Mr. Mills did not account for how his theory would result in the erosion of all of TCL's profit;" and (4) "Ericsson presented extensive evidence at trial regarding products that were not accused in the case." New Trial Order. at 9, 11-12.

Ericsson's motion simply fails to address how any new survey could cure any of these flaws in Mr. Mills' opinion. The closest Ericsson comes is suggesting that its supplemental survey would "provide an input to Mills' damages model that does not implicate TCL's profit margins." Mot. at 3.[1]  But Ericsson never attempts to explains how any survey could possibly solve this problem with Mr. Mills' methodology.

Ericsson offers no explanation because there is none. As this Court recognized, consumers would consider numerous patented features on the accused phones to be "essential." No matter how "essential" consumers consider a feature to be, "conclud[ing] that any one of these features—simply because it is considered essential to a consumer—could account for as much as a quarter of TCL's total profit is unreliable and does not consider the facts of the case, particularly the nature of smartphones and the number of patents that cover smartphone features." New Trial Order at 11. Not only is no survey needed "to address the Court's concerns," Mot. at 2, but no survey could possibly cure Mr. Mills' failure to consider the nature of smartphones and the number of patents that cover them.

---

[1] Dr. Wecker's survey already contains a "willingness to pay figure." Decl. of N. Matthews, Ex. 1 (Dkt. 462-2) at 3; *see also* Ericsson's Motion for Reconsideration at 10 (Dkt. 468) (referring to "willingness-to-pay" analysis in Dr. Wecker's report). That Ericsson elected to present only Dr. Wecker's "willingness to buy" analysis at trial (*id*. at 2), does not justify conducting a new survey.

3

Without actually explaining the new survey that it seeks to conduct—and thus demonstrating how the new survey would cure the problems in its damages methodology—Ericsson has failed to carry its burden to show the importance (or, indeed, even the relevance) of its proposed additional survey.

Ericsson contends that a new survey is warranted given that the Court approved its damages evidence at the pre-trial *Daubert* stage. Mot. at 2. But this Court's position regarding Dr. Wecker's survey has not changed. In denying TCL's *Daubert* motion, the Court found that "Dr. Wecker's questions concerning permission and access features of a mobile phone relate to the allegedly infringing features" and that TCL's challenges "go to the testimony'[s] weight, but not its admissibility." Dkt. 359 at 21.

The New Trial Order is perfectly consistent. Indeed, this Court reaffirmed its conclusion that "Dr. Wecker's survey is not itself unreliable," that "[t]he survey question regarding the scope of the '510 patent claims was sufficiently tailored to what the claims purport to cover," and that its "alleged flaws go to the weight of the evidence, not its admissibility." New Trial Order at 11-12. No inconsistency between the *Daubert* ruling and the New Trial Order justifies a new survey.

## II. Ericsson Fails to Explain its Failure to Conduct a Proper Survey Before Trial

Even assuming that Ericsson could somehow conduct a survey that would cure the flaws in Mr. Mills' opinion, Ericsson has failed to provide any explanation for why it did not conduct such a survey in the first instance.

There does not appear to be any dispute that Ericsson could have asked additional (or different questions) in the first survey conducted by Dr. Wecker. To the extent that Ericsson failed to ask questions that it now believes are necessary to present a reliable damages model, the fault is Ericsson's.

4

This Court's New Trial Order should not have come as a surprise. As this Court recognized, Ericsson's approach to damages was "unrealistic." New Trial Order at 10. Under Ericsson's approach, any "essential" feature on a cell phone "could independently be worth more than a quarter of TCL's profit." New Trial Order at 10. Given that consumers would consider numerous features to be "essential," Mr. Mills' damages methodology dramatically overvalued patented features, quickly "erod[ing] all of TCL's profit." New Trial Order at 11. There is no serious argument that in a phone covered by "at least a thousand implementation patents," a producer would have agreed to pay more than a quarter of its profit to license a single patent.

Ericsson now suggests (as discussed above, without any explanation) that it could conduct some superior survey, which would avoid the absurd results of its first damages model. *See* Mot. at 3 (suggesting that a better survey could avoid "implicat[ing] TCL's profit margins"). But if such a survey exists, Ericsson never explains why it did not conduct this survey in the first instance.

With no explanation offered by Ericsson, the inference is clear: Ericsson intentionally chose not to conduct the reliable survey it now proposes, in favor of a survey that would support an inflated and "unrealistic" damages model. Ericsson's conscious choice to present an unreliable damages model at trial does not justify permitting Ericsson to conduct a new, realistic survey now that the flaws its original damages methodology have been recognized.

### III. A New Survey Would Unfairly Prejudice TCL

Finally, a new survey would unfairly prejudice TCL, and such prejudice could not be cured by continuance. TCL worked diligently with its survey expert, Dr. Ravi Dhar, and invested substantial resources and effort to rebut Dr. Wecker's original survey. Survey experts are expensive.[2] Ericsson itself recognizes that survey expert analysis "is an expensive and time-

---

[2] *See* 12/5/17 AM Tr. at 89:12 (Dr. Wecker rate of $750/hour); 12/6/17 AM Tr. at 96:11 (Dr. Dhar rate of $795/hour).

5

consuming undertaking." Dkt. No. 463 at 1. Permitting Ericsson to conduct a second survey would significantly (and unnecessarily) increase TCL's cost of defending against Ericsson's claims. If Ericsson is granted leave, TCL would be required to prepare a new expert report rebutting the second survey, conduct a second deposition of Dr. Wecker, and prepare Dr. Dhar for deposition on the rebuttal report.

Moreover, any survey conducted now would likely be less reliable than the original survey, given that even more time has passed since the 2010 hypothetical negotiation. A 2018 survey regarding consumer's smartphones would have even less relevance to a hypothetical negotiation in 2010 than Dr. Wecker's 2015 survey. As trial testimony reflected, "Nobody keeps in the memory of a phone a minor feature like this that they bought three months ago." Tr. 12/6/17 AM 103:10-106:14. The unreliability of memory will lead to an unreliable survey and cause significant harm if it provides the basis for damages against TCL.

No continuance could cure this type of prejudice.

## CONCLUSION

There is ample evidence already in the record for Mr. Mills to use in forming a new damages opinion. Ericsson's past licensing practices form the best possible evidence of the value of the '510 Patent, which Ericsson offered to license ███████████████ for ███████████ New Trial Order at 7. Such an approach to damages, which is based on Ericsson's actual licensing practices, properly accounts for "the facts of the case, particularly the nature of smartphones and the number of patents that cover smartphone features." *Id.* at 11. Ericsson has no need of a survey to present reliable evidence of damages and fails to show how conducting a new survey would cure the flaws in Mr. Mills' methodology.

Moreover, denying Ericsson's motion would be consistent with this Court's previous rulings. Before trial, this Court granted Ericsson's motion to strike Dr. Ligatti's report, noting that

6

"[i]t was never intended that either party would introduce new theories or new experts into the case," Dkt. 359 at 22, and granted Ericsson's motion to strike TCL's non-infringing alternatives that were not disclosed during fact discovery. Dkt. 359 at 23-29. In the same way that this Court did not permit TCL to present Dr. Ligatti's testimony or other testimony regarding certain non-infringing alternatives, this Court should refuse to permit Ericsson to conduct and introduce a new survey.

    For the foregoing reasons, this Court should deny Plaintiffs' Motion For Leave.

| | |
|---|---|
| Dated: March 28, 2018 | */s/Michael F. Carr*<br>Winstol D. Carter, Jr.<br>State Bar No. 03932950<br>winn.carter@morganlewis.com<br>Adam A. Allgood<br>State Bar No. 24059403<br>adam.allgood@morganlewis.com<br>**Morgan, Lewis & Bockius LLP**<br>1000 Louisiana Street, Suite 4000<br>Houston, Texas 77002<br>Telephone: 1.713.890.5000<br>Facsimile: 1.713.890.5001<br><br>Bradford A. Cangro (Admitted in TXED)<br>D.C. Bar No. 495996<br>bradford.cangro@morganlewis.com<br>Jacob A. Snodgrass (Admitted *Pro Hac Vice*)<br>jacob.snodgrass@morganlewis.com<br>**Morgan, Lewis & Bockius LLP**<br>1111 Pennsylvania Avenue, NW<br>Washington, D.C. 20004<br>Telephone: 1.202.739.3000<br>Facsimile: 1.202.739.3001<br><br>Michael F. Carr (Admitted *Pro Hac Vice*)<br>michael.carr@morganlewis.com<br>**Morgan, Lewis & Bockius LLP**<br>2 Palo Alto Square<br>3000 El Camino Real, Suite 700<br>Palo Alto, CA 94306<br>Telephone: 1.650.843.4000<br>Facsimile: 1.650.843.4001<br><br>**ATTORNEYS FOR DEFENDANTS TCL COMMUNICATION TECHNOLOGY HOLDINGS LTD., TCT MOBILE LIMITED, and TCT MOBILE (US), INC.** |

**CERTIFICATE OF SERVICE**

The undersigned certifies that on March 28, 2018, counsel of record who are deemed to have consented to electronic service are being served with a copy of this document by electronic mail.

                                                */s/ Michael F. Carr*
                                                Michael F. Carr

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that authorization to file this document and accompanying exhibits under seal was provided by the Protective Order, Dkt. No. 39, entered in this matter.

                                                */s/ Michael F. Carr*
                                                Michael F. Carr