## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| ERICSSON INC., AND TELEFONAKTIEBOLAGET LM ERICSSON, <br><br> **Plaintiffs,** <br><br> v. <br><br> TCL COMMUNICATION TECHNOLOGY HOLDINGS, LTD., TCT MOBILE LIMITED, AND TCT MOBILE (US), INC., <br><br> **Defendants.** | Civil Action No. 2:15-cv-00011-RSP <br><br><br> JURY TRIAL |

**TCL'S OPPOSITION TO ERICSSON'S MOTION FOR RECONSIDERATION OF THIS COURT'S ORDER GRANTING TCL'S MOTION FOR A NEW TRIAL ON DAMAGES (DKT. 456)**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   LEGAL STANDARD ........................................................................................... 2

III.  ARGUMENT ........................................................................................................ 3

    A.    This Court Correctly Found Mr. Mills' Methodology to be Unreliable ............... 3

        2.    This Court Did Not Assume That TCL's Profit Capped Damages .......... 6

        3.    A New Damages Trial Was Ordered Due to Mr. Mills' Failure to Consider Other Features, Not Patent Hold-Up or Royalty Stacking ........ 8

    B.    Alternative "Willingness-to-Pay" and "Price Sensitivity" Analyses Were Never Presented to the Jury ...................................................................... 9

    C.    Any Remittitur Could Not Have Exceeded $2,465,000 .................................... 12

    D.    This Court Correctly Found That Ericsson Presented "Extensive Evidence at Trial" Regarding Unaccused Products .......................................... 13

IV.   CONCLUSION .................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Apple, Inc. v. Samsung Elec. Co.*,
No. 12-cv-00630, 2014 U.S. Dist. LEXIS 24506 (N.D. Cal. Feb. 25, 2014) ...........................5

*Commonwealth Sci. & Indus. Research Org. v. Cisco Sys.*,
809 F.3d 1295 (Fed. Cir. 2015)...........................................................................................8, 9

*Dixon v. Int'l Harvester Co.*,
754 F.2d 573 (5th Cir. 1985) .................................................................................................13

*E-Watch, Inc. v. Apple Inc.*,
No. 2:13-cv-1061-RSP-JRG, 2016 WL 7665427 (E.D. Tex. Oct. 3, 2016) ...........................2

*EON Corp. IP Holdings, LLC v. Landis+Gyr Inc.*,
No. 6:11-CV-317-JDL, 2014 WL 6466663 (E.D. Tex. Nov. 14, 2014).................................12

*Ericsson v. D-Link*,
773 F.3d 1201 (Fed. Cir. 2014)................................................................................................8

*eTool Dev't, Inc. v. Nat'l Semiconductor Corp.*,
881 F. Supp. 2d 745 (E.D. Tex. 2012) (Bryson, J.) .................................................................2

*Exmark Manuf. Co. Inc., v. Briggs & Stratton Power Prods. Group, LLC*,
879 F.3d 1332 (Fed. Cir. 2018)................................................................................................9

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
879 F.3d 1299 (Fed. Cir. 2018)................................................................................................9

*Garretson v. Clark*,
111 U.S. 120 (1884)..................................................................................................................6

*Gasperini v. Ctr. for Humanities, Inc.*,
518 U.S. 415 (1996)................................................................................................................13

*Helena Labs. Corp. v. Alpha Scientific Corp.*,
483 F. Supp. 2d 538 (E.D. Tex. 2007)......................................................................................3

*Hernandez v. M/V Raajan*,
841 F.2d 582 (5th Cir. 1988) .................................................................................................13

*In re Benjamin Moore & Co.*,
318 F.3d 626 (5th Cir. 2002) ..............................................................................................1, 2

*Krim v. pcOrder.com, Inc.*,
212 F.R.D. 329 (W.D. Tex. 2002) ......................................................................................2, 14

## TABLE OF AUTHORITIES
(continued)

Page

*Landes Constr. Co. v. Royal Bank of Canada*,
    833 F.2d 1365 (9th Cir. 1987) ........................................................................10

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    2010 WL 2331311 (E.D. Tex. June 9, 2010), *aff'd*, 694 F.3d 51 (Fed. Cir.
    2012) ................................................................................................................12

*LaserDynamics v. Quanta Comp. Corp.*,
    694 F.3d 51 (Fed. Cir. 2012).............................................................................4

*Lucent Technologies, Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009)..........................................................................8

*Lucent Techs., Inc. v. Microsoft Corp.*,
    837 F. Supp. 2d 1107 (S.D. Cal. Nov. 10, 2011) ..............................................5

*Salinas v. O'Neill*,
    286 F.3d 827 (5th Cir. 2002) ...........................................................................12

*Sentius Int'l, LLC v. Microsoft Corp.*,
    No. 5:13-cv-00823, 2015 U.S. Dist. LEXIS 10423 (N.D. Cal. Jan. 27, 2015)......................4, 5

*Simon v. United States*,
    891 F.2d 1154 (5th Cir. 1990) .........................................................................12

*Smartflash LLC v. Apple Inc.*,
    No. 6:13-cv-447-JRG-KNM, 2015 WL 4208754 (E.D. Tex. July 7, 2015).............................3

*Templet v. HydroChem Inc.*,
    367 F.3d 473 (5th Cir. 2004) .......................................................................3, 12

*Tex. Instruments, Inc. v. Hyundai Elecs Indus., Co.*,
    50 F. Supp. 2d 619 (E.D. Tex. 1999).................................................................3

*Williams v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*,
    470 F. App'x 309 (5th Cir. 2012) (unpublished) ...........................................3, 12

## I.    <u>INTRODUCTION</u>

Defendants TCL Communication Technology Holdings, Ltd., TCT Mobile Limited, and TCT Mobile (US), Inc. (collectively, "TCL") oppose Plaintiffs Ericsson Inc. and Telefonaktiebolaget LM Ericsson's (collectively, "Ericsson") Motion for Reconsideration of this Court's Order granting a new trial on damages ("Mot.").

Motions to reconsider serve a very limited purpose.  Only three grounds permit reconsideration: "(1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or to prevent manifest injustice." *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002).  Ericsson presents none of these grounds.  Ericsson cites no controlling authority, much less any change in authority, governing this Court's Order.  Nor does Ericsson cite any new evidence or identify any clear error that casts doubt on this Court's Order.

Ericsson's Motion is based upon three arguments, each of which lacks merit.  *First*, Ericsson contends that this Court's Order is inconsistent with the holdings of other district courts.  But none of these cases are binding on this Court.  No appellate court has condoned Ericsson's damages methodology.  Moreover, the damages methodologies used in the cases cited by Ericsson are different from Ericsson's income approach which failed to account for the value of non-infringing features on the accused phones.

*Second*, Ericsson argues that alternative damages methodologies could support the jury's damages award.  Ericsson relies upon inapplicable, Ninth Circuit cases and cites no evidence that the jury could have relied upon to calculate damages under any alternative method.  Ericsson only cites to cross-examination of Dr. Wecker regarding the income approach wherein a portion of an exhibit, PX109, was shown to the jury.  There is no indication that any figures on that page related to Ericsson's newly proposed alternative methods were ever shown to the jury, and no

1

witness ever mentioned these methods, much less explained them to the jury. Thus, the maximum amount that the jury could have properly awarded was $2,465,000, as discussed by TCL's damages expert, Christopher Martinez.

*Third*, Ericsson contends that this Court "did not address" its argument regarding unaccused products. Mot. at 1. Not so. This Court correctly rejected Ericsson's argument that it cured the highly prejudicial evidence of damages based on projected sales of unaccused products by reducing its damages ask in closing. As noted by this Court, "Ericsson presented extensive evidence at trial regarding products that were not accused in the case." Mem. and Order (Dkt. 456) ("Order") at 12. Ericsson does not dispute that it presented this improper evidence at trial.

None of Ericsson's arguments provides any basis for reconsideration, and its motion should be denied.

## II.    LEGAL STANDARD

Ericsson does not invoke any specific rule governing its motion to reconsider. Regardless of the specific basis, "[m]otions to reconsider serve a very limited purpose: 'to permit a party to correct manifest errors of law or fact, or to present newly discovered evidence.'" *E-Watch, Inc. v. Apple Inc.*, No. 2:13-cv-1061-RSP-JRG, 2016 WL 7665427, at *1 (E.D. Tex. Oct. 3, 2016) (quoting *Krim v. pcOrder.com, Inc.*, 212 F.R.D. 329, 321 (W.D. Tex. 2002)). There are three grounds that warrant granting a motion to reconsider: "(1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or to prevent manifest injustice." *E-Watch*, 2016 WL 7665427, at *1 (quoting *In re Benjamin Moore & Co.*, 318 F.3d at 629); *eTool Dev't, Inc. v. Nat'l Semiconductor Corp.*, 881 F. Supp. 2d 745, 750 (E.D. Tex. 2012) (Bryson, J.) (finding reconsideration not warranted where "there has been no change in intervening law, nor has [the movant] presented any new evidence not previously available to it").

2

The Fifth Circuit has held that a motion for reconsideration "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004); *Williams v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*, 470 F. App'x 309, 313 (5th Cir. 2012) (unpublished) ("Motions to reconsider cannot be used to raise arguments which could, and should, have been made before the judgment issued."). Motions for reconsideration should also not be used "to re-urge matters that have already been advanced by a party." *Tex. Instruments, Inc. v. Hyundai Elecs Indus., Co.*, 50 F. Supp. 2d 619, 621 (E.D. Tex. 1999) ("A motion to reconsider based on recycled arguments only serves to waste the resources of the court."); *Smartflash LLC v. Apple Inc.*, No. 6:13-cv-447-JRG-KNM, 2015 WL 4208754, at *1 (E.D. Tex. July 7, 2015) ("litigants are expected to present their strongest case when the matter is first considered."); *Helena Labs. Corp. v. Alpha Scientific Corp.*, 483 F. Supp. 2d 538, 539 (E.D. Tex. 2007) ("A motion for reconsideration is not the proper vehicle for rehashing old arguments or advancing legal theories that could have been presented earlier.").

## III.    ARGUMENT

### A.    This Court Correctly Found Mr. Mills' Methodology to be Unreliable

Ericsson's Motion for Reconsideration merely reargues its response to TCL's Motion for a New Trial. This Court correctly rejected Ericsson's arguments and found Mr. Mills' damages calculation to be unreliable based on "at least two independent reasons," his "direct[] translat[ion]" of Dr. Wecker's survey results into "at-risk" profits was "unrealistic," and "Ericsson presented extensive evidence at trial regarding products that were not accused in the case." Order at 9-12. Ericsson presents no basis for reconsideration of these conclusions.

### 1.    Ericsson Relies Upon Inapplicable, Nonbinding Case Law

None of the cases cited by Ericsson are binding on this Court. No appellate court has

3

condoned Ericsson's damages methodology.  In ordering a new damages trial, this Court did not "depart[] from the line of cases approving this exact approach," as Ericsson suggests, because the income approaches in those cases are not "the exact methodology" used by Ericsson here.  Mot. at 5-6.  Nor did this Court hold that the "income approach" is *per se* unreliable.

Ericsson cited to *Sentius* in opposing TCL's Motion for a New Trial, contending that its damages evidence sufficiently accounted for unpatented features.  *See* Dkt. 443 (citing *Sentius Int'l, LLC v. Microsoft Corp.*, No. 5:13-cv-00823, 2015 U.S. Dist. LEXIS 10423, at *38-39 (N.D. Cal. Jan. 27, 2015)).  This Court correctly rejected that argument due to the flaws in Mr. Mills' analysis in this case.

The court in *Sentius* granted much of Microsoft's motion to exclude Mr. Mills' opinion but allowed his "income approach," noting that "Mills did not derive damages using Microsoft's revenue and profit from all sales of the accused products."  *Id.* at *39.  In contrast, this Court recognized that Mr. Mills derived his damages testimony in this case using TCL's profit from all sales of the accused products.  Order at 4 ("Mr. Mills' calculation was a roundabout way of multiplying 28% by TCL's average profit per device . . . ").[1]

Moreover, in *Sentius*, the product at issue was Microsoft Office and the accused functionality was the spelling and grammar check features of the product.  2015 U.S. Dist. LEXIS 10423 at *8-9.  The survey compared the accused product with and without the accused spell and grammar check features.  *Id.* at *12.  This is in contrast to this case, where Mr. Mills

---

[1] Thus, this Court correctly recognized the flaw in Ericsson's argument that it did not "calculate[] its royalty on the total profits or revenue of the accused device—thus not implicating EMVR." Mot. at 7, n. 6.  Mr. Mills indisputably calculated his royalty based on a percentage of TCL's average profit per unit.  This is contrary to law.  *See LaserDynamics v. Quanta Comp. Corp.*, 694 F.3d 51, 67 (Fed. Cir. 2012) (that consumers would not purchase product without patented feature does not justify "damages as a percentage of revenues **or profits** attributable to the entire product.") (emphasis added).

relied on Dr. Wecker's comparison of products with two different, but related functionalities, neither of which correspond to the patentable and unpatentable features.  In addition, the *Sentius* case did not go to trial, so the methodology was not addressed in a motion for new trial or an appeal.  Therefore, the *Sentius* court, unlike here, did not have benefit of seeing how all the damages evidence came together at trial.

In *Apple, Inc. v. Samsung Elec. Co.*, No. 12-cv-00630, 2014 U.S. Dist. LEXIS 24506 (N.D. Cal. Feb. 25, 2014), the damages expert relied upon a "conjoint survey" that included not only the "patented features," but also "distraction features . . . featured in Samsung guides and manuals" and "[e]ach respondent chose sixteen hypothetical smartphones from sixteen sets of four profiles."  *Id*. at *60-61.  In contrast, Mr. Mills took no such steps to account for unpatented features.  This Court correctly recognized that "Mr. Mills did not consider the numerous patented features on the accused phones, many of which a consumer would consider essential, assuming Dr. Wecker's survey results were extrapolated."  Order at 11.

The district court's decision in *Lucent* supports this Court's rejection of Mr. Mills' damages analysis.  In *Lucent*, the court conditionally granted a new trial motion finding that the royalty base of $67 as "the value of Outlook" was flawed because the expert "failed to properly apportion between the patented and unpatented features of Outlook in a way that separates out from the royalty base the portion that can be attributed to the Day patent technology."  *Lucent Techs., Inc. v. Microsoft Corp.*, 837 F. Supp. 2d 1107, 1118 (S.D. Cal. Nov. 10, 2011).  Similarly, here, Mr. Mills did not consider the numerous features on the accused phones that contributed to their value.  *See* Order at 11.  That Mr. Mills used TCL's profit instead of TCL's revenue makes no difference.  This Court correctly found that Mr. Mills did not consider the value that other features contributed to TCL's profit.

No authority cited by Ericsson calls this Court's Order into question.

5

### 2.     This Court Did Not Assume That TCL's Profit Capped Damages

Ericsson next contends that this Court used TCL's profit margin as a "cap on royalties." Mot. at 7-9. This Court did not rule that TCL's profit was a cap on damages. Nor did TCL argue that it was. Instead, this Court correctly noted that Mr. Mills' "direct[] translat[ion of] the roughly 28% of survey respondents who allegedly would not have bought a TCL phone without the infringing feature to TCL's profit" to "determine the potential 'at-risk' profit" was "unreliable." Order at 10.

This Court founds that Mr. Mills' "conclusion is unreliable for at least two reasons": (1) "Mr. Mills did not consider the numerous patented features on the accused phones, many of which a consumer would consider essential," and (2) "Mr. Mills did not account for how his theory would result in the erosion of all of TCL's profit." *Id*. at 11. That Mr. Mills' damages figure was a large portion of TCL's profit simply exposed the unreliability of his opinion. *See id*. at 10 ("It is not difficult to see how [Mr. Mills'] lost profit number quickly becomes unrealistic."). This Court noted the undisputed evidence that "consumers would likely find numerous [accused phone] features essential." *Id*. Thus, Mr. Mills' opinion "that any one of these features—simply because it is considered essential to a consumer—could account for as much as a quarter of TCL's total profit is unreliable and does not consider the facts of the case, particularly the nature of smartphones and the number of patents that cover smartphone features." *Id*. at 11. This Court, therefore, correctly concluded that Mr. Mills' opinion was unreliable because, contrary to binding case law, it failed to account for the contribution of unpatented features to TCL's profits, not because it exceeded a cap on royalties. *See Garretson v. Clark*, 111 U.S. 120, 121 (1884).[2]

---

[2] This Court did not expressly find "that Mills' application of the Wecker Survey did not violate principles of 'apportionment' or the 'entire-market value rule,'" as Ericsson suggests. Mot. at 4.

This Court's observation that Mr. Mills' damages "would result in the erosion of all of TCL's profit" further supports this Court's conclusion that Mr. Mills' damages opinion was "not reliably based on the facts of the case." Order at 9-10.  Even Mr. Mills agreed that "Ericsson could not reasonably expect to receive a royalty equal to the entire value realized by TCL … because such a royalty would leave TCL with little or no incentive to take a license." *See* 12/5/17 PM Tr. 71:13-23 ("Q. Do you still agree with that?  A. I do, yeah.").  But under Mr. Mills' damages theory, each of the several "must have" features on an accused phone would be assigned 100% of TCL's profit.  This Court's New Trial Order correctly recognized the logical errors in this damages theory.

Consider, for example, how Mr. Mills' analysis in this case would be applied to a survey about a car, which has any number of essential features.  One would imagine that 100% of customers would not buy a car that had no engine, would not buy a car without brakes, would not buy a car without wheels, and would not buy a car without a steering wheel.  The list is endless.  But under Mr. Mills' approach, the value of each one of these features "is the profits [the manufacturer] stands to lose without those sales," Mot. at 6, *i.e.*, all of the car manufacturer's profits.  This methodology leads to absurd results and is, on its face, absurd.

Ericsson attempts to explain away this Court's observation that "by removing three features covered by three Ericsson patents, TCL would have lost about 64% of its profit."  Order at 10.  Ericsson suggests that this observation is "not correct" because Mr. Mills discounted the combined values of the patented features.  Mot. at 7 n.7.  Mr. Mills, however, did not do any such discounting a trial.  12/5/17 PM Tr. 69:15-22 ("Q. Now, in your first report, you adjusted this 28.4 percent estimated persons who would not have purchased the phone down to 17 percent, didn't you? A. Yes, I did. Q. But you didn't do that in your most recent expert report, right? A. No, no, it wouldn't be appropriate to do that here, given -- given the facts of the case

7

now."); *see also id.* at 70:3-10 ("You didn't make a similar rounding down in your opinion for today's damages figure; is that right? A. That's right.").

Moreover, Ericsson's argument only underscores the illogic of its damages model.  To avoid the absurdity that results when Mr. Mills' damages methodology is applied to multiple individual features, Ericsson now suggests that the combination of three features has a value that is less than the combined value of the three features considered individually.  Mot. at 7 n.7.  That is, Ericsson now appears to recognize that viewing an individual feature, on its own, leads to an incorrect measurement of damages.  As this Court recognized, properly measuring damages required consideration of the "many patented features, . . . that, according to Dr. Wecker's survey results, consumers would likely find numerous features essential."  Order at 10.  Mr. Mills simply failed to perform this analysis, which even Ericsson apparently now recognizes as necessary.  This Court's observation that Mr. Mills' "lost profit number quickly becomes unrealistic" is entirely accurate.

### 3. A New Damages Trial Was Ordered Due to Mr. Mills' Failure to Consider Other Features, Not Patent Hold-Up or Royalty Stacking

Ericsson also contends that this Court ordered a new trial based upon a "royalty stacking" concern and that TCL should have presented "proof of other patents it would have to license." Mot. at 8-9.  This argument attempts to improperly shift the burden of proof to TCL.  "The burden of proving damages falls on the patentee."  *Lucent Technologies, Inc. v. Gateway*, *Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009).  TCL was not required to present evidence of patent hold-up or royalty stacking, especially when TCL did not request a jury instruction on these issues.  As such, *Ericsson v. D-Link*, 773 F.3d 1201 (Fed. Cir. 2014), which addressed when jury "[i]Instructions on patent hold-up and royalty stacking" should be given, is inapplicable.  *Id.* at 1234.  Ericsson's citation to *Commonwealth Sci. & Indus. Research Org. v. Cisco Sys.*, 809 F.3d

1295 (Fed. Cir. 2015) is also misplaced.  In *CSIRO*, the Federal Circuit identified "certain principles to aid courts in determining when an expert's apportionment model is reliable."  *Id*. at 1302.  The testimony of TCL's damages expert, Mr. Martinez, was based upon Ericsson's licensing history, not "abstract recitations of royalty stacking theory."  *Id*.

Moreover, Ericsson's own witnesses agreed that customers value many features on a phone.  12/4/17 PM Tr. 83:21-84:13; 12/5/17 AM Tr. 90:3-9, 97:6-98:17.  TCL was not required to prove whether any patents covered other features.[3]  Ericsson bore the burden to account for the value contributed by unpatented features when calculating damages for the '510 patent.  *See Finjan, Inc. v. Blue Coat Sys., Inc*., 879 F.3d 1299, 1311 (Fed. Cir. 2018) (when "customers also value" noninfringing features of the accused software, "[f]urther apportionment was required to reflect the value of the patented technology compared to the value of the unpatented elements.");  *Exmark Manuf. Co. Inc., v. Briggs & Stratton Power Prods. Group, LLC*, 879 F.3d 1332, 1350 (Fed. Cir. 2018) (vacating damages award when expert "failed to conduct any analysis indicating the degree to which" "non-patented elements" "impact the market value or profitability of the [accused product] and therefore impacted her suggested 5% royalty rate.").  This Court properly recognized Ericsson's burden—and Mr. Mills' failure—to account for unpatented features in putting on evidence of damages.

### B.    Alternative "Willingness-to-Pay" and "Price Sensitivity" Analyses Were Never Presented to the Jury

Ericsson next contends that this "Court erred in granting a new trial without considering whether other evidence in the record supports the jury's verdict."  Mot. at 10.  For support,

---

[3] Regardless, there was substantial evidence that Ericsson licensed thousands of standards essential and implementation patents to smartphone manufacturers (12/5/17 AM Tr. 132:19-134:22; 12/5/17 PM Tr. 49:9-22; 12/6/17 PM Tr. (Sealed) 9:14-18, 22:14-24:15), and that Ericsson offered licenses to its standards essential patents at rates ranging from 0.8% to 3% of net sales. *See* DTX324; DTX325; Order at 6 (Dkt. 460).

Ericsson cites to *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365 (9th Cir. 1987), where the Ninth Circuit held that, "[w]hen a jury returns a general verdict for the plaintiff after hearing *alternative calculations of damages*, we uphold the award *if there is substantial evidence in the record* as to any one calculation to support the award." *Id*. at 1373 (emphasis added). In this case, no evidence of "alternative calculation of damages" was presented to the jury, much less "substantial evidence." *Id*.

Ericsson's suggestion that "two other approaches" were "introduced into evidence by Ericsson" is incorrect. Mot. at 2. Ericsson argues that "willingness to pay" and "price sensitivity" damages analyses support either the full damages award or remittitur of $56 million. Mot. at 10-12. But neither Mr. Mills nor Dr. Wecker (nor any other witness) presented these analyses to the jury. Ericsson's evidence of alternative calculations relies entirely on Dr. Wecker's testimony that was solely about survey questions used in Mr. Mills' willingness-to-buy, income approach:

> Q. ….This question asks them if they were aware of the feature at the time they purchased their phone –
>
> A. Right.
>
> Q. -- as opposed to becoming aware of the feature as they used their phone after they purchased it, correct?
>
> A. Absolutely, yes.
>
> Q. Let's look at --
>
> A. That's pretty small, let me...
>
> Q. I can zoom in.
>
> A. I've got it in front of me. I can get a copy I can look at. Okay. Go ahead.
>
> Q. This is Page 3 -- or actually --
>
> A. Page 3.
>
> Q. Yeah, Page 3 to your report, Plaintiffs' 109.004, do you have that in front of you, Dr. Wecker?
>
> A. Yes, sir.

Q. Now, looking at this exhibit, this is where you identify the 28.4 percent of respondents who said they would -- let me try to get this so we can see -- there, that's a little better.  These 28.4 percent of respondents said they would have -- they would not have purchased a smartphone without the feature described in your question, even if it costs the same, correct?

A. Yes.

Q. And that's – that's right here?

A. Correct.

Q. Now, 30 -- over 30 percent of respondents said they would still buy that smartphone even if it didn't have the access scenario feature alleged to be covered by the '510 patent, right?

A. Yes. Some said they'd buy it; some said they wouldn't.

Q. So more people were willing to buy the phone without the feature of accused of infringing the '510 patent even if the phone cost the same, correct?

A. Yeah, a little bit more, it's about the same, but 30 and 28.

12/5/17 AM Trial Tr. 105:5-106:21.  There is no mention of a willingness-to-pay or price sensitivity analysis in the cited testimony.  Ericsson's argument rests entirely on cross-examination of Dr. Wecker wherein a "zoom[ed] in" portion of a page of PX109 was shown to the jury.  There is no indication that any figures on that page that are related a willingness-to-pay or price sensitivity analyses were shown to the jury.  And even if these figures were displayed (which is doubtful given that it was "zoom[ed] in"), no witness ever testified about willingness-to-pay or price sensitivity to the jury.  The jury did not ask for PX109 during its deliberation.  Thus, there was no evidence that the jury could have relied upon to calculate damages under any alternative damages methodology.  Moreover, Ericsson's counsel did not even mention either of these theories in its opening or closing statements.  In short, there was simply no way for the jury

to have reached its verdict through a complicated willingness-to-pay or price sensitivity analysis without any explanation from any witnesses or any of the underlying data.[4]

Ericsson notes that the "Court's new trial Order did not address the willingness to pay or price sensitivity results admitted into evidence at trial." Mot. at 4. This is hardly surprising because in responding to TCL's New Trial Motion, Ericsson failed to argue that the verdict could be supported by either a "willingness-to-pay" or "price sensitivity analysis." Ericsson's alternative bases arguments are forfeited. *Templet*, 367 F.3d at 479; *Williams*, 470 F. App'x at 313 ("Motions to reconsider cannot be used to raise arguments which could, and should, have been made before the judgment issued."); *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) ("[Motions for reconsideration] cannot be used to argue a case under a new legal theory.").

### C.    Any Remittitur Could Not Have Exceeded $2,465,000

Ericsson suggests that this Court should have granted it the option of receiving a remittitur as an alternative to a new damages trial. The Fifth Circuit has held that a remittitur is proper where the damages award is "excessive to the maximum amount the jury could have awarded." *Salinas v. O'Neill*, 286 F.3d 827, 830 (5th Cir. 2002). As a preliminary matter, it is not clear whether a remittitur "must" be offered, as Ericsson contends. *See EON Corp. IP Holdings, LLC v. Landis+Gyr Inc.*, No. 6:11-CV-317-JDL, 2014 WL 6466663, at *14 (E.D. Tex. Nov. 14, 2014) ("Where the Court finds that the jury's verdict is excessive it **may** grant a remittitur, or if the plaintiff chooses not to accept the remitted award, a new trial on the issue of damages alone."); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 2010 WL 2331311, at *4 (E.D. Tex. June 9, 2010), *aff'd*, 694 F.3d 51 (Fed. Cir. 2012) ("Faced with an excessive damages award, a 'court may either order a new trial on damages **or may** give the plaintiff the option of

---

[4] Ericsson's suggestion that only "basic multiplication" would be required "to reach a $56 million damages award" is belied by the highly complicated equations that Ericsson and Mr. Mills have proposed in the belated "price sensitivity" theory. Mot. at 12-13, Ex. 5.

avoiding a new trial by agreeing to a remittitur of the excessive portion of the award.'") (quoting

*Hernandez v. M/V Raajan*, 841 F.2d 582, 587 (5th Cir. 1988)); *Gasperini v. Ctr. for Humanities,*

*Inc.*, 518 U.S. 415, 433 (1996) (the court has the discretion of "overturning verdicts for

excessiveness and ordering a new trial without qualification, **or** conditioned on the verdict

winner's refusal to agree to a reduction (remittitur).") (emphases added).

Regardless, if this Court had offered Ericsson a remitted amount, the proper amount of

Ericsson's maximum recovery is $2,465,000.  As discussed above, Mr. Mills' calculation was

correctly deemed unreliable, and Ericsson failed to present a "willingness-to-pay" or "price

sensitivity analysis" at trial.  Thus, the maximum recovery was $2,465,000, as discussed by

Mr. Martinez.  Mr. Martinez's testimony, based on Ericsson's actual licensing practice, supports

a one time, lump sum damages award for past and future damages of no more than $2,465,000

for infringement of the '510 patent. 12/6/17 AM Tr. 132:6-12/6/17 PM Tr. 46:11; 12/6/17 PM

Sealed Tr. 3:14-62:21; *see also* TCL's Motion for New Trial (Dkt. 429) at 14-15.  Thus,

Ericsson's proposed "maximum recovery" of $75 million or $56 million is not based on "the

maximum amount the jury could properly have awarded."  *See Dixon v. Int'l Harvester Co.*, 754

F.2d 573, 590 (5th Cir. 1985).  The correct "maximum amount" of a remittitur would not exceed

Mr. Martinez's calculation.

### D.    This Court Correctly Found That Ericsson Presented "Extensive Evidence at Trial" Regarding Unaccused Products

Ericsson does not identify any specific alleged error in this Court's determination that a

new damages trial was necessary due to Ericsson's presentation of extensive evidence of

damages based on unaccused products.  Ericsson simply argues that this Court did "not consider

the points raised in Ericsson's post-trial briefing."  Mot. at 13.  This argument fails for at least

two reasons.

*First*, Ericsson's argument in its Motion for Reconsideration simply incorporates by reference its post-trial briefs. "Motions to reconsider based on recycled arguments only [serve] to waste the resources of the court, and are not the proper vehicle to [rehash] old arguments or [advance] legal theories that could have been presented earlier." *Krim*, 212 F.R.D. at 321.

*Second*, this argument was considered and rejected by this Court when it found that "Ericsson presented extensive evidence at trial regarding products that were not accused in the case." Order at 12. As this Court noted, Mr. Mills based damages upon "his projected 111.2 million allegedly infringing devices that would be sold in the future, [that] included products that have never been sold nor even named as accused products in the case." *Id*. Ericsson told the jury on several occasions that damages should be $245 million, comprising $61.2 million pre-trial lump sum damages and $183 million post-trial lump sum damages based on unaccused units that "TCL would sell through 2024." 12/4/17 PM Tr. 19:9-20:14; *see also* 12/5/17 AM Tr. 111:8-15; 12/5/17 PM Tr. 44:13-20, 45:4-7. This Court correctly found that this highly prejudicial and legally improper evidence required a new damages trial. While Ericsson reduced its damages request in closing, it could not cure the prejudice caused by this improper evidence. "As Mr. Mills himself testified, some products included in his opinion 'don't exist' and are 'not named as accused products, but – but they're part of the forecast.'" Order at 12. This was a "second reason that a new trial on damages is necessary." *Id*. Ericsson's recycled arguments in its Motion to Reconsider, which rely entirely on arguments that were already considered and rejected by this Court, should fare no better.

## IV.    **CONCLUSION**

This Court identified several "independent reasons" for ordering a new damages trial. A new damages trial was necessary because: (1) "the manner in which Mr. Mills used Dr. Wecker's survey results is not based on sufficient facts or data, not the product of reliable

principles, and not reliably based on the facts of the case;" (2) "Mr. Mills did not consider the numerous patented features on the accused phones, many of which a consumer would consider essential;" (3) "Mr. Mills did not account for how his theory would result in the erosion of all of TCL's profit;" and (4) "Ericsson presented extensive evidence at trial regarding products that were not accused in the case." Order at 9, 11-12. Each of these reasons alone justifies a new damages trial. Given Ericsson's failure to identify any new evidence, intervening change in case law, or a clear error that casts doubt on this Court's decision, Ericsson's Motion for Reconsideration should be denied.

Dated: April 6, 2018

*/s/ Michael F. Carr*
Winstol D. Carter, Jr.
State Bar No. 03932950
winn.carter@morganlewis.com
Adam A. Allgood
State Bar No. 24059403
adam.allgood@morganlewis.com
**Morgan, Lewis & Bockius LLP**
1000 Louisiana Street, Suite 4000
Houston, Texas 77002
Telephone: 1.713.890.5000
Facsimile: 1.713.890.5001

Bradford A. Cangro (Admitted in TXED)
D.C. Bar No. 495996
bradford.cangro@morganlewis.com
Jacob A. Snodgrass (Admitted *Pro Hac Vice*)
jacob.snodgrass@morganlewis.com
**Morgan, Lewis & Bockius LLP**
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Telephone: 1.202.739.3000
Facsimile: 1.202.739.3001

Michael F. Carr (Admitted *Pro Hac Vice*)
michael.carr@morganlewis.com
**Morgan, Lewis & Bockius LLP**
1400 Page Mill Road
Palo Alto, CA 94304
Telephone: 1.650.843.4000
Facsimile: 1.650.843.4001

**ATTORNEYS FOR DEFENDANTS TCL
COMMUNICATION TECHNOLOGY
HOLDINGS LTD., TCT MOBILE LIMITED,
and TCT MOBILE (US), INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that on April 6, 2018, counsel of record who are deemed to have consented to electronic service are being served with a copy of this document by electronic mail.

*/s/ Michael F. Carr*
Michael F. Carr