# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| ERICSSON INC., AND TELEFONAKTIEBOLAGET LM ERICSSON,<br><br>Plaintiffs,<br><br>v.<br><br>TCL COMMUNICATION TECHNOLOGY HOLDINGS, LTD., TCT MOBILE LIMITED, AND TCT MOBILE (US), INC.,<br><br>Defendants. | Civil Action No. 2:15-cv-00011-RSP<br><br>JURY TRIAL |

## ERICSSON'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF THE COURT'S ORDER FOR A NEW TRIAL ON DAMAGES

## I.     MILLS' INCOME APPROACH IS RELIABLE[1]

The Court's finding that the income approach—in which the number of customers who would not buy a product without the claimed feature is multiplied by the infringer's profits—is unreliable, directly conflicts with three other district courts that have endorsed the approach. While this Court expressed concerns over the step of multiplying the number of customers who would not purchase by TCL's profits, those other courts have endorsed this multiplication step. TCL's efforts to distinguish this string of precedent are unavailing.

TCL attempts to distinguish *Sentius*, but it misses the mark by failing to address the multiplication step. Instead, it rehashes its repeatedly rejected argument that Dr. Wecker's survey did not properly describe the accused feature. But the Court explicitly found that "[t]he survey question . . . was sufficiently tailored to what the claims purport to cover." Order at 11. That *Sentius* did not go to trial is irrelevant because the issue is whether the income approach is reliable—a factor that does not change pre- or post-trial.

TCL also fails to distinguish *Apple, Inc. v. Samsung Elec.* (*Apple II*), 2014 U.S. Dist. LEXIS 24506 (N.D. Cal. Feb. 25, 2014). That *Apple* involved a conjoint survey is irrelevant because the Apple survey and Ericsson's survey resulted *in the same output*: the percentage of buyers who would not buy the product without the claimed feature. The Court has held that the output of Ericsson's survey was reliable. The important part of *Apple II* is that the court approved the multiplication step that caused this Court concern, *see* Ex. 1 at 1316:5-1318:1, a fact which TCL fails to directly address. Further, *Apple II* rejected an argument similar to one made here—that the results must be unreliable because they suggested that consumers were willing to pay more for four features than the value of the phone itself—on the ground that such criticisms go only to the weight of the analysis. *Id.* at *66-67 n.7.

Finally, TCL fails to distinguish *Lucent Techs., Inc. v. Microsoft Corp.*, 837 F. Supp. 2d

---

[1] This Court is "free to reconsider and reverse its decision for any reason it deems sufficient." *Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 210-11 (5th Cir. 2010); *see Promethean Insulation Tech. LLC v. Sealed Air Corp.*, 2015 U.S. Dist. LEXIS 179073 (E.D. Tex. Aug. 11, 2015) (granting motion for reconsideration where the parties had not previously briefed the issue); *WI-Lan, Inc. v. Acer, Inc.*, 2010 U.S. Dist. LEXIS 138111 (E.D. Tex. Dec. 30, 2010).

1

1107 (S.D. Cal. 2011). *Lucent* expressly approved of using the multiplication step to "obtain the number of license sales Microsoft would potentially lose if the [patented] technology was not included in Outlook." *Id.* at 1113. Although *Lucent* ordered remittitur, that had nothing to do with the multiplication step. The remittitur was based on an inflated estimate for the revenue attributable to Outlook when bundled and sold with Office (which also includes Word, Excel, and PowerPoint). No such bundling problem exists here. And *Lucent* corrected that methodological error by ordering remittitur, not a wholesale new trial on damages.

Each of these cases rejected challenges to the income approach for good reason—survey results apportion the value of the claimed feature from the product's other features by isolating "the incremental value that the patented invention adds to the end product."[2] *Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). As the Court acknowledged, "Dr. Wecker asked a reasonably specific question about the permissions feature covered by the '510 patent" and was "thus abiding by the apportionment rule." Order at 12. By determining the number of sales that TCL would have lost had it not infringed, the survey identified the feature's incremental value.[3]

TCL uses a straw-man car analogy to argue that, if the income approach were applied to a car, the royalties would exceed the profits. That argument fallaciously assumes that no non-infringing alternative to the identified features exists. TCL thus conclude that 100% of consumers would not buy a car without brakes. But almost anyone would agree that a patent covering the basic concept of braking, with no alternative, would deserve a hefty royalty. And if a more realistic example is chosen, like comparing patented disk brakes to non-infringing drum brakes, TCL's argument falls apart. In any event, the point of TCL's car analogy, as well as the

---

[2] Reliance on consumer surveys when calculating patent damages has been approved of by the Federal Circuit and recognized in relevant literature. *See Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1297, 1299 (Fed. Cir. 2015); David Franklyn & Adam Kuhn, *The Problem of Mop Heads in the Era of Apps: Toward More Rigorous Standards of Value Apportionment in Contemporary Patent Law*, 98 J. Pat. & Trademark Off. Soc'y 182 (2017); Krista F. Holt et al., *What's It Worth?: Principles of Patent Valuation*, A.B.A. Section of Intellectual Property Law, Vol. 8, No. 1 (2015); Christopher K. Larus & Bryan J. Mechell, *Using Consumer Surveys to Prove Patent Infringement Damages at Trial*, 18 Law J. Newsletters The Intellectual Property Strategist, 3 (2011); J. Gregory Sidak & Jeremy O. Skog, *Using Conjoint Analysis to Apportion Patent Damages*, 25 Fed. Cir. B.J. 581 (2016).

[3] Because TCL never presented evidence of a non-infringing alternative at trial, Ericsson justifiably could have compared its app permission feature to no app control whatsoever. Instead, Ericsson's survey compared its claimed feature to the prior art approach in which users must grant an app access to all services on their phone or none at all.

concern expressed in the Order, is that the income approach "would result in the erosion of all of TCL's profits." Order at 11. But the Federal Circuit has long held that an infringer's profit margin, and even its sales price, is simply not a cap on a reasonable royalty. *See Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1555 (Fed. Cir. 1995); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989); *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1563 (Fed. Cir. 1983); *Powell v. Home Depot USA Inc.*, 663 F.3d 1221, 1238 (Fed. Cir. 2004).

TCL and the Court also allude to royalty stacking concerns. Again, the Federal Circuit has well-established law in this area. An accused infringer is not even entitled to a jury instruction on royalty stacking without concrete evidence of *what its royalty stack actually is. Ericsson*, 773 F.3d at 1234. Although the Order gives examples of other features of a phone, "abstract recitations of royalty stacking theory" are insufficient support for an expert opinion. *Commonwealth Sci. & Indus. Research Org. v. Cisco Sys.*, 809 F.3d 1295, 1303 (Fed. Cir. 2015). At trial, TCL presented no evidence of its royalty stack, other patents that might cover its phones, or that its profits *actually would* be eroded if Ericsson's royalty were awarded. Given TCL's failure to come forward with evidence, TCL was not entitled to a royalty stacking instruction and the fact-finder could not even *consider* royalty stacking. Mr. Mills' opinion cannot be deemed unreliable because his theory might result in hypothetical royalty stacking that the jury could not consider and for which TCL never even sought a jury instruction.

## II. ALTERNATIVE SURVEY EVIDENCE SUPPORTS THE JURY VERDICT, OR A REMITTED AMOUNT

Even if Mr. Mills' analysis is deemed unreliable, other evidence supports the damages verdict or remittitur. Two alternative survey results were admitted into evidence as PX109: 1) the willingness-to-pay results[4] (supporting the full verdict) and 2) the price sensitivity results

---

[4] Willingness to pay analysis has been employed as an apportionment methodology in numerous cases. *See, e.g.*, *SimpleAir, Inc. v. Google Inc.*, 2015 U.S. Dist. LEXIS 135915 (E.D. Tex. Oct. 5, 2015) (Gilstrap, J.); *TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006 (N.D. Cal. 2013); *Odyssey Wireless, Inc. v. Apple Inc.*, 2016 U.S. Dist. LEXIS 187982 (S.D. Cal. Sept. 14, 2016); *Apple, Inc. v. Samsung Elec.* (*Apple I*), 2012 U.S. Dist. LEXIS 90877 (N.D. Cal. June 29, 2012); *Dzielak v. Whirlpool Corp.*, 2017 U.S. Dist. LEXIS 39232 (D.N.J. Mar. 17, 2017).

(supporting remittitur to $56 million). Under controlling law, if alternative proof supports the damages verdict, the Court must enter judgment on the verdict, and if the alternative proof supports a lesser amount, the Court must offer remittitur under the "maximum recovery rule."

TCL made no substantive response to this alternative proof and did not contest Ericsson's statement of the law. TCL's only argument is that PX109 should be ignored because the jury did not ask for the document in deliberations and the experts did not independently testify about it. TCL fails to acknowledge that Ericsson's counsel asked Dr. Wecker on direct examination about his "additional survey questions," through which he "obtained additional results," and directed the jury to PX109 and other exhibits reflecting those results. 12/5/17 AM Trial Tr. 87:4-19. On cross-examination, TCL then showed the jury page 4 of PX109 (PX109.0004)—the exact page of the exhibit reflecting the alternative results. *Id.* at 105:5-106:21. PX109 also was admitted into evidence, by agreement of the parties, without limiting instruction. Dkt. No. 411 (Ericsson's Final Exhibit List). PX109 is undisputedly part of the trial evidence in its entirety.

TCL speculates that perhaps the jury did not consider the entire exhibit, but fails to cite any court that has ignored a properly admitted trial exhibit based on conjecture that the jury did not consider it. All trial exhibits are part of the record. The fact that the jury did not request an exhibit does not permit the court to disregard it. Courts may not speculate about what evidence a jury actually relied upon—that is why the proper inquiry is not whether the jury *did* rely on these alternate results, but whether they *could have* relied on them. *See Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 590 (5th Cir. 1985). As an admitted exhibit, the jury *could have* done so. The Court instructed the jury that "the term 'evidence' includes the sworn testimony of the witnesses *and the exhibits admitted* in the record," and that the jury "must consider all evidence presented at the trial." 12/8/17 AM Trial Tr. 18:2-4, 24-25 (emphasis added). The jury is presumed to follow this instruction. *United States v. Odoni*, 782 F.3d 1226, 1233 (11th Cir. 2015).

Even if the Court peeks behind that presumption, **the very page Ericsson cites was actually shown to the jury** for at least several minutes. TCL tries to sidestep this awkward fact by speculating that the part of the document containing the alternative results might not have

4

been visible because some time (it is unclear how long) after PX109 was published to the jury, it was zoomed in on and the alternative results might not have been in the zoomed portion. This argument vividly shows why the law presumes that the jury considers all the evidence. A losing party can always speculate about what the jurors looked at, what they relied on, and whether they heard or saw everything at trial. If a court indulges these arguments, it will be impossible for parties to trust and rely upon the evidentiary record they create at trial.

In any event, "[a] court is not restricted in finding a reasonable royalty to a specific figure put forth by one of the parties." *Smithkline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1168 (Fed Cir. 1991). The amount merely must be "within the range encompassed *by the record as a whole*." *Unisplay S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 519 (Fed. Cir. 1995). The Court must look to all record evidence, even if no witness testified to that particular damages calculation. *See, e.g.*, *id.* (ordering remittitur based on 10% royalty even though "much of the evidence presented during trial focused on" a 3-7.5% royalty); *Harris Corp. v. Ericsson, Inc.*, 2003 U.S. Dist. LEXIS 12284, at *30-34 (N.D. Tex. July 17, 2003) (ordering remittitur of $43 million based on evidence in the record, even though "[t]he highest damages figure *for which there was explicit expert testimony* that could be supported by the evidence is $17.5 million"); *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1033 (Fed. Cir. 1996); *Lucent*, 837 F. Supp. 2d at 1121.

### III. TCL'S FUTURE ROYALTY BASE COMPLAINTS ARE MOOT AND WAIVED

The Order's second ground for ordering a new trial is both moot and waived, as Ericsson argued in its post-trial-briefing. Dkt. Nos. 441 at 7-9; 443 at 1-3; 450 at 1-2; 451 at 5-6. Neither the Order nor TCL's response addresses these arguments. Failure to address an argument is a "clear error of law" meriting reconsideration. *See, e.g.*, *Hadsell v. Cach, LLC*, 2014 U.S. Dist. LEXIS 16831 (S.D. Cal. Feb. 6, 2014). Even if the Court declines to find that TCL has waived these arguments, the remedy is not a new damages trial, but rather remittitur of $61.2 million under the maximum recovery rule. That amount is indisputably supported by the record and does not include any future products. Dkt. No. 441 at 8.

5

| | |
|---|---|
| Dated: April 13, 2018 | **MCKOOL SMITH, P.C.**<br><br>*/s/ Theodore Stevenson III*<br>Theodore Stevenson III, Lead Attorney<br>Texas State Bar No. 19196650<br>tstevenson@mckoolsmith.com<br>David Sochia<br>Texas State Bar No. 00797470<br>dsochia@mckoolsmith.com<br>Warren Lipschitz<br>Texas State Bar No. 24078867<br>wlipschitz@mckoolsmith.com<br>Nicholas Mathews<br>Texas State Bar No. 24085457<br>nmathews@mckoolsmith.com<br>Mitchell R. Sibley<br>Texas State Bar No. 24073097<br>msibley@mckoolsmith.com<br>**MCKOOL SMITH, P.C.**<br>300 Crescent Court Suite 1500<br>Dallas, TX 75201<br>Telephone: (214) 978-4000<br>Telecopier: (214) 978-4044<br><br>Samuel F. Baxter<br>Texas State Bar No. 01938000<br>sbaxter@mckoolsmith.com<br>**MCKOOL SMITH, P.C.**<br>P.O. Box O<br>Marshall, Texas 75671<br>Telephone: (903) 927-2111<br>Telecopier: (903) 927-2622<br><br>**ATTORNEYS FOR PLAINTIFFS ERICSSON INC., AND TELEFONAKTIEBOLAGET LM ERICSSON** |

6

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on April 13, 2018.

*/s/ Nicholas M. Mathews*
Nicholas M. Mathews