# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| ERICSSON INC., AND TELEFONAKTIEBOLAGET LM ERICSSON, <br><br> Plaintiffs, <br><br> v. <br><br> TCL COMMUNICATION TECHNOLOGY HOLDINGS, LTD., TCT MOBILE LIMITED, AND TCT MOBILE (US), INC., <br><br> Defendants. | Civil Action No. 2:15-cv-00011-RSP <br><br><br> JURY TRIAL |

**TCL'S SURREPLY TO ERICSSON'S MOTION FOR RECONSIDERATION OF THIS COURT'S ORDER GRANTING TCL'S MOTION FOR A NEW TRIAL ON DAMAGES (DKT. 456)**

**I.      INTRODUCTION**

Ericsson's Reply in support of its Motion for Reconsideration confirms that there is no new evidence, intervening change in law or clear error that casts doubt on this Court's decision to order a new damages trial. Ericsson's argument that its damages evidence was reliable cites the same non-binding district court decisions that it cited in opposing TCL's Motion for a New Trial. No binding case law approves of Mr. Mills' damages methodology. Ericsson concedes that no witness explained its belated alternative "willingness to pay" or "price sensitivity" analyses to the jury. Ericsson has not identified any evidence, much less new or substantial evidence, which could justify reconsideration of this Court's Order. Ericsson's argument that it cured its legally erroneous royalty base ignores this Court's correct observation that "Ericsson presented extensive evidence at trial regarding products that were not accused in the case." Order at 12. Ericsson's Motion for Reconsideration should be denied.

**A.      This Court Correctly Found Mr. Mills' Methodology to be Unreliable**

Ericsson's Reply merely reargues that the income approaches used in other cases justifies Mr. Mill's income approach here. That a "multiplication step" was one of many steps used in damages methodologies in *other* cases does not make Mr. Mills' methodology, in *this* case, reliable. This Court correctly found that Mr. Mills' "direct[] translat[ion of] the roughly 28% of survey respondents who allegedly would not have bought a TCL phone without the infringing feature to TCL's profit" to "determine the potential 'at-risk' profit" was "unreliable." Order at 10. Ericsson also argues that other courts have approved reliance upon consumer surveys. Reply at 2. This Court, however, did not conclude that Mr. Mills could not rely upon Dr. Wecker's survey. Instead, this Court correctly concluded that it was improper for Mr. Mills to use the survey results to calculate a royalty for the '510 patent without accounting for *any* of the value contributed by unpatented features. That somewhat similar methodologies were allowed in

1

other cases does not cast doubt on this Court's correct conclusions about Ericsson's flawed methodology used in this case.

Ericsson rehashes its argument that TCL's profit was used as a cap on damages. Reply at 3. This Court, however, did not rule that TCL's profit was a cap on damages. That Mr. Mills' royalty rate "would result in the erosion of all of TCL's profit" simply exposed the unreliability of his opinion. Order at 11. Indeed, as TCL pointed out in its Response, Ericsson's own argument suggests that the combination of three features has a value that is less than the combined value of the three features considered individually. TCL Resp. at 8 (citing Mot. at 7 n.7). Properly measuring damages required consideration of the "many patented features, . . . that, according to Dr. Wecker's survey results, consumers would likely find numerous features essential." Order at 10. Mr. Mills simply failed to perform this analysis, which even Ericsson recognized as necessary. This Court's observation that Mr. Mills' "lost profit number quickly becomes unrealistic" is entirely accurate. *Id*.

Ericsson attempts to inject a "hypothetical royalty stacking" issue into the question of whether Mr. Mills accounted for unpatented features. Reply at 3. Ericsson, however, does not dispute that it bore the burden on damages, not TCL. Ericsson also does not dispute that, when calculating damages for the '510 patent, under binding case law, Mr. Mills must account for the value contributed by unpatented features. *See Finjan, Inc. v. Blue Coat Sys., Inc*., 879 F.3d 1299, 1311 (Fed. Cir. 2018) (when "customers also value" noninfringing features of the accused software, "[f]urther apportionment was required to reflect the value of the patented technology compared to the value of the unpatented elements."); *Exmark Manuf. Co. Inc., v. Briggs & Stratton Power Prods. Group, LLC*, 879 F.3d 1332, 1350 (Fed. Cir. 2018). This Court correctly recognized Ericsson's burden—and Mr. Mills' failure—to account for unpatented features when presenting evidence of a reasonable royalty.

### B. Alternative "Willingness-to-Pay" and "Price Sensitivity" Analyses Were Never Presented to the Jury

Ericsson has no answer to the fact that, when responding to TCL's New Trial Motion, Ericsson failed to argue that the verdict could be supported by any alternative calculation. As such, Ericsson's alternative "willingness-to-pay" and "price sensitivity" arguments are forfeited. *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (a motion for reconsideration "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment.").

If this Court were to reach the merits of this argument, Ericsson fails to explain in its Reply how the jury could have awarded damages based on its "willingness to pay" and "price sensitivity" damages analyses. Ericsson concedes that neither of these analyses was ever discussed by Mr. Mills, Dr. Wecker, or any other witness. Ericsson also concedes that its counsel never argued for damages under either of these alternative theories. Instead, Ericsson relies entirely upon the fact that a *portion* of PX109 with *some* of the underlying evidence that supports these alternative theories was displayed to the jury.

Even though only the portions of PX109 related to Mr. Mills' income approach were discussed at trial, Ericsson suggests that the other material in PX109 cannot be "disregard[ed]." Reply at 4. Yet, Ericsson provides no explanation for how the jury could have relied upon data listed in this exhibit when that data was never explained to the jury and they never reviewed it. Even if the jury saw some of the underlying data regarding the alternative methodologies when a portion of PX109 was displayed, without any explanation from any witness, that data can hardly qualify as "*substantial* evidence" to support an alternative damages award. *See Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1373 (9th Cir. 1987) ("[w]hen a jury returns a general verdict for the plaintiff after hearing alternative calculations of damages, we uphold the

3

award *if there is substantial evidence in the record* as to any one calculation to support the award.") (emphasis added).  Ericsson argues that "the law presumes that the jury considers all the evidence."  Reply at 4.  Yet, Ericsson cites no authority for the untenable proposition that "all the evidence" includes pages of exhibits that were never explained to, or examined by, the jury.[1] In short, Ericsson provides no credible explanation for how the jury could have reached its verdict through a complicated willingness-to-pay or price sensitivity analysis without any explanation from any witnesses or all of the supporting evidence.

### C. This Court Correctly Found That Ericsson Presented "Extensive Evidence at Trial" Regarding Unaccused Products

Ericsson's Reply does not even attempt to address this Court's correct observation that "Ericsson presented extensive evidence at trial regarding products that were not accused in the case."  Order at 12.  As this Court noted, Mr. Mills based damages upon "his projected 111.2 million allegedly infringing devices that would be sold in the future, [that] included products that have never been sold nor even named as accused products in the case."  *Id*.  This Court correctly found that Ericsson's highly prejudicial and legally improper evidence of damages based on unaccused products required a new damages trial.

Finally, Ericsson's arguments that simply incorporate by reference its post-trial briefs "only [serve] to waste the resources of the court."  *Krim v. pcOrder.com, Inc*., 212 F.R.D. 329, 321 (W.D. Tex. 2002) ("Motions to reconsider based on recycled arguments only [serve] to waste the resources of the court, and are not the proper vehicle to [rehash] old arguments or [advance] legal theories that could have been presented earlier.").

---

[1] The admitted exhibits were not in the jury room during deliberations.  Admitted exhibits were only provided to the jury during deliberations if the jury specifically asked for them.  The jury did not ask for PX109 and, therefore, it was never provided to the jury during its deliberations.

4

## II. CONCLUSION

Ericsson failed to identify any new evidence, intervening change in law or clear error that casts doubt on this Court's decision to order a new damages trial. Accordingly, Ericsson's Motion for Reconsideration should be denied.

Dated: April 15, 2018

*/s/ Michael F. Carr*
Winstol D. Carter, Jr.
State Bar No. 03932950
winn.carter@morganlewis.com
Adam A. Allgood
State Bar No. 24059403
adam.allgood@morganlewis.com
**Morgan, Lewis & Bockius LLP**
1000 Louisiana Street, Suite 4000
Houston, Texas 77002
Telephone: 1.713.890.5000
Facsimile: 1.713.890.5001

Bradford A. Cangro (Admitted in TXED)
D.C. Bar No. 495996
bradford.cangro@morganlewis.com
Jacob A. Snodgrass (Admitted *Pro Hac Vice*)
jacob.snodgrass@morganlewis.com
**Morgan, Lewis & Bockius LLP**
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Telephone: 1.202.739.3000
Facsimile: 1.202.739.3001

Michael F. Carr (Admitted *Pro Hac Vice*)
michael.carr@morganlewis.com
**Morgan, Lewis & Bockius LLP**
1400 Page Mill Road
Palo Alto, CA 94304
Telephone: 1.650.843.4000
Facsimile: 1.650.843.4001

**ATTORNEYS FOR DEFENDANTS TCL COMMUNICATION TECHNOLOGY HOLDINGS LTD., TCT MOBILE LIMITED, and TCT MOBILE (US), INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that on April 15, 2018, counsel of record who are deemed to have consented to electronic service are being served with a copy of this document by electronic mail.

                                                 */s/ Michael F. Carr*
                                                 Michael F. Carr