IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ERICSSON INC., and TELEFONAKTIEBOLAGET LM ERICSSON, | § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Case No. 2:15-cv-00011-RSP |
| TCL COMMUNICATION TECHNOLOGY HOLDINGS, LTD., TCT MOBILE LIMITED, and TCT MOBILE (US), INC., | § § § § § § | |
| *Defendants*. | § | |

## MEMORANDUM ORDER

Defendants TCL Communication Technology Holdings, Ltd., TCT Mobile Limited, and TCT Mobile (US), Inc. (collectively, "TCL") filed a Motion for Costs under Federal Rule of Civil Procedure 54(d)(1) and Federal Rule of Appellate Procedure 39(e) ("Motion") for respective costs of $161,556.68 and $3,006,961.87 against Plaintiffs Ericsson Inc. and Telefonaktiebolaget LM Ericsson (collectively, "Ericsson"). Dkt. No. 507. After consideration, the Court **GRANTS IN PART** TCL's Motion for entry of a bill of costs in the amount of $2,354,108.93. However, in view of Plaintiffs' filing of a petition for rehearing *en banc*, the Court will **STAY** this order pending completion of appellate review.

### I. BACKGROUND

Ericsson brought this patent infringement case against TCL in 2015 as part of a larger dispute between the parties. Dkt. No. 359 at 2–3. After trial, the jury awarded $75 million in damages and returned a verdict of willful infringement against TCL. Dkt. No. 390 at 1–2.

After the jury verdict, TCL asked that the execution of the judgment be stayed pending resolution of post-judgment motions.[1] Dkt. No. 416 at 4–6. TCL additionally asked that the stay be granted without requiring additional security.[2] *Id*. Ericsson vigorously opposed the second request. Dkt. No. 418 at 1 ("TCL's proposal— to post either no security or just a $1 million bond— is grossly inadequate and contrary to the great weight of the case law"). After resolving the remaining issues, the Court enhanced the damages by $25 million and further awarded pre- and post-judgment interest to Ericsson and entered judgment against TCL. Dkt. No. 484 at 2.

TCL appealed to the Court of Appeals for the Federal Circuit. It asked that pending the outcome of its appeal, the execution of the judgment be stayed. The Court granted its request but required TCL to post a full bond—in part due to Ericsson's insistence on the matter. *See* Dkt. No. 497. Accordingly, TCL obtained through Euler Hermes North America Insurance Company and Everest Reinsurance Company (the "Sureties") a supersedeas bond in the amount of $132,240,250.00. Dkt. No. 498 at 1. As required by law, this bond represented 120% of this Court's judgment amount plus an additional $250. *Id.* at 2; Dkt. No. 496 at 1–2; *see also* L.R. CV-62(a).

TCL represents that to obtain the bond, the Sureties required TCL to post corporate guarantees worth the full amount of the bond.[3] Dkt. No. 507 at 9 (citing Dkt. No. 507-9 at ¶ 5). However, TCL represents that it was unable to post these corporate guarantees. To satisfy this requirement, TCL asked TCL Corporation, a related Chinese entity who was not a party to this litigation, to post these guarantees. Since TCL Corporation is a public company, it purportedly was

---

[1] There was some confusion whether a final judgment had been entered at this point. The Court clarified that the judgment entered on the jury verdict was not yet subject to execution and accordingly, deferred TCL's request to stay execution of the judgment without bond until a final judgment was entered. *See* Dkt. No. 421.
[2] TCL proposed three options—all of which were less than the posting of a bond worth the full verdict. *See id*. at 8.
[3] Technically, TCL Communication Technology Holdings, Ltd. was the only defendant to enter an agreement with the Sureties. For convenience's sake, the term "TCL" will be used to refer to both this entity and all the defendants.

required to conduct its transactions with TCL at arm's length, which resulted in TCL Corporation charging TCL a guarantee fee of $655,144.22.

In posting the bond of $132,240,250.00, the Sureties required TCL to pay an annual premium and levy of $1,124,491.74. *Id*. at 10 (citing Dkt. No. 507-9 at ¶ 12). TCL has paid this annual premium twice, amounting to a total of $2,248,983.48.

TCL represents that it was unable to pay the premium using its own assets, so it financed the $2,248,983.48 payment. TCL represents that a total of $102,329.17 in interest accrued as a result of the portions of those loans that were allocated to finance the $2,248,983.48 payment for the bond premium. *Id*. at 11 (citing Dkt. No. 507-9 at ¶ 16).

On April 14, 2020, the Federal Circuit reversed the judgment, finding the '510 patent invalid under § 101, and vacated the damages award against TCL. *See* Dkt. No. 502. The Federal Circuit's decision awarded costs to TCL. *Id.* at 21. TCL now seeks its costs before this Court and its costs for its appeal.

### a. What Is Not Contested[4]

The parties have agreed that $98,001.70 is taxable as costs against Ericsson, as follows:

1. $9,813.03 in hearing transcripts fees;

2. $51,572.89 in deposition transcript fees;[5]

3. $7,178.67 in witness fees;

4. $28,932.11 in copying fees; and

5. $505 in appellate docketing fees.

### b. What Is Contested

---

[4] While TCL requested higher costs in its original motion for some of these categories, the parties agreed to these figures later in the briefing on this motion. *See, e.g.*, Dkt. No. 518 at 6–8.
[5] As described in greater detail below, the parties dispute the video deposition fees for TCL's own witnesses. The number here represents the agreed-to portion of the deposition fees.

Ericsson disputes $3,013,580.62, as follows:

      1. $7,123.75 in video deposition fees for TCL's own witnesses;

      2. $655,144.22 in fees to acquire a corporate guarantor for its supersedeas bond;

      3. $2,248,983.48 in supersedeas bond premiums; and

      4. $102,329.17 in financing costs to pay the supersedeas bond premiums.

## II.    ANALYSIS

After consideration of the disputed amounts, the briefing on the motion, and the relevant case law, the Court finds Ericsson liable for all the video deposition fees, including the disputed $7,123.75 in video deposition fees for TCL's own witnesses. Further, Ericsson will be taxed with the $2,248,983.48 in supersedeas bond premiums. However, Ericsson will not be taxed the $757,473.39 in additional costs consisting of interest and the "corporate guaranty fee" associated with the supersedeas bond premiums.

### a.    Costs Before This Court

"Unless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1). However, the Court's discretion in taxing costs against an unsuccessful litigant is limited to items such as:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920; *see also Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 441–42 (1987). Although the prevailing party is entitled to its costs, the prevailing party has the burden of demonstrating that its costs are recoverable under applicable law.

The costs of a deposition, including video depositions, should not be disallowed merely because the deposition was not ultimately used at trial or in connection with a dispositive motion. The costs of a deposition are allowed "if the taking of the deposition is shown to have been reasonably necessary in light of the facts known to counsel at the time it was taken." Chief Judge Rodney Gilstrap's Standing Order Regarding Bills of Costs ("Standing Order") at 3 (quoting *Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1099 (5th Cir. 1982), *modified en banc*, 701 F.2d 542 (5th Cir. 1983), *overruled on other grounds by Int'l Woodworkers of Am. v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986)). "Whether a deposition or copy was necessarily obtained for use in the case is a factual determination to be made by the district court." *Id.* at 2–3 (citing *Fogleman v. ARAMCO (Arabian Am. Oil Co.)*, 920 F.2d 278, 285–86 (5th Cir. 1991)). "The district court is accorded great latitude in this determination." *Id.* at 3 (citing *Fogleman*, 920 F.2d at 286).

Ericsson objects to TCL's costs for video depositions of its own witnesses, which apparently amounted to $7,123.75. Ericsson argues that "[a]s a general rule, there is no reasonable expectation that a litigant will be able to play videos of its own witnesses at trial" including courts in this District. Dkt. No. 514 at 7. However, it does not provide authority for its assertion.

TCL counters that it disputes the existence of a "per se rule against recovering costs for videos of a party's witnesses." Dkt. No. 517 at 8. It argues "'[t]rial settings can be somewhat unpredictable' and 'a party would be somewhat uncertain which witnesses would be permitted to appear live and which would appear by deposition.'" *Id.* (brackets in original) (quoting *Realtime Data, LLC v. T-Mobile USA, Inc.*, No. 6:10-CV-493, 2013 WL 12156681, at *2 (E.D. Tex. May 1, 2013)). TCL explains that when the depositions were taken, it reasonably anticipated that its witnesses could have to appear by deposition at trial for several reasons. One reason it gave was

that many of the videotaped witnesses were not U.S. citizens and resided outside the U.S., making their appearance at trial more burdensome and unpredictable.

In this case, TCL established reasonable necessity for taking video depositions of its witnesses in light of the facts known to it at the time the videos were taken. *See Copper Liquor*, 684 F.2d at 1099. Having met its burden, TCL is now entitled to the costs of those depositions. Accordingly, Ericsson is taxed $104,620.45 for costs incurred by TCL before this Court, which includes $97,496.70 in agreed costs and $7,123.75 in video deposition costs.

### b. Costs on Appeal

The Federal Rules of Appellate Procedure state:

> The following costs on appeal are taxable in the district court for the benefit of the party entitled to costs under this rule:
> (1) the preparation and transmission of the record;
> (2) the reporter's transcript, if needed to determine the appeal;
> (3) premiums paid for a bond or other security to preserve rights pending appeal; and
> (4) the fee for filing the notice of appeal.

FED. R. APP. P. 39(e). The parties argue to what extent Ericsson is liable for TCL's purported costs on appeal of $3,006,961.87.[6] This argument contains two issues: (1) whether to apply Fifth Circuit or Federal Circuit law; and (2) what costs are encompassed by "premiums paid for a bond or other security to preserve rights pending appeal . . . ." FED. R. APP. P. 39(e)(3).

### i. Fifth Circuit law should apply

Beginning with the first dispute, TCL argues that Fifth Circuit law applies and under governing Fifth Circuit law, Rule 39(e) is mandatory. Dkt. No. 507 at 17 (quoting *In re Sioux Ltd., Sec. Litig.*, No. 87-6167, 1991 WL 182578, at *1 (5th Cir. Mar. 4, 1991)) (citing *Berkley Reg'l*

---

[6] The parties agree Ericsson must pay the $505 appellate docketing fee. However, $3,006,456.71 is still disputed.

*Ins. Co. v. Philadelphia Indem. Ins. Co.*, 600 F. App'x 230, 237 (5th Cir. 2015)). In support, it argues that the Federal Circuit has consistently applied the law of the regional circuit when analyzing the Federal Rules of Appellate Procedure. Dkt. No. 517 at 2 (citing *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1339 (Fed. Cir. 2009); *Two-Way Media LLC v. AT & T, Inc.*, 782 F.3d 1311, 1314 (Fed. Cir. 2015)). Therefore, it argues this Court must tax all applicable costs listed above without the possibility of reducing those costs based on its discretion.

Ericsson counters that the Federal Circuit uses its own interpretation of the Federal Rules of Appellate Procedure and does not apply regional circuit law on issues of appellate procedure, including the assessment of appellate costs. Dkt. No. 514 at 1–2 (quoting *Biodex Corp. v. Loredan Biomedical, Inc.*, 946 F.2d 850, 858 (Fed. Cir. 1991)). Along these lines, it asserts that the Federal Circuit has consistently held that district courts have discretion in assessing appellate costs under Rule 39(e). *Id*. at 2 (citing *Metso Minerals, Inc. v. Terex Corp.*, 594 F. App'x 649, 649–50 (Fed. Cir. 2014); *Dana Corp. v. IPC Ltd. P'ship*, 1991 U.S. App. LEXIS 1080, at *8 (Fed. Cir. 1991)). To bolster its point, it explains that, except for the Fifth Circuit, every circuit to apply Rule 39(e) since the 1998 amendments has held that a district court always has discretion to deny or reduce appellate costs. *Id*. at 2–3 (citations omitted) (identifying six circuit that have held as such). Finally, it argues that the Fifth Circuit recently declined to revisit the holding of *Sioux*, diminishing the weight that opinion should be given. Dkt. No. 518 at 2 n.2 (citing *City of San Antonio, Texas v. Hotels.com, L.P.*, 959 F.3d 159 (5th Cir. 2020)).

The standard rule in the Federal Circuit is that that the law of the regional circuit applies to procedural issues, while Federal Circuit law applies to substantive issues unique to patent law. *See Biodex*, 946 F.2d at 857–58 (citations omitted); *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1574–75 (Fed. Cir. 1984). The Federal Circuit in *Biodex* goes into detail about this

practice, explaining its purpose and providing illustrative examples. It explains that this general rule is limited when a procedural issue implicates the Federal Circuit's exclusive statutory mandate or its functions as an appellate court. *Biodex*, 946 F.2d at 858. Applying the reasoning in *Biodex* to this issue, the takeaway is that regional circuit law, here the Fifth Circuit, should apply. This issue—whether district courts have discretion in assessing appellate costs under Rule 39(e)—is a procedural issue that does not go to the Federal Circuit's own appellate jurisdiction. *See id*. at 858 (citations omitted).

Additionally, the discretion a district court has in assessing appellate costs is not unique to patent law. *See Metso Minerals*, 594 F. App'x at 651 ("the district court's award of costs is not an issue unique to patent law, so we apply the law of the regional circuit"). This conclusion is bolstered by the Federal Circuit's analogous reasoning in *DePuy Spine*. In *DePuy Spine*, the Federal Circuit held that the application of Federal Rule of Appellate Procedure 37, which deals with post-judgment interest, is not unique to judgments in patent cases and thus, the Federal Circuit looks to the law of the regional circuit for guidance. 567 F.3d at 1339 (citing *Tronzo v. Biomet, Inc.*, 318 F.3d 1378, 1381 (Fed. Cir. 2003)).[7] Ericsson provides no persuasive reason why assessing appellate costs should be considered unique to patent law.

Finally, the reason the Federal Circuit has consistently held that district courts have discretion in assessing appellate costs under Rule 39(e) is because it was applying the regional circuit law. As noted by Ericsson, except for this Circuit, every circuit to apply Rule 39(e) recently has held that a district court has discretion in determining appellate costs. The cases cited by

---

[7] Similarly, in *Two-Way Media*, the Federal Circuit discussed Federal Rule of Appellate Procedure 4(a), which deals with time for filing a notice of appeal. 782 F.3d at 1314. The court reasoned that "[s]ince a ruling on a motion for relief under Rule 4(a) is an issue not unique to patent law, [it should] apply the law of the regional circuit." *Id*. (citations omitted). Since Rule 4(a) can sometimes implicate a court's jurisdiction, the Federal Circuit noted that while it applies its own law when determining jurisdiction, in the present case there was no dispute over jurisdiction and therefore, no need to abandon its general practice of applying regional circuit law for procedural issues. *See id*. at 1314 n.1.

Ericsson all arose outside of this Circuit. The fact that the Federal Circuit allowed district courts discretion in assessing appellate costs emphasizes that regional circuit law should be used. *See Metso Minerals*, 594 F. App'x at 651. Therefore, Fifth Circuit law should apply to this issue.

Furthermore, the applicable Fifth Circuit law is clear—"Rule 39(e) is mandatory. Costs incurred [on appeal] *shall be taxed* in the district court as costs of the appeal in favor of the party entitled to costs under this rule." *Sioux*, 1991 WL 182578, at *1 (quotation marks omitted). While it is true that *Sioux* is a *per curiam* opinion, the Fifth Circuit recently affirmed that Sioux "remains binding precedent." *San Antonio*, 959 F.3d at 166 n.3 (citing *Weaver v. Ingalls Shipbuilding, Inc.*, 282 F.3d 357, 359 (5th Cir. 2002)) ("The fact that [*Sioux*] is unpublished does not alter its precedential status, because it was decided before January 1, 1996." (brackets in original)).

In sum, Fifth Circuit law applies, and Fifth Circuit law is clear—the application of Rule 39(e) is mandatory. [8] The only remaining question is what costs are mandated.

### ii. Bond premiums are included but costs related to financing bond premiums are not

TCL argues any costs it incurred due to its obligation to post a supersedeas bond at Ericsson's insistence is part of "the premiums paid for a bond." FED. R. APP. P. 39(e)(3). Therefore, TCL seeks not just the annual premiums of the bond, which totaled $2,248,983.48, but also the $655,144.22 guarantee fee that TCL Corporation charged TCL as well as the $102,329.17 in interest accrued from loans taken to pay the bond premium. *See* Dkt. No. 507 at 17–19 (citing *Berkley Reg'l*, 600 F. App'x at 237 ("Rule 39 expressly authorizes that costs for premiums on supersedeas bonds pending appeal are taxable in the district court")).[9] TCL does not distinguish between the three different amounts but argues that they are all "premiums" TCL incurred in order

---

[8] Even if this Court had discretion to lower the costs of appeal, it is not persuaded that doing so would be prudent.
[9] It should be noted that the Fifth Circuit expressly stated in an unnumbered footnote that this opinion "is not precedent" except for a limited circumstance not present here as set forth in 5th Circuit Rule 47.5. *Id.*

to pay for the bond. Further, it argues that these costs were incurred because Ericsson demanded that TCL post a bond despite TCL supposedly providing Ericsson assurances that a bond was unnecessary and giving alternative options to allay Ericsson's fears.

Ericsson argues that neither interest nor corporate guarantees fall within any of the four categories enumerated in Rule 39(e) and that these costs should not be taxable, citing circuit court opinions on the issue that have come to the same conclusion. Dkt. No. 514 at 3–4 (citing *Lerman v. Flynt Distrib. Co.*, 789 F.2d 164, 165–66 (2d Cir. 1986); *Johnson v. Pac. Lighting Land Co.*, 878 F.2d 297, 298 (9th Cir. 1989)). It further argues that TCL cannot prove that even the annual bond premium was *necessary* since TCL had cheaper options at its disposal to secure the judgment that it never proposed to the Court or Ericsson. *Id.* at 6 (citing *Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir. 1994)). For example, it argues TCL could have had its well-collateralized corporate affiliates guarantee or secure the judgment directly with Ericsson instead of with the Sureties. Due to TCL's purported failure to propose more cost-efficient options, Ericsson argues it was forced to insist on a common supersedeas bond guaranteed through a third-party surety, which resulted in millions of dollars in unnecessary costs.

To begin with, supersedeas bond premiums are undoubtedly encompassed in "premiums paid for a bond" as made clear from a plain reading of the statute. FED. R. APP. P. 39(a)(3); *San Antonio*, 959 F.3d at 165 ("Rule 39(a)(3) . . . includes the enumerated appeal costs—such as appeal bond premiums"). While Ericsson makes an interesting case of the necessity the movant must show for bond premiums to be included, it is ultimately unsuccessful here. TCL originally offered Ericsson other options, but Ericsson rejected those options and insisted on a bond for the full amount of the judgment. Ericsson did not provide any alternatives at the time. Ericsson now argues it would have been satisfied by a guarantee from TCL's Chinese parent company, but points to

nothing in the record that would suggest it would have been agreeable to such an arrangement. Indeed, TCL provides multiple examples where Ericsson insisted on a bond post-verdict. *See* Dkt. No. 517 at 4–6. TCL also explains that it attempted to minimize its bond costs to keep them reasonable. *See id*. at 6–7. Ericsson does not provide persuasive evidence that TCL's bond premiums were unnecessarily high.

Accordingly, supersedeas bond premiums are properly encompassed within the "premiums paid for a bond" pursuant to Rule 39(a)(3). Since TCL showed the premiums were reasonably necessary, Ericsson will be taxed $2,248,983.48 for TCL's supersedeas bond premiums.

The other costs—the corporate guarantee and interest—do not expressly fall within any of the four categories enumerated in Rule 39(e). Further, Ericsson points to two cases where circuit courts have disallowed such costs.[10] Dkt. No. 514 at 3–4 (citing *Lerman*, 789 F.2d at 165–66; *Johnson*, 878 F.2d at 298) In *Lerman*, the Second Circuit held that when a supersedeas bond is used, while the allowable bond premium is taxable as costs on appeal, the expenses of obtaining the bond premium are not. 789 F.2d at 166; *see also id*. at 167 ("[movant's] borrowing expense, sought in addition to the premium on a supersedeas bond, is not a permissible item of taxable appellate costs"). It did allow a limited exception for other types of costs of appeal if they were agreed to and less expensive substitutes for costs explicitly authorized by Rule 39(e). This exception clearly does not apply here as the guarantee and interest were neither agreed to nor a substitute for the bond premium.

In *Johnson*, the Ninth Circuit rejected the defendant's attempt to include letter of credit costs as appellate costs in addition to bond premiums. 878 F.2d at 298. The Ninth Circuit held that "[i]t is apparent that [Rule 39] itself does not provide for costs paid for letters of credit" and "where

---

[10] While binding precedent is preferred, neither the parties nor the Court's own research have identified any Fifth Circuit cases on point. Thus, this Court looks to circuit courts from around the country for support.

the costs paid for the letter of credit were in addition to the cost of the premiums paid for the supersedeas bonds[, t]here was no authorization in Rule 39 for such costs." *Id*.

Clearly, corporate guarantees and interest are not expressly listed within the Rule 39(a) categories. Furthermore, as the cited cases make clear, costs in addition to fees expressly listed in Rule 39(a) categories are not implicitly allowed. Therefore, TCL will not be permitted to add the corporate guarantees and interest to its bill of costs.[11] Accordingly, Ericsson is taxed $2,249,488.48 for costs incurred by TCL on appeal, which includes $505 in agreed costs and $2,248,983.48 in supersedeas bond premiums.

### III. CONCLUSION

For the reasons set forth in this Order, TCL's Motion for Costs is granted in part. Ericsson is taxed $2,354,108.93, which includes $104,620.45 of costs before this Court and $2,249,488.48 for costs on appeal. This Order is STAYED pending completion of appellate proceedings.

**SIGNED this 23rd day of June, 2020.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

---

[11] This is not meant to suggest that these types of costs would never be allowed. However, such a situation would require the movant to show, at a minimum, that the costs are a less expensive alternative to an express category in Rule 39(a) or the costs were agreed to by both sides. TCL has not made either showing here.